# Exhibit A

# REPORT TO CONGRESS

Sixth Annual Report on Delays in Approvals of
Applications Related to Citizen Petitions and
Petitions for Stay of Agency Action
for Fiscal Year 2013

Required by Section 914 of the Food and Drug Administration
Amendments Act of 2007

Public Law 110-85

Department of Health and Human Services
Food and Drug Administration

## I. STATUTORY REQUIREMENT

The Food and Drug Administration Amendments Act of 2007 (FDAAA) was enacted on September 27, 2007. Section 914 of Title IX of FDAAA took effect on the date of enactment and amended section 505 of the Federal Food, Drug, and Cosmetic Act (FD&C Act) (21 U.S.C. 355) by adding new subsection (q). Section 505(q) applies to certain petitions that request that the Food and Drug Administration (FDA or the Agency) take any form of action related to a pending drug approval application submitted under section 505(b)(2) or 505(j) of the FD&C Act or section 351(k) of the Public Health Service Act (PHS Act).[1] Section 505(q) also governs the manner in which these petitions are treated. Under section 505(q)(3) of the FD&C Act, FDA is required to submit an annual report to Congress.

The Food and Drug Administration Safety and Innovation Act (FDASIA) was signed into law on July 9, 2012 (Pub. L. 112-144, 126 Stat. 993). Section 1135 of FDASIA amended section 505(q) of the FD&C Act in two ways. First, it shortened FDA's deadline from 180 days to 150 days for responding to petitions subject to section 505(q). Second, it expanded the scope of section 505(q) to include certain petitions concerning applications submitted under section 351(k) of the PHS Act, the abbreviated pathway for the approval of biosimilar biological products. Accordingly, FDA is now including biosimilar biological product applications in the annual reports.

## II. BACKGROUND

### A. Citizen Petitions and Petitions for Stay of Agency Action

A citizen petition is a vehicle that stakeholders outside of FDA can use to ask the Agency "to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action" (21 CFR 10.25(a) and 10.30). Under the governing regulations, petitioners can request, for example, that the Agency:

- Disapprove a drug product application;
- Add warnings to the labeling of a drug; and/or
- Change products from prescription to over-the-counter (OTC) status.

FDA regulations also provide for the submission of petitions for "stay of action" to delay the effective date of an administrative action, such as the approval of certain drug applications (21 CFR 10.35). In this report, we will collectively refer to both citizen petitions and petitions for stay of Agency action as "petitions" and will refer to petitions subject to section 505(q) of the FD&C Act as "505(q) petitions."

[1] In this report, an application submitted in accordance with section 505(b)(2) of the FD&C Act is referred to as a *505(b)(2) application*; an application submitted under section 505(j) of the FD&C Act is referred to as an *abbreviated new drug application (ANDA)*; and an application submitted under section 351(k) of the PHS Act is referred to as a *biosimilar biological product application*.

**B. Delays of Approvals**

Section 505(q)(1)(A), together with section 505(q)(5), describes the general scope of section 505(q). Section 505(q)(1)(A) provides that:

> The Secretary shall not delay approval of a pending application submitted under subsection (b)(2) or (j) of [section 505 of the FD&C Act] or section 351(k) of the Public Health Service Act because of any request to take any form of action relating to the application, either before or during consideration of the request, unless–
>
> (i) the request is in writing and is a petition submitted to the Secretary pursuant to section 10.30 or 10.35 of title 21, Code of Federal Regulations (or any successor regulations); and
> (ii) the Secretary determines, upon reviewing the petition, that a delay is necessary to protect the public health.
>
> Consideration of the petition shall be separate and apart from review and approval of any application.[2]

In section 505(q)(5), the term *application* is defined as an application submitted under section 505(b)(2) or 505(j) of the FD&C Act or section 351(k) of the PHS Act, and the term *petition* is defined as a request described in section 505(q)(1)(A)(i) (i.e., a written request submitted in accordance with 21 CFR 10.30 or 10.35).

