UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re: SUBOXONE ANTITRUST LITIGATION** | **MDL No. 2445** |
| **THIS DOCUMENT RELATES TO:**<br><br>**Direct Purchaser Class Actions** | **Master Docket No. 2:13-md-02445-MSG** |

**DIRECT PURCHASER CLASS PLAINTIFFS MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.  INTRODUCTION ..................................................................................... 1

II. STANDARDS ON A MOTION FOR RECONSIDERATION.......................... 2

III. RECKITT HAS FAILED TO MEET THE EXACTING
    STANDARDS FOR RECONSIDERATION ................................................. 3

    A.  The Court Correctly Upheld DPC Plaintiffs' CP Claims....................... 3

        a.  Reports of Government Agencies are not Subject
            to Judicial Notice for the Truth of the Matters Stated ................. 3

        b.  Defendants' Meritless "Supervening Causation"
            Argument Has Already Been Turned Away by the Court ............ 7

    B.  The Court Did Not "Overlook" Defendants' Arguments
        Concerning Defendants' Public Statements in Upholding
        DPC Plaintiffs' Product Hop Claim ................................................ 12

IV. CONCLUSION..................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACLU v. Mukasey,*
    543 F.3d 181 (3d Cir. 2008)...................................................................................2, 3

*Abbott Laboratories v. Teva Pharmaceuticals USA, Inc.,*
    432 F. Supp. 2d 408 (D. Del. 2006)...............................................................15

*Altria Group et al. v. Good,*
    555 U.S. 70 (2008)...................................................................................9

*Andrews v. Sias,*
    2012 U.S. Dist. LEXIS 180840 (E.D. Pa. Dec. 20, 2012) ...................................3

*Anspach v. City of Phil.,*
    503 F.3d 256 (3d Cir. 2007)...............................................................4

*Assoc. Gen. Cont. of Cal., Inc. v. Calif. State Council of Carp.,*
    459 U.S. 519 (1983)...................................................................................9

*Bryant v. Avado Brands, Inc.,*
    187 F.3d 1271 (11th Cir. 1999) ...........................................................4

*Buffa v. N.J. State Dep't of Judiciary,*
    56 F. App'x 571 (3d Cir. 2003) .............................................................3

*Cactus Corner, LLC v. U.S. Dep't of Agric.,*
    346 F. Supp. 2d 1075 (E.D. Cal. 2004)..................................................4

*Clomon v. Jackson,*
    988 F.2d 1314 (2d Cir. 1993)...........................................................10

*Cromwell v. Hancock,*
    2014 U.S. Dist. LEXIS 167754 (W.D. Pa. Dec. 4, 2014)...............................2

*De Sole v. Knoedler Gallery, LLC,*
    974 F. Supp. 2d 274 (S.D.N.Y. 2013)................................................4

*Dow Chemical Co. v. Exxon Corp.,*
    30 F. Supp. 2d 673 (D. Del. 1998)..................................................11

*Egervary v. Young,*
    366 F.3d 238 (3d Cir. 2004).......................................................8, 11

ii

*Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)...................................................................................9

*Flight Int'l v. Allied Signal*,
    1995 U.S. App. LEXIS 15599 (9th Cir. June 20, 1995)....................................8

*FTC v. Reckitt Benckiser Pharmaceuticals, Inc.*,
    No. 3:14-mc-00005-REP (E.D. Va. Dec. 15, 2014) ...........................................8

*Geatti v. AT&T*,
    232 F. App'x 101 (3d Cir. 2007) .......................................................................3

*In re Grasso*,
    2014 WL 3389119 (E.D. Pa. July 11, 2014).....................................................4

*Hill v. Reederei F. Laeisz G.M.B.H.*,
    435 F.3d 404 (3d Cir. 2006).............................................................................8

*Jack Walters & Sons Corp. v. Morton Bldg, Inc.*,
    737 F.2d 698 (7th Cir. 1984) ...........................................................................9

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
    No. 06-cv-1797 (E.D. Pa. July 20, 2014) ..........................................................3

*Mass. Sch. of Law at Andover Inc. v. Am. Bar Ass'n*,
    937 F. Supp. 435 (E.D. Pa. 1996) ...................................................................8

*Midland Export, Ltd. v. Elkem Holding, Inc.*,
    947 F. Supp. 163 (E.D. Pa. 1996) ..................................................................11

*Muhammad v. Sarkos*,
    2014 WL 4418059 (D.N.J. Sept. 8, 2014) .........................................................4

*New York v. Actavis*,
    2014 U.S. Dist. LEXIS 172918 (S.D.N.Y. Dec. 11, 2014) ...............................12

*Phonetele, Inc. v. American Tel. & Tel. Co.*,
    664 F.2d 716 (9th Cir. 1981) ..........................................................................10

*In re Pronetlink Sec. Litig.*,
    403 F. Supp. 2d 330 (S.D.N.Y. 2005)...............................................................9

*Ritch v. A M Gen. Corp.*,
    1997 U.S. Dist. LEXIS 24196 (D.N.H. Nov. 17, 1997) .....................................8

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*,
    181 F.3d 410 (3d Cir. 1999) ................................................................................4

*Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*,
    401 F.3d 123 (3d Cir. 2005) ...............................................................13, 14, 15

*In re Suboxone (Buprenorphine) Antitrust Litigation*,
    2014 U.S. Dist. LEXIS 167204 (E.D. Pa. Dec. 3, 2014)...........................passim

*UPMC v. City of Pittsburgh*,
    2013 U.S. Dist. LEXIS 153336 (W.D. Pa. Oct. 25, 2013) ...............................10

*U.S. ex rel Spay v. CVS Caremark*,
    913 F. Supp. 2d 125 (E.D. Pa. 2012) ................................................................4

*United States v. Endo Pharms., Inc.*,
    2014 U.S. Dist. LEXIS 139221 (E.D. Pa. Oct. 1, 2014)....................................2

*United States v. McAleese*,
    2013 U.S. Dist. LEXIS 140285 (E.D. Pa. Sept. 30, 2013) ................................3

*Walgreen Co. v. AstraZeneca Pharm. LP*,
    534 F. Supp. 2d 146 (D.D.C. 2008) ...................................................13, 14, 15

## FEDERAL STATUTES

21 U.S.C. § 355(q)(1)(A)...............................................................................7, 8, 10

## REPORT

*FDA Sixth Annual Report on Delays in Approvals of Applications Related to Citizens
Petitions and Petitions for Stays of Agency Actions* (2014).. ....................................1, 2

Direct Purchaser Class Plaintiffs ("DPC Plaintiffs") submit this memorandum of law in opposition to Reckitt's Memorandum of Law in Support of Defendants' Local Rule 7.1(G) Motion to Reconsider (Dkt No. 99-1) ("Dfs Br.").

## I.   INTRODUCTION

On December 3, 2014, after extensive briefing and oral argument, this Court issued a comprehensive opinion that, *inter alia*, denied Defendants' motion to dismiss DPC Plaintiffs' citizen petition ("CP") and product-hop claims.[1] Now, despite Defendants' explicit acknowledgement of the "consideration and care that went into th[e] Court's 76-page opinion," Defendants move for reconsideration asking the Court to reverse itself and dismiss both the CP and product hop claims. None of Defendants' stated reasons for reconsideration merit attention.

As to DPC Plaintiffs' CP claims, Defendants contend that reconsideration is warranted for two reasons: (1) new evidence (a Food and Drug Administration ("FDA") Report[2]) that Defendants claim establishes that the FDA did not improperly delay approval of generic Suboxone Tablets; and relatedly (2) that the Court purportedly "overlooked" Defendants' argument that even if the FDA did improperly delay approval of generic Suboxone Tablets, the FDA's conduct constitutes a "supervening" cause that somehow absolves Defendants from liability for such delay.[3] However, as detailed further below, the contents of the Report that Defendants rely upon are not properly the subject of judicial notice, and thus cannot constitute "new evidence" that would justify reconsideration of a motion to dismiss. Moreover, contrary to

---

[1] *See* Dkt No. 98; *In re Suboxone (Buprenorphine) Antitrust Litig.*, 2014 U.S. Dist. LEXIS 167204 (E.D. Pa. Dec. 3, 2014).

[2] *See* Ex. A to Dfs Br. (*FDA Sixth Annual Report on Delays in Approvals of Applications Related to Citizens Petitions and Petitions for Stays of Agency Actions* (2014)).

[3] *See* Dfs Br. at 4-8.

Defendants' argument that the Court "overlooked" Defendants' "supervening causation" argument, the Court squarely rejected that argument in its decision.

As to DPC Plaintiffs' product hop claims, Defendants contend that reconsideration is warranted because the Court's conclusion that Defendants' public statements concerning the withdrawal and safety of Suboxone Tablets could form the basis for antitrust liability "overlooked" Defendants' argument that there is a "presumption" that such statements have *de minimis* effects on competition, and that DPC Plaintiffs cannot overcome such a presumption.[4] Defendants' contention is flatly contradicted by the record. The issue was fully briefed by the parties, explored thoroughly during oral argument, and explicitly addressed by the Court in its opinion rejecting Defendants' arguments.

In sum, there is no "new evidence" or manifest legal error that would justify the Court reconsidering its decision, much less reversing itself. Reconsideration is a tool meant to correct clear errors of law, not to give unsatisfied litigants who receive an unfavorable result a second bite at the apple. The fact that Defendants disagree with the result reached by the Court, which is what Defendants' motion boils down to, is not a valid basis to disturb this Court's opinion. Defendants' motion should therefore be denied.

## II.     STANDARDS ON A MOTION FOR RECONSIDERATION

Motions for reconsideration ask a court to revisit issues it has already resolved, and thus is an "extraordinary remedy" that is only granted "sparingly."[5] As such, it is well-established that reconsideration is warranted "only in three narrowly confined circumstances."[6] Those

---

[4] *Id.* at 11-15.

