IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALAXONE) ANTITRUST LITIGATION | : MDL NO. 2445<br>: 13-MD-2445<br>:<br>: |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | :<br>:<br>:<br>:<br>: |

## ORDER

**AND NOW**, this 14th day of April, 2015, upon consideration of "Defendants' Local Civil Rule 7.1(g) Motion to Reconsider" (Doc. No. 99), "Direct Purchaser Class Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Reconsider" (Doc. No. 114), "End-Payor Class Plaintiffs' Memorandum in Opposition to Defendants' Motion to Reconsider" (Doc. No. 115), and "Reply in Support of Defendants' Motion to Reconsider" (Doc. No. 119), I find as follows:

### I. INTRODUCTION

1. Defendants Reckitt Benckiser Group plc ("RBG") and Reckitt Benckiser Pharmaceuticals, Inc. (collectively, "Reckitt") seek reconsideration of my December 3, 2014 Order granting in part and denying in part Reckitt's motion to dismiss the class complaints filed by Direct Purchaser Plaintiffs and End Payor Plaintiffs. In particular, Reckitt's grounds for reconsideration are that: 1) New evidence demonstrates that the allegations contained in Plaintiffs' Citizen Petition claims are not plausible; 2) I failed to address its argument that End Payor Plaintiffs failed to

1

state a claim against RBG because the complaint does not allege that RBG had market power, a necessary element of a claim for monopolization under § 2 of the Sherman Act; and 3) In concluding that Reckitt's public statements about the withdrawal and safety of Suboxone Tablets could, along with other coercive measures, form the basis for antitrust liability, I failed to consider the "strong presumption that statements by competitors have a 'de minimis' effect on competition."

## II. LEGAL STANDARD

2. Reconsideration is only warranted in "extraordinary circumstances." Am. Civil Liberties Union v. Mukasey, 534 F.3d 181, 188 (3d Cir. 2008). The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). A motion for reconsideration must rely upon one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court rendered the judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id.

## III. DISCUSSION

*Citizen Petition Claims*

3. Reckitt seeks reconsideration of the ruling that Plaintiffs' allegations were sufficient to plausibly plead that Reckitt filed a sham Citizen Petition with the Food and Drug Administration ("FDA") as part of its scheme to delay the entry of generic Suboxone into the market. First, Reckitt contends that new evidence, subject to judicial notice,

demonstrates that its Citizen Petition did not delay approval of the generic Suboxone competitors' Abbreviated New Drug Applications ("ANDA"). Reckitt relies upon the "Sixth Annual Report on Delays in Approvals of Applications Related to Citizen Petitions" submitted by the FDA to Congress on November 17, 2014. Reckitt contends that this report establishes that only one Citizen Petition delayed ANDA approval in 2013 and that petition was filed by Novartis not Reckitt. Reckitt urges that Plaintiffs' allegations need not be credited as true as they are inconsistent with its reading of the report and, therefore, not plausible. Plaintiffs counter that while the fact that the FDA compiled the report and submitted it to Congress is subject to judicial notice, the veracity and accuracy of the report's content is not.

4. When addressing a 12(b)(6) motion, courts generally consider the allegations contained in the complaint but may also consider public records subject to judicial notice. Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 133 (E.D. Pa. 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993)). In doing so, "[c]ourts may take judicial notice of public records and prior proceedings to establish the existence of those materials, but not for the truth of the facts asserted in them." In re Grasso, No. 14-1741, 2014 WL 3389119, at *3 (E.D. Pa. July 11, 2014); Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004), abrogated in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) ("While a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.")

5. I conclude that the veracity and truth of the report's content is not properly subject to

judicial notice. As such, I decline to reconsider the plausibility of Plaintiffs' allegations in light of the report. Reckitt's request for reconsideration of the ruling regarding Plaintiffs' Citizen Petition claims is denied.

6. Reckitt also asserts that I overlooked its argument that, even if its Citizen Petition caused the FDA to delay approval of the generic's ANDA, the FDA's actions are a supervening cause relieving Reckitt from liability. Reckitt urges that the causal chain is severed when an independent government actor fails to follow proper procedures. See Egervary v. Young, 366 F.3d 238, 250-51 (3d Cir. 2004) (a government actor's failure "to properly apply the governing law and procedures . . . must be held to be a superseding cause, breaking the chain of causation.") Plaintiffs counter that I rejected this "supervening causation" argument when I concluded that Plaintiffs plausibly alleged that the Citizen Petition caused antitrust injury by delaying generic entry into the market. Plaintiffs also assert that the affirmative defense of intervening causation is not available where the government action is induced by or predicated on a defendant's deception and, in such cases, "the causal chain is not broken and liability may be imposed upon those involved in making the misrepresentations or omissions." Id. at 250. Additionally, Plaintiffs assert that a motion to dismiss is not the proper forum to resolve this issue as Reckitt's "supervening causation" argument is an affirmative defense.

