THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Direct Purchaser Actions* | MDL NO. 2445<br><br>Master File No. 2:13-MD-2445-MSG |

**DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLARIFICATION OF ORDER REGARDING DOWNSTREAM DATA**

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................1

II.  ARGUMENT..................................................................................................................2

    A.  The direct purchaser plaintiffs have fulfilled their obligation to comply with the Court's June 27, 2016 ruling.................................................................................2

    B.  The production of the direct purchaser plaintiffs' transactional level sales data is precisely what Indivior told this Court it needed.....................................................3

    C.  Indivior seeks to reassert discovery requests and arguments it abandoned long ago.............................................................................................................................6

    D.  Indivior wants the direct purchaser plaintiffs to respond fully to document requests that are overly broad and cumulative of the transactional data already produced....................................................................................................................9

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Durkee v. C.H. Robinson Worldwide, Inc.*,
  765 F. Supp. 2d 742 (W.D.N.C. 2011) ...................................................................................8

*Goney v. Clark*,
  749 F.2d 5 (3d Cir. 1984) ........................................................................................................7

*Gonzalez-Santos v. Torres-Maldonado*,
  839 F. Supp. 2d 488 (D.P.R. 2012) .........................................................................................7

**Other Authorities**

E.D. Pa. Local R. Civ. P. 72.1 ........................................................................................................7

Fed. R. Civ. P. 26(b)(2)(C) ...........................................................................................................10

Fed. R. Civ. P. 72(a) ..................................................................................................................8, 9

## I.  INTRODUCTION

In accord with the Court's invitation at the August 3 hearing, the direct purchaser plaintiffs[1] seek the Court's assistance in resolving a dispute regarding the Court's Order and Memorandum Opinion of June 27, 2016 related to "downstream" data (ECF No. 266-267).[2] Direct purchaser plaintiffs respectfully submit this motion for clarification and request for time to be heard at the upcoming hearing on August 18 (ECF No. 282).

Briefly, following the Court's entry of its Memorandum Opinion and accompanying Order on June 27, 2016 (the "ruling"), the direct purchaser plaintiffs began collecting and organizing their sales data for production to Indivior. All the direct purchaser plaintiffs have now produced comprehensive invoice-level sales data ("downstream" data) going back over seven years. This production includes copious amounts of granular sales data, including the prices paid (cash, co-pay and third-party coverage), the volumes purchased, coupons redeemed, and individual consumer insurance coverage. This is exactly the data that Indivior has asked for, in order to: assess the prices charged by wholesalers to their customers; assess the prices charged by pharmacies to their customers; analyze the sales price differentials between film and tablet as well as brand and generic versions; compare the sales price to the acquisition price; assess the sales prices and volumes by type of consumer and insurance company; disaggregate the effect of coupons; and compare forecasts to actual sales.

Indivior claims that the ruling requires the direct purchaser plaintiffs to search for, review, and produce any and all documents that are responsive to the eleven document requests

---

[1] This Motion is filed on behalf of Burlington Drug Company, Inc. ("Burlington Drug"), Meijer, Inc. and Meijer Distribution, Inc. (together "Meijer"), and Rochester Drug Co-Operative, Inc. ("RDC") (collectively "direct purchaser plaintiffs").

[2] Direct purchaser plaintiffs requested (by letter and during meet and confer) that the parties file a joint submission asking for clarification from the Court. Counsel for Indivior refused and informed the direct purchaser plaintiffs' counsel that Indivior "will likely file a motion on Monday, seeking to enforce the Court's Order." Email, J. Berman to S. Segura, August 12, 2016.

1

and one interrogatory, without regard for either the relevance or Indivior's litigation needs.[3] Based on the arguments made by Indivior to this Court, Indivior's expert affidavit, and this Court's June 27 ruling, the direct purchaser plaintiffs do not agree with Indivior, and the plaintiffs believe that their production of comprehensive sales data is exactly the downstream information sought by Indivior and permitted by the Court's ruling. Based on Indivior's reading of the ruling, it is no surprise that Indivior disagrees, but when asked what specific additional information Indivior (or its expert) would require, the direct purchaser plaintiffs were told – everything.