If FDA determines, based on a petition requesting action on a pending abbreviated new drug application (ANDA), 505(b)(2) application, or biosimilar biological product application, that a delay of approval of a pending application is necessary to protect the public health, FDA is required to provide to the applicant, no later than 30 days after making the determination, the following information:

- Notification that the determination has been made;
- If applicable, any clarification or additional data that the applicant should submit to the petition docket to allow FDA to review the petition promptly; and
- A brief summary of the specific substantive issues raised in the petition which form the basis of the determination.[3]

At FDA's discretion, the information described above is to be conveyed to the applicant either in a written document or through a meeting with the applicant.[4] The information conveyed as part of the notification is to be considered part of the application and subject to applicable disclosure requirements.[5]

[2] This sentence was added as a technical correction to FDAAA in Public Law 110-316, 122 Stat. 3509, 3524, section 301, enacted August 14, 2008.
[3] FD&C Act, section 505(q)(1)(B).
[4] FD&C Act, section 505(q)(1)(C).
[5] FD&C Act, section 505(q)(1)(D).

## III. INFORMATION REPORTED

Section 505(q)(3) of the FD&C Act requires FDA to submit an annual report to Congress containing statistical information regarding the approval of certain applications and the effect, if any, that 505(q) petitions have had on the timing of such approvals. This annual report complies with the statutory reporting requirements for FY 2013, based on data from October 1, 2012, through September 30, 2013.

The statute requires the following information to be included in the report:

- The number of ANDAs, 505(b)(2) applications, and biosimilar biological product applications approved during the reporting period;
- The number of such applications that were delayed by 505(q) petitions;
- The number of days by which the applications were delayed; and
- The number of 505(q) petitions that were submitted during the reporting period.

Between September 27, 2007, and September 30, 2013, FDA determined that a delay in approving an ANDA was necessary to protect the public health in the case of seven ANDAs with related 505(q) petitions. FDA has not delayed approval of any 505(b)(2) applications or biosimilar biological product applications based on 505(q) petitions.

During the FY 2013 reporting period, the Agency approved 37 applications submitted under section 505(b)(2), 440 ANDAs, and no biosimilar biological product applications. No approvals for any 505(b)(2) or biosimilar biological product applications were delayed because of the filing of a 505(q) petition in this reporting period. Two ANDA approvals were delayed in this reporting period because of pending 505(q) petitions.

FDA's decision to delay the approval of two pending ANDAs during this reporting period was based on the Agency's assessment that further review of the issues raised in the 505(q) petition was required to fully assess the petitioners' arguments against approval. FDA was concerned that if it approved the ANDAs before resolving the issues raised in the petition and later concluded that one or more of the arguments against approval were meritorious, then the presence on the market of drug products that did not meet the requirements for approval could negatively affect public health. Thus, FDA delayed approval of the two products at issue for 25 days to complete its analysis of the issues raised in the petitions. After FDA completed its review, the Agency determined that further delay of approval of the ANDAs was not necessary to protect the public health.

## IV. IMPLEMENTATION DISCUSSION

FDA has been implementing the provisions of section 505(q) for approximately 6 years. The Agency has done so by issuing guidance to encourage industry to use the 505(q) process appropriately, by proposing a regulation, and by reviewing and responding to the more than 100 petitions subject to section 505(q) that have been submitted during the 6-year period.

**A. Guidance**

In January 2009, the Agency issued a draft guidance for industry entitled *Citizen Petitions and Petitions for Stay of Action Subject to Section 505(q) of the Federal Food, Drug, and Cosmetic Act*. In June 2011, FDA issued the final guidance (www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM079353.pdf). The final guidance addresses the Agency's current thinking on the following topics:

- How FDA determines whether a particular petition would delay approval of a pending ANDA or 505(b)(2) application and, therefore, would fall within section 505(q);
- How FDA interprets the certification and verification requirements under section 505(q); and
- The relationship between the review of petitions and the review of pending ANDAs and 505(b)(2) applications for which FDA has not yet made a decision on approvability.