[5] *ACLU v. Mukasey*, 543 F. 3d 181, 188 (3d Cir. 2008); *Cromwell v. Hancock*, 2014 U.S. Dist. LEXIS 167754, at *3 (W.D. Pa. Dec. 4, 2014). *See also United States v. Endo Pharms, Inc.*, 2014 U.S. Dist. LEXIS 139221, at *7-8 (E.D. Pa. Oct. 1, 2014) (judiciary has strong interest in finality of its decisions).

circumstances are: (1) an intervening change in controlling law; (2) the availability of new

evidence that was not available when the court rendered the judgment in question; or (3) the need

to correct a clear error of law or fact or to prevent manifest injustice.[7] The moving party is held

to a "rigorous" standard of proof requiring a showing that "'dispositive factual matters or

controlling decisions of law' were presented to the court but were overlooked."[8]

Mere disagreement with a court's decision is not a proper basis to move for

reconsideration.[9]

## III.   RECKITT HAS FAILED TO MEET THE EXACTING STANDARDS FOR RECONSIDERATION

### A. The Court Correctly Upheld DPC Plaintiffs' CP Claims

#### a. Reports of Government Agencies are not Subject to Judicial Notice for the Truth of the Matters Stated

DPC Plaintiffs allege that Reckitt filed a sham CP to the FDA on September 25, 2012 as

part of its scheme to delay the entry of generic Suboxone competitors.[10] Defendants now ask the

---

[6] *Endo Pharms., Inc.*, 2014 U.S. Dist. LEXIS 139221 at *8.

[7] *Id. See also ACLU*, 543 F. 3d at 188.

[8] *Buffa v. N.J. State Dep't of Judiciary*, 56 F. App'x 571, 575 (3d Cir. 2003) (internal quotations omitted); *United States v. McAleese*, 2013 U.S. Dist. LEXIS 140285, at *3 (E.D. Pa. Sept. 30, 2013) (Goldberg, J.) (purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence).

[9] *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, Case No. 06-cv-1797 (Dkt No. 711) (E.D. Pa. July 20, 2014) (Goldberg, J.) (citing *Geatti v. AT&T*, 232 F. App'x 101, 104 (3d Cir. 2007)); *Andrews v. Sias*, 2012 U.S. Dist. LEXIS 180840, at *3-4 (E.D. Pa. Dec. 20, 2012) (Goldberg, J.) ("It is improper…to ask the Court to rethink what it had already thought through…") (quotation omitted); *Endo Pharms., Inc.*, 2014 U.S. Dist. LEXIS 139221 at *7 (a motion for reconsideration is more than a forum to express dissatisfaction with a result).

[10] *See* Consolidated Amended Complaint ("CAC") (Dkt No. 47) at ¶¶ 113-115, 187-188. As the Court acknowledged in its opinion, DPC Plaintiffs intend to seek leave to file a second amended complaint. *See In re Suboxone*, 2014 U.S. Dist. LEXIS 167204, at *106-07 n. 29, 111-12 n. 30. In addition to the matter the Court expects the DPC Plaintiffs to address (namely market power),

3

Court to discredit these allegations because they "contradict matters subject to judicial notice."[11] Specifically, Defendants request that the Court take judicial notice of the FDA's *Sixth Annual Report to Congress on Delays in Approvals of Applications Related to Citizen Petitions and Petitions for Stay of Agency Action for Fiscal Year 2013* (the "Report"),[12] and then ask the Court to draw conclusions about the agency's handling of Reckitt's CP as if the truth and accuracy of the Report's contents had been established.[13] They have not.

   "Courts may take judicial notice of public records and prior proceedings to establish the existence of those materials, *but not for the truth of the facts asserted in them*."[14] Thus, while the

---

the complaint will also update the DPC Plaintiffs' allegations, in light of the substantial discovery received from Reckitt to date, on other issues, including the product hop and overarching anticompetitive scheme claims.

[11] *See* Dfs Br. at 5.

[12] *See* n. 2, *supra*.

[13] *See* Dfs Br. at 5.

[14] *Muhammad v. Sarkos,* 2014 WL 4418059, at *4 (D.N.J. Sept. 8, 2014) (quoting *In re Grasso,* 2014 WL 3389119 at *3 (E.D. Pa. July 11, 2014)). *See also Anspach v. City of Phil.,* 503 F.3d 256, 273 n.11 (3d Cir. 2007) (approving judicial notice of an FDA announcement "not for the truth of its contents, but rather as evidence of the information provided by the federal government"); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278, 1280 (11th Cir. 1999) (courts may take judicial notice of public records only "for the purpose of determining what statements the documents contain, and not to prove the truth of the documents' contents"); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.,* 181 F.3d 410, 427 n. 7 (3d Cir. 1999) (emphasizing "the distinction between judicially noticing the existence of prior proceedings and judicially noticing the truth of the facts averred in those proceedings," noting that "the appropriate analogy is the hearsay rule which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement"); *De Sole v. Knoedler Gallery, LLC,* 974 F. Supp. 2d 274, 294 (S.D.N.Y. 2013) (in deciding a motion to dismiss, court can take judicial notice of public records 'to determine what statements [the documents] contain[ ] ... not for the truth of the matters asserted'") (quoting *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991)); *U.S. ex rel Spay v. CVS Caremark,* 913 F.Supp.2d 125, 140 (E.D. Pa. 2012) (public documents can be the subject of judicial notice "only to indicate what was in the public realm at the time, not whether the contents of those documents are true"); *Cactus Corner, LLC v. U.S. Dep't of Agric.,* 346 F.Supp.2d 1075, 1100 (E.D. Cal.