7. Reckitt is correct that in Egervary the United States Court of Appeals for the Third Circuit held that a government actor's independent failure to follow proper procedures can constitute a supervening causation. Id. at 250-51. However, Egervary also makes clear that the causal connection is not severed if the government actor's

decision is induced by the defendant's deception or wrongful conduct. Id. at 250. Although Plaintiff's ability to successfully prove causation is subject to any affirmative defense Reckitt may raise, I previously concluded that Plaintiffs have alleged sufficient facts to plausibly plead causation. Reckitt's supervening causation argument does not alter this conclusion and thus reconsideration on this ground is denied.

*Claims against RBG*

8. Regarding End Payors' claims against RBG, Reckitt contends that I did not consider its argument that Plaintiffs failed to allege that RBG had market power, a required element of a claim for monopolization under § 2 of the Sherman Act. Plaintiffs respond that they alleged that Reckitt had market power and that RBG controlled or encouraged Reckitt's conduct. Plaintiffs contend that these two allegations taken together are sufficient to state a claim and no separate market power allegation on behalf of RBG is necessary. In support, Plaintiffs cite Climax Molybdenum Co. v. Molychem, L.L.C., 414 F. Supp. 2d 1007 (D. Colo. 2005) where the court held that:

> A Section 2 claim brought against a parent corporation based on anticompetitive activity occurring at the subsidiary level is sufficient if there are factual allegations showing that the subsidiary is the alter ego of the parent, see [Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc., 311 F. Supp. 2d 1048, 1072 (D. Colo. 2004)], or showing independent conduct on the part of the parent. Id. at 1068–69. "When the parent controls, dictates or encourages the subsidiary's anticompetitive conduct, the parent engages in sufficient independent conduct to be held directly liable as a single enterprise with the subsidiary under the Sherman Act." Id. at 1071.

Id. at 1012 (quotations in original).

9. Reckitt counters that Plaintiffs' argument is contrary to the general corporate law proposition "that a parent corporation . . . is not liable for the acts of its subsidiaries."

5

See United States v. Bestfoods, 524 U.S. 51, 61 (1998). As such, Reckitt urges that a subsidiary's market share may be attributed to a parent, if and only if, there is "complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988).

10. After review of applicable precedent, I conclude that the degree of control necessary to attribute Reckitt's market share to RBG is pervasive domination. The case cited by Plaintiffs, Climax Molybdenum Co., supports Reckitt's insistence that approval and consent is not enough as these allegations reflect a typical parent-subsidiary relationship. The passages of Climax Molybdenum Co. on which Plaintiffs rely cite to Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc., 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004). In that case, the court held that a parent may be liable "if, and only if, the parent sufficiently controls, dictates, or encourages the policies of the subsidiary." Id. Although Plaintiffs alleged that RBG encouraged Reckitt's conduct, Plaintiffs have failed to allege that RBG exercised sufficient control or pervasive domination over Reckitt to support attributing Reckitt's market power to RBG. As such, Plaintiffs were required but failed to allege that RBG itself possessed market power. Reckitt's request for reconsideration is warranted because the December 3, 2014 Order did not address this deficiency in Plaintiffs' allegations. Therefore, the remaining End Payor Plaintiffs' claims against RBG are dismissed.

*Production Hopping Claims*

11. Regarding Plaintiffs' product-hopping arguments, Reckitt contends that I overlooked the "strong presumption that statements by competitors have a '*de minimis*' effect on competition." See, e.g., National Ass'n of Pharmaceutical Mfrs. v. Ayerst Labs., 850 F.2d 904, 916 (2d Cir. 1988); Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc., 108 F.3d 1147, 1152 (9th Cir. 1997). Plaintiffs accurately counter that the United States Court of Appeals for the Third Circuit has not adopted the so called "de minimis presumption." Additionally, where recognized, courts generally only apply the de minimis presumption in the context of antitrust actions based solely on misrepresentations or false statements by competitors. See, e.g., Lenox MacLaren Surgical Corp. v. Medtronic, Inc., 762 F.3d 1114, 1127 (10th Cir. 2014) (noting that the de minimis presumption applies to disparagement claims but not where the statements are part of "a comprehensive scheme of exclusionary conduct"). Plaintiffs do not allege a standalone disparagement claim. After reviewing Plaintiffs' complaint and Reckitt's motion to dismiss, I determined that Plaintiffs stated a plausible cause of action because Plaintiffs alleged that the disparagement of Suboxone tablets took place alongside additional coercive measures such as the threatened removal and eventual actual removal of Suboxone tablets from the market. Therefore, even if the Third Circuit recognized the "de minimis presumption," it would not apply to Plaintiffs' allegation of a multifaceted product-hopping scheme.

**WHEREFORE**, for the reasons set forth above, it is hereby ordered that "Defendants' Local Civil Rule 7.1(g) Motion to Reconsider" (Doc. No. 99) is:

- **GRANTED** as to the claims against Reckitt Benckiser Group plc ("RBG"). End Payor Plaintiffs' claims against RBG are dismissed.
- **DENIED** in all other respects.

BY THE COURT:

/s/ Mitchell S. Goldberg

_____
**MITCHELL S. GOLDBERG, J.**