## II.  ARGUMENT

### A.  The direct purchaser plaintiffs have fulfilled their obligation to comply with the Court's June 27, 2016 ruling.

After considering all of the briefing on the "downstream" issue from the first six months of this year, the oral argument before this Court and this Court's ruling, the direct purchaser plaintiffs produced data reflecting individual brand and generic sales transactions on August 8 and 11.

Burlington Drug and RDC each produced data reflecting their invoice-level sales of branded Suboxone film and tablets and generic Suboxone tablets, including the quantities sold and the prices that these wholesalers charge downstream to their retail pharmacy customers. For example, RDC produced data comprising over 264,000 sales transactions over more than seven years. This data includes the date of each sale, the identity of each retail pharmacy customer, a description of the product sold, each product's NDC number, the invoice number, the quantity sold, the sales price and the extended sales price.

---

[3] "Indivior's motion was granted without limitation or qualification." Letter, J. Berman to S. Segura, August 9, 2016.

Meijer, a retail pharmacy chain suing under an assignment by a direct purchaser, produced over seven years of individual patient sales transaction data. This data includes: 1) the date the prescription was filled, 2) a description of the product dispensed, 3) the manufacturer, 4) the dispensed product identifying information (including NDC ID and UPC code), 5) the co-pay information, 6) the insurer or third party payment information, 7) any dispensing fee collected, 8) any coupon used, 9) the insurer or other carrier used, and 10) an individual patient ID number to track any changes in insurance or drug changes over time.

In conjunction with Burlington Drug's transmission of its data, counsel explained that with the production of transactional sales data, the direct purchaser plaintiffs believed their obligations under the ruling were complete. Indivior disagreed. Thereafter, the parties met and conferred on August 11. During that meet-and-confer conversation, the direct purchaser plaintiffs repeatedly asked Indivior what additional information it – or its expert – would need other than the already-produced data. Indivior refused to respond to the direct purchaser plaintiffs' requests, and instead insisted that direct purchaser plaintiffs search for and collect documents responsive to eleven document requests and one interrogatory in full, including requests that have nothing whatsoever to do with the prices charged or the quantities sold by the direct purchaser plaintiffs to their customers for brand and generic Suboxone. Counsel for Indivior announced that the time to meet and confer over the direct purchaser plaintiffs' production has passed.

**B.      The production of the direct purchaser plaintiffs' transactional level sales data is precisely what Indivior told this Court it needed.**

Indivior's insistence on receiving more than transactional data is at odds with the arguments it presented and with the Court's overall analysis. Indivior repeatedly told the Court that it sought discovery of the prices that wholesalers charge to their retailer customers and the

3

quantity of film and/or tablets ordered by those customers.  As Indivior indicated to the Court, "But coercion is the issue, so to prove coercion and in our case to disprove coercion . . . we want . . . the prices that . . . the wholesalers charge, downstream to their customers."  Transcript of April 20, 2016 Hearing at 14:25-15:3.  *See also, id*. at 12:7-12 ("the prices that [wholesalers] charge to those retailers . . . [is] information we think is going to be very relevant to . . . liability on this product hop claim . . . ."); *id*. at 16:20-24 ("[W]hat we want to show is that instead of the coercion that they're claiming, there were differences in pricing discounts going on that had a lot to do with how those purchases were made and the relationship between the purchases."); *id.* at 17:16-22 ("…if you look at that data of the prices, you're going to see places – times where the prices changed.  You're also going to see . . . that the wholesalers don't charge the same price to all the retailers.  So you're going to have differences in prices and differences in prices over time."); *id.* at 18:24-19:4  ("…if you look at that line between the wholesalers and the retailers, you're going to find that the amount of film that people were buying versus the amount of tablets or the overall amount of film plus tablets was changing based on the differences in prices that are made."); *id.* at 22:20-23 ("And what that evidence would show is that [Meijer] wasn't placing these retail orders based on coercion, it was placing those retail orders and changing the amount of film and tablets that it ordered based on what the prices were."); *id*. at 23:12-14 ("[I]f they will tell us what the prices were and what the discounts were, we've got evidence that it wasn't coercion . . . ."); *id*. at 26:18-19 ("But what we're doing is saying it's really the prices that matter here, not this alleged coercion . . . ."); *id*. at 35:13-15; ("What you tell is by what the retailers do.  What orders do they place in what amount from those wholesalers?")