FDA plans to revise the final guidance to address the two FDASIA-related amendments to section 505(q) discussed in Section I.

**B. Proposed Regulation**

In January 2012 (77 FR 25), FDA published a proposed rule entitled *Amendments to Regulations on Citizen Petitions, Petitions for Stay of Action, and Submission of Documents to Dockets*. The proposed rule outlined proposed amendments to certain regulations relating to citizen petitions, petitions for stay of action, and submission of documents to the Agency. FDA proposed to add new section 10.31 (21 CFR 10.31), which includes the following provisions:

- Proposed section 10.31(a) states that section 10.31 would encompass all citizen petitions and petitions for stay of action that request that the Agency take any action that could, if taken, delay approval of an ANDA or 505(b)(2) application (i.e., citizen petitions and petitions for stay of action that are or may be subject to section 505(q) of the FD&C Act).
- Proposed section 10.31(b) would clarify the date of submission for petitions submitted under section 10.31.
- Proposed section 10.31(c) and (d) would codify the certification and verification requirements of section 505(q)(1)(H) and (I).

The comment period for this proposed rule has closed, and FDA currently is reviewing all of the comments submitted. FDA is also evaluating the impact of the two FDASIA-related amendments to section 505(q) on the provisions proposed in this rulemaking.

### C. Petition Review and Observations

During FY 2008 through FY 2013, FDA received a total of 131 petitions subject to section 505(q). Over this 6-year period, FDA responded to all but six of the 505(q) petitions within the statutory time frame that was applicable during that period.[6]

FDA continues to monitor the number and nature of 505(q) petitions submitted and to analyze whether section 505(q) is effectively discouraging petitioners from submitting petitions primarily to delay the approval of applications. FDA also is closely monitoring the effect of 505(q) petitions and the statutory response period for these petitions on the other work of the Agency. Although FDA generally met the statutory deadlines, it did so in part by redirecting efforts that otherwise would have been directed to other work, including responding to other citizen petitions.

It is difficult to determine whether section 505(q) is discouraging the filing of citizen petitions aimed at blocking generic competition. However, since the passage of FDAAA, the number of 505(q) petitions submitted annually has been steady–in 4 out of 6 fiscal years, FDA received approximately 20 such petitions. Table 1 shows the number of citizen petitions received by the Center for Drug Evaluation and Research (CDER) each year from 2008 through September 30, 2013, the number of petitions that were subject to section 505(q), and the percentage of all CDER petitions that were subject to section 505(q).

Table 1
Percentage of 505(q) Petitions Received
During Fiscal Years 2008-2013

| FY | No. of Petitions[7] | No. of 505(q) petitions | % of petitions that were 505(q) petitions |
|---|---|---|---|
| '08 | 78 | 21 | 27 |
| '09 | 81 | 31 | 38 |
| '10 | 76 | 20 | 26 |
| '11 | 96 | 20 | 21 |
| '12 | 94 | 24 | 26 |
| '13 | 92 | 15 | 16 |

[6] The 180-day statutory time frame for responding to 505(q) petitions was reduced to 150 days by section 1135 of FDASIA.

[7] This represents the number of petitions handled by CDER, excluding suitability petitions and petitions that raise only OTC monograph issues.

Table 2 below summarizes the outcomes for the 124 petitions that have been resolved under section 505(q) as of September 30, 2013.

Table 2
Outcomes Of 505(q) Petitions
Resolved During Fiscal Years 2008-2013[8]

| | FY | Denied | Granted | Denied/ Granted in Part | Withdrawn | **Total # of Determinations** |
|---|---|---|---|---|---|---|
| Fiscal Year | '08 | 10 | 1 | 3 | 0 | 14 |
| | '09 | 16 | 2 | 6 | 0 | 24 |
| | '10 | 16 | 2 | 6 | 0 | 24 |
| | '11 | 10 | 1 | 9 | 2 | 22 |
| | '12 | 10 | 1 | 2 | 0 | 13 |
| | '13 | 21 | 1 | 5 | 0 | 27 |
| | Total | 83 | 8 | 31 | 2 | **124** |

Outcomes:

- **Denied**: FDA denied the petition's requests. This includes instances where FDA issued a denial without comment on the substance of one or more of the requests.