Court may take judicial notice, for example, that the FDA filed the Report, that Congress

received the Report on a particular day, or that the FDA reported various data regarding Citizen

Petitions for the 2013 fiscal year, the Court may not take judicial notice of the <u>contents</u> of the

Report as regards their truth, validity, or accuracy. The Report demonstrates that the FDA made

representations to Congress; it does not prove, and indeed, cannot even be offered to prove, that

those representations (such as the information that a petition delayed only one ANDA approval

in 2013) were in fact true.

Representations by federal agencies in reports to Congress are not always complete

and/or clear, particularly when involving subjective determinations such as cause and effect.

Here, the FDA's calculations, categorizations and use of certain terminology (e.g., what counts

as a "delay *because of* pending 505(q) petitions"[15]) cannot definitely establish for purposes of

this antitrust litigation that Reckitt's CP did not cause delay in the approval of generic ANDAs

for Suboxone Tablets. The FDA's delay in granting approval for a generic version of a drug may

have more than a single cause: scientific irregularities, manufacturing problems, agency

backlogs, and interference by the brand company are among the many candidates.  The FDA

may have categorized delays to approval of the competitors' ANDAs for buprenorphine

naloxone as attributable to reasons other than "pending 505(q) petitions" when, in reality, a

---

2004) (refusing to take judicial notice of data prepared by a government agency to the extent it
was offered for the "accuracy and validity of the [report's] contents"); 60 Am. Jur. Proof of Facts
3d 175, "Proof of Matters by Judicial Notice" ("The truth of any factual matters that might be
deduced from official records is not the proper subject of judicial notice").

[15] Defendants point with great fanfare to the FDA's use of the singular form of the word
"petition" in discussing the number of ANDAs delayed by Citizen Petitions on page 3 of the
Report.  They appear to have missed the plural form of the word, "petitions," in the immediately
preceding sentence of the Report.

pending 505(q) petition was one of several contributing factors.[16] Moreover, the Report

concluded that FDA remains concerned that the CP process continues to be abused by brand

companies seeking to delay generic competition.[17] Thus, contrary to Defendants' suggestion,

neither the Court nor the parties can conclude from the Report alone that Reckitt's CP did not

delay the generics' entry into the marketplace.

Notably, although it declined to deny Reckitt's CP under the provision of the Food, Drug

and Cosmetic Act that addresses petitions submitted "with the primary purpose of delaying the

approval of an application," the FDA referred the matter to the Federal Trade Commission

because of that agency's greater expertise in investigating and addressing anticompetitive

business practices.[18] That referral - which is alleged in DPC Plaintiffs' complaint - and *is* subject

to judicial notice - is but one indication that the FDA recognized that the timing of generic entry

and Reckitt's pattern of conduct were related.

In sum, Defendants have not and cannot prove the contents of the Report at this juncture,

and the Court may not take judicial notice of them as "new evidence" that justifies

reconsideration. For this reason alone, Defendants' request that the Court reconsider DPC

Plaintiffs' CP claims should be denied.

---

[16] Notably, the format of the Report does not allow delays to be counted as attributable to more than one "cause." In the case of the Novartis CP, as this Court noted in its opinion, the FDA had stated unequivocally that the delay was "entirely the result" of the CP at issue. *See In re Suboxone*, 2014 U.S. Dist. LEXIS 167024, at *51. If multiple factors actually "cause" delay, FDA staff must decide whether to report the delay as "caused by" or "not caused by" a pending Citizen Petition. The Report's authors are, of course, currently unavailable to testify as to any such discretionary decisions they may have made in compiling and analyzing data for the Report.

[17] *See* Report at 7 ("The Agency is concerned that section 505(q) is not discouraging the submission of petitions that are intended primarily to delay the approval of competing drug products and that do not raise valid scientific issues").

[18] *See* Exh. G to CAC at 15-16.

**b.  Defendants' Meritless "Supervening Causation" Argument Has Already Been Turned Away by the Court**

Defendants first argued that 21 U.S.C. § 355(q)(1)(A)'s mandate creates an unsolvable "causation problem" for DPC plaintiffs in a footnote to its opening memorandum in support of their motion to dismiss.[19]  According to Defendants, the FDA's failure to successfully protect consumers is a "supervening" proximate cause of antitrust injury and, therefore, absolves the filer of a sham CP of liability for its wrongdoing.[20]  Defendants now reprise the argument amplifying that "any such" failure of the FDA would "reliev[e] Reckitt from liability" because the injury is proximately caused by the government's inaction.[21]  This argument fails for at least three reasons.