During oral argument, Indivior also repeatedly referred to the need for "data."  See, *e.g., id* at 16:8-10 ("What we are saying is that if you look at that data, you're going to see that prices

4

had a lot to do with how much of Suboxone was purchased."); *id.* at 17:16-19 ("What we want to show, Your Honor, is that if you look at that data of the prices, you're going to see places – times where the prices changed."); *id.* at 26:15-17 ("So it's really – I mean, it's data. . . .You have to have data of a number of sales over time. . . ."); *id.* at 29:14-16 ("[T]his discovery would undermine the coercion if we get – if we're able to do the studies we want from that data.").[4] When discussing burden, Indivior again focused on "data." *Id.* at 36:24-25 ("[T]hey have a database.  They can give us that information."); *id.* at 42:8 ("They must have a tiny amount of data.").

Indivior's arguments are reflected in the Court's ruling, which describes Indivior as "press[ing] that downstream sales transactions undertaken by a direct purchaser of pharmaceutical drugs are relevant to issues of antitrust liability and, thus, are discoverable." Ruling at 2.  The ruling also describes Indivior as asserting that "discovery on downstream *data* is necessary to determine whether viable alternatives outside of the automatic generic substitution system were available to Direct Purchasers." *Id*. at 7 (emphasis added).  In the discussion of the parties' positions, the ruling refers only to "data" when describing the information sought by Indivior's economist Dr. Parker Normann.  The ruling describes Dr. Normann as "purport[ing] to offer eight 'types of analyses that could be supported by plaintiffs' *data*'" and "set[ting] out an adequate explanation as to how this *data* might be used to test Direct Purchasers' product hop theory of liability." *Id*. at 9, 8 n. 4 (emphasis added).

---

[4] Indivior told the Court that it planned on having an expert, Dr. Parker Normann, analyze direct purchaser plaintiffs' data.  Dr. Normann's affidavit specifically states that he was asked to "provide some examples of the types of analysis one could conduct using this type of *downstream data* to analyze the economic issues related to the Plaintiffs allegations." ECF No. 185-1 at ¶ 12 (emphasis added).  Dr. Normann then describes those analyses as requiring information such as "sales data . . . disaggregated by customer," "disaggregated data from direct purchasers," and "transaction level detail at the pharmacy level." *Id*. at 5-6.  Dr. Normann's proposed analyses consistently focus on pricing, using terms like "price differentials," "price charged by direct purchaser plaintiffs relative to their acquisition cost," "differences in relative prices," "variation in relative prices and volume," and "comparisons of sales." *Id*.

In the Analysis section of the ruling, the Court, explains that "[a]t this stage of the case, I am not prepared to conclude that downstream *data* is irrelevant to issues of liability in the product hop context." *Id*. at 14 (emphasis added). When addressing Rule 26(b)(1)'s proportionality requirement, the ruling again refers only to sales "data." The ruling describes Indivior as claiming that "there is no incremental burden from Direct Purchasers producing sales *data* 'of the exact same products.'" *Id*. at 14 (emphasis added). When weighing the probative value against the burden, the ruling concludes that "Indivior will be permitted to pursue discovery of downstream *data*." *Id*. at 15 (emphasis added).

C.   **Indivior seeks to reassert discovery requests and arguments it abandoned long ago.**

Since January, the parties have exchanged multiple sets of briefing on the issue of what information Indivior was requesting. This briefing was the subject of a telephone hearing before Magistrate Judge Rice and one hearing before this Court. Through briefing and argument on this "downstream discovery," Indivior has repeatedly narrowed what information it needed from the direct purchaser plaintiffs, including through the submission of its expert's affidavit. Indivior now seeks to disregard its previous affirmations to the Court and return to the day it first served the document requests.