- **Granted**: FDA granted the petition's requests.

- **Denied in Part, Granted in Part**: FDA denied some of the petition's requests and granted others. This includes instances where FDA denied one or more of the requests without comment on the substance of the request.

- **Withdrawn**: The petitioner withdrew the petition.

As of September 30, 2013, 83 of the petitions (approximately 67 percent) responded to under section 505(q) have been denied. Another 31 petitions (approximately 25 percent) have been denied in part and granted in part. Only eight petitions (approximately 6.5 percent) have been granted. An additional two petitions, approximately 1.5 percent, were voluntarily withdrawn by the petitioner.

Some of the trends in 505(q) petitions that FDA believes may be relevant are as follows:

- In many instances, the statutory deadline for responding to a 505(q) petition occurs before any related ANDAs or 505(b)(2) applications are ready for approval. In those cases, a petition answered within the statutory deadline does not delay approval of a pending application.

[8] The number of petitions resolved in each year does not match the number submitted in that year (see Table 1) because in many cases petitions received in a given year are not resolved until the following year.

- Over the 6-year period during which FDA has been reviewing 505(q) petitions, six petitions resulted in a delay in approving a total of seven ANDAs. The six petitions represent less than 5 percent of all 505(q) petitions received over this 6-year period; the seven ANDAs delayed are a very small percentage (<1 percent) of all ANDAs received over the same time period.

- FDA had not received any 505(q) petitions regarding biosimilar biological product applications through September 30, 2013.

- FDA continues to receive serial 505(q) petitions, frequently from the same petitioner, about the same specific drug or class of drugs, sometimes requiring several separate responses about different issues regarding the same product. Responding to such serial petitions requires the use of substantial FDA resources, on a repeated basis, over a protracted period of time.

- The enactment of FDASIA has increased the strain on Agency resources for responding to 505(q) petitions. Section 1135 of FDASIA significantly shortened the time frame by 30 days and has given FDA less time to evaluate the issues, articulate its scientific and legal reasoning, and formulate a response on the issues referenced in the petition. As a result, FDA has needed to direct resources away from other important initiatives to attempt to comply with the new shorter deadline.

- 505(q) contains a provision that permits FDA to summarily deny a petition at any point if FDA finds that it was submitted with the primary purpose of delaying the approval of an ANDA or 505(b)(2) application and the petition does not "on its face" raise valid scientific or regulatory issues (FD&C Act, section 505(q)(1)(E)). As FDA previously noted in its report to Congress entitled "Encouraging Early Submission of Citizen Petitions and Petitions for Stay of Agency Action," dated February 2009, we believe that the statutory language requires that both preconditions be present, and we believe this statutory standard would be extremely difficult to meet. To date, FDA has never applied this provision to summarily deny a petition, despite the fact that, in FDA's estimation, many 505(q) petitions do not in fact raise persuasive scientific or regulatory issues when those issues have been reviewed by FDA (as previously noted, approximately two-thirds of these petitions are denied in full). Accordingly, it is FDA's view that this provision has neither curbed the filing of frivolous petitions submitted with the primary purpose of delay, nor has it permitted FDA to dispose of such petitions without expending substantial amounts of resources.

The Agency is concerned that section 505(q) is not discouraging the submission of petitions that are intended primarily to delay the approval of competing drug products and that do not raise valid scientific issues. The statute requires FDA to prioritize these petitions above other matters, such as safety petitions, that do raise important public health concerns. FDA also believes that innovator companies are, in some cases, implementing strategies to file serial 505(q) petitions and petitions for reconsideration in an effort to delay approval of ANDAs or 505(b)(2) applications for competing drugs. In addition, with the shortened timeframe under FDASIA, FDA remains concerned about the resources required to respond to 505(q) petitions within the statutory deadline at the expense of completing the other work of the Agency.