First, the Court already turned away Defendants' "supervening causation" argument when it concluded that DPC Plaintiffs' complaint "plausibly allege[s] that the Citizen Petition caused antitrust injury by delaying Generic entry into the market."[22]  Indeed, the Court found that another drug company's petition presented by Defendants actually supported DPC Plaintiffs' allegations that sham petitions continue to cause antitrust injury "despite the mandate" of the statute.[23]  Thus, the Court concluded that DPC Plaintiffs' complaint plausibly alleged that it was

---

[19] *See* Mem. of Law in Support of Dfs Mot. to Dismiss ("Dfs MTD Br.") (Dkt No. 56-1) at p. 31 n. 19.

[20] *Id.* at 33 n. 21.

[21] *See* Dfs Br. at 2. Defendants' argument fails the straight face test, as Reckitt argues that the FDA immunized Reckitt even though, as noted above, it is undisputed that the FDA in fact referred Reckitt's conduct to the FTC for antitrust investigation. *See* p. 6, *supra.*

[22] *In re Suboxone*, 2014 U.S. Dist. LEXIS 167024, at *52.

[23] The Court held that Plaintiffs plausibly alleged that "delays [to generic market entry] still occur and did occur in this instance" despite a statutory framework intended to prevent sham citizen petitions from harming competition. *Id.* at *51. This holding further disposes of Reckitt's "new evidence" of the Report pointing to that petition as the only one in 2013 that caused delay.

Reckitt's sham petition – *and not the FDA's inaction or any other conceivable factor* – that caused Plaintiffs' antitrust injury.[24] As this Court has observed, "[i]t is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through — rightly or wrongly."[25] Thus, for this reason alone, Reckitt's "supervening causation" argument is not properly raised in a reconsideration motion.[26]

Second, even assuming, *arguendo*, that this Court had not already concluded that DPC Plaintiffs plausibly alleged causation, Defendants' "supervening causation" argument is meritless, because superseding cause is an affirmative defense, on which Defendants bear the burden of proof.[27] A motion to dismiss is not the proper forum to resolve an affirmative defense

---

Aside from improperly offering documents outside the record for the truth of the matter asserted, it ignores the fact that the FDA specifically referred the matter to the FTC for antitrust review. And, the Court also held that Plaintiffs implicitly alleged that the FDA, by falling prey to Reckitt's sham petition, failed to comply with 21 U.S.C. § 355(q)(1)(A)'s mandate that the FDA avoid delays in the approval of an NDA or ANDA resulting from citizen petitions. *Id.* at *52-53.

[24] *Id.* at *51-52.

[25] *See* n. 9, *supra.*

[26] Similar to the instant motion for reconsideration, in litigation initiated by the FTC to enforce a civil investigative demand related to Suboxone, the FTC recently accused Reckitt of attempting "to relitigate the issues already decided" by that court. *See* FTC Reply Memorandum In Support of Motion to Enforce Civil Investigative Demand, *FTC v. Reckitt Benckiser Pharmaceuticals, Inc.*, No. 3:14-mc-00005-REP (Dkt No. 40) (E.D. Va. Dec. 15, 2014).

[27] *See Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 421 (3d Cir. 2006) ("[I]n terms of . . . superseding cause, the defendant has the burden of proof by a preponderance of the evidence"); *Flight Int'l v. Allied Signal*, No. 94-55289, 1995 U.S. App. LEXIS 15599, at *11-12 (9th Cir. June 20, 1995) ("[S]uperseding causation [is], however, [an] affirmative defense[] on which the defendant has the burden of proof; they form no part of the plaintiff's prima facie case"). *See also Ritch v. A M Gen. Corp.*, 1997 U.S. Dist. LEXIS 24196, at *13 (D.N.H. Nov. 17, 1997) ("Rule 8(c) places the burden of pleading affirmative defenses on the defendant. This court finds that superseding cause is an affirmative defense within the meaning of Rule 8(c)"). Cases cited by Reckitt do not indicate otherwise. *See, e.g., Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (plaintiff failed at summary judgment to demonstrate proximate cause due to supervening causation); *Mass. Sch. of Law at Andover Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435 (E.D. Pa. 1996) (applying the defense at summary judgment after the development of a full record and involved a defense of state action rather than supervening causation).

like this.[28] Accordingly, Defendants' "supervening causation" argument is improper in a motion to dismiss, let alone a motion for reconsideration of the denial of a motion to dismiss.

Third, as to the actual substance of Defendants' (already rejected) argument, agency incapacity, inaction or lateness does not categorically provide Reckitt with antitrust immunity. Courts in analogous contexts recognize this. In *Altria Group et al. v. Good*, 555 U.S. 70 (2008), a cigarette maker argued for pre-emption of state deceptive practices rules claiming the FTC had a policy of authorizing the representations at issue. The Supreme Court rejected the argument explaining that "failure to require petitioners to correct their allegedly misleading use of 'light' descriptors is not evidence [of agency authorization]" and that "agency non-enforcement of a federal statute is not the same as a policy of approval."[29] Moreover, the Supreme Court specifically noted that "[i]t seems particularly inappropriate to read a policy of authorization into the FTC's inaction" where the agency's inaction is the result of the defendant's submission.[30] Here, similarly, the FDA's failure to comply with the statutory mandate was caused by Reckitt's filing of a sham petition, so it would be "particularly inappropriate" to reward Defendants with immunity.