In its objection to Judge Rice's denial of its motion to compel, Indivior only specified its need for data. It claimed to be "entitled to discover evidence relating to plaintiffs' core factual contentions," that "[s]uch evidence is likely to be found in the possession of the class plaintiffs," and "as shown by expert testimony, their *data* can serve as the basis for economic analysis." ECF No. 204 at 2 (emphasis added). Indivior claimed that it sought downstream data, "because the *data* will show that Indivior's conduct in no way foreclosed generics' ability to compete." *Id*. at 13 (emphasis added). Indivior relied on Dr. Normann's affidavit as "set[ting] out in detail why the requested information would be useful, and how he intended to use the *data*." *Id*. at 14

6

(emphasis added). Indivior again emphasized data when discussing the purportedly useful information the direct purchaser plaintiffs might have. It discussed how "Meijer possesses detailed *data* showing precisely what every customer purchased and at what price . . . ." and "the wholesaler *data*, by providing a view of individual customer pricing, can show price movements (and the resulting shift in sales) . . . ." *Id*. at 15, 16 (emphasis added).[5]

Although Indivior consistently maintained that it and its expert needed transaction-level data of prices charged to the direct purchaser plaintiffs' customers to rebut Plaintiffs' allegations, it now inconsistently insists that eleven broad document requests and one interrogatory seeking much more than data are all subject to this Court's ruling.[6] Yet Indivior, as the objecting party, never provided any argument or basis for this Court to appropriately consider Judge Rice's denial of discovery beyond Indivior's request for transaction-level sales data.

A party who objects to a magistrate's ruling must present a developed account of its legal argument. E.D. Pa. Local R. Civ. P. 72.1 IV(a) ("Such party shall file with the Clerk of Court, and serve on the magistrate judge and all parties, a written statement of objections which shall specifically designate the order, or part thereof, subject to the objections and the basis for such objection.") *See e.g., Goney v. Clark,* 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process."); *Gonzalez-Santos v. Torres-Maldonado*, 839 F. Supp. 2d 488, 500-501 (D.P.R. 2012) (court found that plaintiffs waived their objections by merely stating three objections and failing to develop

---

[5] Indivior's objection does make reference to Meijer's pharmacy "emails, analyses, and other documents." *Id.* at 15-16. However, searching the files of every Meijer pharmacy for mentions of "suboxone" would be incredibly burdensome and would be cumulative of the pharmacy-level data that Meijer has already produced.

[6] As an illustration, Request No. 31 asks for prior testimony by direct purchaser plaintiffs in "any litigation or government investigation relating to your purchase and/or sale of pharmaceutical products or pharmaceutical benefits."

7

arguments or cite any legal authority); *Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 747 (W.D.N.C. 2011) (party must object on issue with sufficient specificity so as reasonably to alert court of true ground for objection, and party may not merely reiterate all arguments made to magistrate judge).

Having failed to properly object to Judge Rice's order beyond its application to requests for downstream data, Indivior has waived its arguments concerning the other discovery requests. *See*, Fed. R. Civ. Pro. 72(a) (following the 14-day period to object, "a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.").

Indeed, Indivior never specifically mentions most of the discovery requests other than making a passing reference to them by number. Neither Indivior's Objections nor its Reply in Support of Objections presents any argument whatsoever in connection with Request No. 3 (all documents relating to the resale of brand or generic Suboxone); Request No. 7 (annual sales and annual profit margin documents); Request No. 8 ("All rebates related to [brand or generic Suboxone]"); Request No. 10 ("analy[ses] or forecast[s]" of generic entry of Suboxone on volumes, prices, and profits); Request No. 13 ( "All contracts, agreements or understandings regarding . . . the sale of [brand or generic Suboxone]); Request No. 14 ("All . . . communications regarding your . . . sale of [brand or generic Suboxone]); and Request No. 31 ("All sworn testimony given by [the direct purchaser plaintiffs] in "any litigation or government investigation relating to your purchase and/or sale of pharmaceutical products or pharmaceutical benefits"). While Indivior speculates that Meijer engages in communications with pharmacy benefit managers, insurers, governments, and other payors as sought in Request No. 4, it provides no argument or justification for requiring the production of such communications, and

at best for Indivior, such communications would be duplicative of the actual sales and price information reflected in the data already produced by Meijer.