---

[28] *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) ("[O]f course, if the loss was caused by an intervening event, like a general fall in the price of Internet stocks, the chain of causation will not have been established. But such is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss"); *In re Pronetlink Sec. Litig.*, 403 F. Supp. 2d 330, 336 (S.D.N.Y. 2005) ("Defendants' contentions that intervening causes . . . were to blame . . . must await the trial"). While some of these decisions are in tort cases, they are equally applicable to antitrust cases. "[A]ntitrust violations are essentially tortious acts." *Assoc. Gen. Cont. of Cal., Inc. v. Calif. State Council of Carp.*, 459 U.S. 519, 547 (1983). *See also Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F. 2d 698, 708-09 (7th Cir. 1984) ("venerable principles of tort causation" apply in antitrust cases).

[29] *Altria Group*, 555 U.S. at 89-90.

[30] *Id.*

In *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993), the Second Circuit rejected the

defendant's argument that he was not liable for a violation of the Fair Debt Collection Practices

Act because the FTC was aware of his practice and did not intervene.  The court explained that

"the fact that the FTC received copies of these letters and expressed no disapproval of them is

not evidence that . . . the FTC gave the letters its 'tacit approval.'"[31] Here, the FDA, having spent

the time and effort to consider and reject the sham petition, determined that Reckitt's conduct

was potentially anticompetitive and warranted review by the FTC. In *Phonetele, Inc. v. American*

*Tel. & Tel. Co.*, 664 F. 2d 716 (9th Cir. 1981), the Ninth Circuit rejected a defendant's assertion

of an implied immunity where a telephone company's challenged conduct had been submitted to

the FCC, but the agency declined to rule on its validity, but permitted the policy to continue

during the pendency of further agency review.[32] The Ninth Circuit held that the FCC's inaction

did not provide immunity. The court explained that Supreme Court precedent "does not hold that

. . . [a defendant's] conduct which occurs during the period of agency study may not be the basis

for an antitrust action."[33] Again, here, the reviewing agency determined that scrutiny was

required by the FTC, which hardly should be construed as the FDA conferring immunity upon

Reckitt (even assuming the Court were to incorrectly assume that was within the scope of the

FDA's authority).[34]

---

[31] *Clomon*, 988 F. 2d at 1322.

[32] *Phonetele, Inc.*, 664 F. 2d at 727.

[33] *Id.* at 727 n. 32.

[34] In a final rhetorical flourish, Reckitt asserts that 21 U.S.C. § 355(q)(1)(A) "protects the First Amendment rights of branded companies [like Reckitt] by ensuring that they can petition the government without the specter of being accused of causing delay."  Reckitt flatly ignores the undisputed legal proposition that the First Amendment does not apply to sham petitions. *See, e.g.*, *UPMC v. City of Pittsburgh*, 2013 U.S. Dist. LEXIS 153336 (W.D. Pa. Oct. 25, 2013) ("in

Defendants' cited authorities are distinguishable.  In *Egervary*, the Third Circuit clearly stated that the affirmative defense of intervening causation can only be successful "if the [government] decision is genuinely free from deception or coercion."[35] DPC Plaintiffs here have plausibly alleged that Reckitt's citizen petition was a sham and therefore not "genuinely free from deception."

Similarly, *Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673 (D. Del. 1998) does not support dismissal of Plaintiffs' claims. In *Dow*, as noted by Reckitt, RICO claims based on patent-procurement fraud were dismissed for failure to allege causation.  However, the *Dow* opinion is clear that "[l]ike state law unfair competition claims and federal antitrust claims, civil RICO has been considered an appropriate tool for addressing an alleged pattern of fraud on the PTO."[36]  So, *Dow* does not support Reckitt's general claim of immunity for sham petitioning. Moreover, the causation issue in *Dow* that resulted in dismissal was the fact that "Dow's losses do not stem directly from Exxon's alleged misrepresentations to the PTO" and "are too remote."[37] Here, in contrast, Plaintiffs' payment of supra-competitive prices for Suboxone are the direct result of the delay caused by Reckitt's sham petition and Plaintiffs paid the overcharges to Reckitt directly.[38]

---

any event, the First Amendment does not apply to 'sham'" petitioning).  Accordingly, immunizing sham petitions hardly serves to protect the First Amendment.

[35] *Egervary*, 366 F. 3d at 247.

[36] *Dow Chem. Co.*, 30 F. Supp. 2d at 693.

[37] *Id.* at 695-96.