Similarly, Indivior previously waived Requests No. 11 and 12 seeking documents relating to "the relative features, benefits, or comparisons between Buprenorphine Products" and "switching between or among Buprenorphine Products." In its opening brief, Indivior asserted that downstream discovery concerning Suboxone and other buprenorphine drugs was necessary to investigate "how this range of products interact [sic] in the marketplace" in order to resolve "a dispute regarding the scope of the relevant market." ECF No. 178 at 7. Following a hearing, and before Plaintiffs had formally responded, Judge Rice rejected this discovery, holding that "Direct Purchasers are not required to search for documents relating to all competing products that may be within the market. Such evidence is not relevant." ECF No. 183 at 2 (emphasis added). Indivior did not object to or move to reconsider this judgment, and the time within which it was required to do so is long past. *See* Fed. R. Civ. P. 72(a).

**D.**     **Indivior wants the direct purchaser plaintiffs to respond fully to document requests that are overly broad and cumulative of the transactional data already produced.**

To the extent that Indivior properly objected to Magistrate Rice's discovery order beyond downstream data, a fact the direct purchaser plaintiffs contest, the remaining discovery requests at issue are overly broad and cumulative of the transactional sales data already produced by the direct purchaser plaintiffs.[7] As shown above, the majority of the document requests at issue seek documents relating to the direct purchaser plaintiffs' sales to their customers, *i.e.*, contracts or agreements, insurance or health benefit coverage, annual sales and profit margins, rebates, and

---

[7] To the extent that Indivior's requests seek documents showing individual patient behavior, the direct purchaser plaintiffs have already explained (and supported with record evidence) that wholesalers Burlington Drug and RDC sell to pharmacies, but have no interaction with doctors, patients, or health plans. *See* ECF No. 197 at 18. Plaintiff Meijer, a retailer, does not generate or maintain documents reflecting consumer preferences, consumer reactions to specific drugs and prices, or pharmacists' communications with individual patients. *See id.* at 19. Meijer's contracts with insurers and pharmacy benefit managers do not contain specific pricing information for Suboxone or its generic equivalents, so they also cannot yield the information defendant is seeking. *Id.*

9

communications. These requests are cumulative of the transactional sales data the direct purchaser plaintiffs have already produced. Under such circumstances, the Court can and should exercise its authority under Fed. R. Civ. P. 26(b)(2)(C) to limit discovery that is "otherwise allowed" if such discovery is "unreasonably cumulative or duplicative . . . ." Fed. R. Civ. P. 26(b)(2)(C)(i).

Dated: August 15, 2016

**Respectfully submitted,**

/s/ Thomas M. Sobol
Thomas M. Sobol
Jessica R. MacAuley
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700

Bruce E. Gerstein
Joseph Opper
Kimberly Hennings
Garwin Gerstein & Fisher LLP
88 Pine Street
New York, NY 10005
(212) 398-0055

Peter Kohn
Joseph T. Lukens
Richard Schwartz
Faruqi & Faruqi LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
(215) 277-5770

*Interim Co-Lead Counsel for the Direct Purchaser Class Plaintiffs*

10

## LOCAL RULE 26.1(f) CERTIFICATION

Pursuant to Local Rule 26.1(f), on August 11, 2016, the parties held a teleconference meet and confer in an attempt to reach an agreement regarding the downstream data discovery obligations. As a result of this meet and confer, the parties have been unable to agree on the direct purchaser plaintiffs' discovery obligations.

Dated: August 15, 2016 　　　　　　　　　　**/s/ Thomas M. Sobol**
　　　　　　　　　　　　　　　　　　　　　Thomas M. Sobol


## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, certify that, on this date, the foregoing document was served by filing it on the court's CM/ECF system and additionally via electronic mail to all counsel of record.

Dated: August 15, 2016 　　　　　　　　　　**/s/ Thomas M. Sobol**
　　　　　　　　　　　　　　　　　　　　　Thomas M. Sobol