[38] Reckitt's reliance on *Midland Export, Ltd. v. Elkem Holding, Inc.*, 947 F. Supp. 163, 166 (E.D. Pa. 1996) is also misplaced because the case did not involve sham petitioning allegations. Moreover, the court held that the plaintiff lacked standing because its injury "did not flow directly from the alleged price fixing."  Instead, the plaintiff argued that defendants' price fixing

### B. The Court Did Not "Overlook" Defendants' Arguments Concerning Defendants' Public Statements in Upholding DPC Plaintiffs' Product Hop Claim

DPC Plaintiffs' product hop claim focuses on Defendants' unlawful attempt to convert the market from Suboxone Tablets to Suboxone Film for anticompetitive purposes. In upholding DPC Plaintiffs' claim, the Court correctly concluded that certain public statements by Defendants - namely, Defendants' public announcement that Suboxone Tablets would be withdrawn from the market in conjunction with public disparagement of Suboxone Tablets as unsafe - constituted "coercive" or exclusionary conduct that gives rise to antitrust liability.[39] The Court's finding that the product hop allegations constitute exclusionary conduct is consistent with existing case law, and indeed, was followed just eight days later in another case involving product hop allegations before Senior Judge Robert W. Sweet in the Southern District of New York.[40]

Defendants now argue that the Court "overlooked" Defendants' argument that there is a "strong presumption that statements by competitors have a *de minimis* effect on competition"[41] and that DPC Plaintiffs cannot overcome this presumption. However, the record is clear that the Court did not "overlook" Defendants' argument. Defendants made their argument known to the

---

led to an imposition of trade tariffs that, in turn, caused injury to the plaintiff.  Here, plaintiffs as direct purchasers do not have similarly remote injuries.

[39] *In re Suboxone*, 2014 U.S. Dist. LEXIS 167204, at *28-29 ("The key question is whether the defendant combined the introduction of a new product with some other wrongful conduct, such that the comprehensive effect is likely to stymie competition, prevent consumer choice and reduce the market's ambit").

[40] *See New York v. Actavis,* 2014 U.S. Dist. LEXIS 172918, at *106-107 (S.D.N.Y. Dec. 11, 2014).

[41] Dfs Br. at 11.

Court during briefing and oral argument, and the Court's opinion discussed (in some instances, at length) the case law cited by Defendants. Defendants do not claim otherwise.

    ***Briefing*** In the portion of its opening brief directed towards DPC Plaintiffs' product hop claims, Defendants argued that antitrust claims based upon product disparagement were not actionable, and thus Reckitt's public statements (referred to by Reckitt as "advertising"[42]) were either irrelevant and/or not rebutted by what Defendants phrased as an "antitrust presumption that advertising has *de minimis* effects."[43] Defendants cited *Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F. 3d 123 (3d Cir. 2005) and *Walgreen Co. v. AstraZeneca Pharm. LP*, 534 F. Supp. 2d 146 (D.D.C. 2008), the latter on the "presumption" point.[44] DPC Plaintiffs' opposition brief cited numerous cases recognizing that a defendant's public statements can in fact constitute exclusionary conduct, and distinguished both the *Santana* and *Walgreen* cases.[45] Defendants' reply brief reiterated their argument and again cited *Santana* and *Walgreen*.[46] Indeed, in their instant motion papers, Defendants admit that "Reckitt clearly raised th[e] presumption in both its opening and reply brief."[47]

---

[42] *See* Dfs MTD Br. at 17.

[43] *Id.* at 17-18.

[44] *Id.*

[45] *See generally* DPC Plaintiffs' Mem. of Law in Opp. to Dfs Mot. to Dismiss (Dkt No. 67) at 24-28. DPC Plaintiffs noted, *inter alia*, that the Third Circuit had since limited its holding in *Santana*, and that DPC Plaintiffs' allegations here were far more robust than those alleged in *Walgreen. Id.*

[46] *See* Dfs Reply in Support of Mot. to Dismiss (Dkt No. 81) at 19-20.

[47] *See* Dfs Br. at 15.

13

*__Oral Argument__*   During oral argument, the parties presented their respective positions on antitrust liability for product disparagement, including argument about *Santana* and *Walgreens* (the latter, extensively).[48] Illustrative in particular are the following excerpts from oral argument:

**[Defense Counsel]:**   "[T]hey have said that we – we disparaged the product. But that – that, again, is *Walgreen*. That's alleged in essentially all of these cases, Your Honor. And *Walgreen* and [*Mylan*] that we cited in our brief that dismissed those claims on their face, they said that's – that's not – that marketing effort or that disparagement, that doesn't change anything. You did not reduce competition…"[49]

                                                  ***

[I]n the *Santana* case that we've cited…clearly says that deception, reprehensible as it is, can be of no consequence as far as the Sherman Act is concerned, but even if it was, what you've got in the Complaint….the Complaint itself doesn't give you any real deception.[50]

**[Plaintiffs' Counsel]:** And what we have alleged here…is that there was more than just aggressive marketing here; there's false disparagement…And false disparagement, Your Honor, is the – false disparagement of a competitor is actionable.[51]

                                                  ***

[Defense counsel] cites the *Santana* case. We cite *West Penn* to Your Honor, a Third Circuit case, a later case, which says: Anticompetitive conduct can come in too many different forms and is too dependent on context for any court or commentator ever to have enumerated all the varieties. And it goes on to list various

---

[48] *See* Transcript of 9/17/2014 Oral Argument at pp. 35-38 (defense counsel discussing *Walgreen*); 40-42 (defense counsel discussing product disparagement); 84 (defense counsel: "[I] wanted to say initially that I think the case that is getting short-changed here is *Walgreen*…"); 91-92 (defense counsel discussing *Santana*); 114-16 (DPC Plaintiffs' counsel discussing product disparagement and *Santana*).

[49] *Id.* at p. 41.

[50] *Id.* at pp. 91-92.

[51] *Id.* at p. 115.

varieties, once of which is making false statements about a rival to potential investors and customers and drops a footnote there saying, yeah, we kind of didn't say that in *Santana*, but we spoke too broadly in *Santana*. So *West Penn* revises *Santana* and notes that things [sic] artificially playing with a market by disparaging a product is actionable.[52]

**_The Court's Opinion_** In addition to the above (which in itself undermines Defendants' assertion that the Court could have "overlooked" Defendants' argument), the Court's opinion further belies Defendants' assertion. In the section of its opinion addressing DPC Plaintiffs' product hop claims, the Court noted that Reckitt "relie[d] heavily" on *Walgreen*,[53] the principal case that Defendants cited in support of their argument that there is a purported "presumption" that Reckitt's public statements have only *de minimis* effects on competition. The Court outlined the underlying facts in *Walgreen* as well as a competing case that DPC Plaintiffs' advanced.[54] The Court then concluded that the "key question is whether the defendant combined the introduction of a new product with some other wrongful conduct…"[55] Observing that "Reckitt counters that false disparagement of a product cannot give rise to antitrust liability under [*Santana*]," the Court proceeded to discuss *Santana*, properly concluding (as DPC Plaintiffs' advanced during briefing and oral argument) that the Third Circuit has more recently held that false disparagement, especially when combined with other anticompetitive acts, can give rise to antitrust liability.[56] This analysis formed the basis for the Court's conclusion that Defendants'

---

[52] *Id.* at p. 116.

[53] *In re Suboxone*, 2014 U.S. Dist. LEXIS 167204, at *22-23.

[54] *Id.* at *22-26 (discussing *Walgreen* and *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006) ("*Tricor*")).

[55] *Id.* at *27-28.

[56]*Id.* at *28-29.

false disparagement of Suboxone Tablets coupled with Defendants' public statements that Suboxone Tablets would be withdrawn from the market could form the basis for antitrust liability.[57]

In sum, the Court did not "overlook" Defendants' arguments as to why Reckitt's public statements were not actionable. That the Court "did not mention"[58] the purported presumption urged by Defendants in the text of its opinion is a red herring; the question on reconsideration is not what a court "mentions" in an opinion, but whether a court has overlooked a legal issue such that reconsideration is necessary to correct a manifest error of law. The record demonstrates that the Court fully considered the cases Defendants cited in support of their argument and did not find them to be persuasive. Defendants may disagree with the end result, but that is not a sufficient basis for reconsideration.

## IV.     CONCLUSION

For all of the aforementioned reasons, Defendants' motion for reconsideration should be denied.

---

[57] *Id.* at *29. Since the Court rejected Defendants' argument that it should apply the presumption to dismiss the product hop claims, Defendants' argument that DPC Plaintiffs' complaint does not contain allegations that could overcome the presumption, (*see* Dfs Br. at 12-14), is a moot point. In any event, however, DPC Plaintiffs' complaint contains allegations that would be sufficient to overcome the (inapplicable) presumption. *See, e.g.,* CAC at ¶¶ 10, 89, 93-95, 97, 105-09, 122-31, 135.

[58] *See* Dfs Br. at 11.

Dated: January 16, 2015

Respectfully submitted,

/s/ Bruce E. Gerstein
Garwin Gerstein & Fisher LLP
Bruce E. Gerstein
Joseph Opper
88 Pine Street, Wall Street Plaza
New York, NY 10005
(212) 398-0055

*Liaison Counsel, Interim Co-Lead Counsel*
*for the Direct Purchaser Class Plaintiffs and*
*Counsel for Burlington Drug Company, Inc.*

Thomas M. Sobol
Lauren Guth Barnes
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700

*Interim Co-Lead Counsel for the Direct*
*Purchaser Class Plaintiffs and Counsel*
*for Meijer, Inc. and Meijer Distribution, Inc.*

Stuart E. Des Roches
Andrew W. Kelly
Chris Letter
Odom & Des Roches, LLP
650 Poydras Street, Suite 2020
New Orleans, LA 70130
(504) 522-0077

David P. Smith
Susan Segura
David C. Raphael, Jr.
Erin R. Leger
Smith Segura & Raphael, LLP
3600 Jackson St., Suite 111
Alexandria, LA 71303
(318) 445-4480

*Additional Counsel for Burlington*
*Drug Company, Inc.*

Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
(215) 277-5770

*Interim Co-Lead Counsel for the Direct*
*Purchaser Class Plaintiffs and Counsel for*
*Rochester Drug Co-Operative, Inc.*

Eric L. Cramer
David F. Sorensen
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103-6305
(215) 875-3000

Barry Taus
Archana Tamoshunas
Taus, Cebulash & Landau, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
(212) 931-0704

*Additional Counsel for Rochester Drug*
*Co-Operative, Inc.*

17

**CERTIFICATE OF SERVICE**

I, Kimberly Hennings, caused on this 16th day of January 2015, a copy of the foregoing to be served on all counsel of record through the CM/ECF system.

Dated: January 16, 2015                    /s/ Kimberly Hennings