# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All End-Payor Actions | MDL No. 2445<br><br>Master File No. 2:13-md-02445-MSG |

## DECLARATION OF KENNETH A. WEXLER IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, Kenneth A Wexler, make the following declaration:

1. I am over 21 years of age, of sound mind and body, and otherwise competent to testify. The court has appointed me Interim Co-Lead counsel for the End-Payor Plaintiffs in the above-styled class action, and as such, I have personal knowledge of the matters in this declaration.

2. Attached as Exhibit 1 are true and correct copies of purchase data, "Exemplar Class Member Identification Data," from the Named Plaintiffs A.F. of L. – A.G.C. Building Trades Welfare Plan, Construction & General Laborers' Local 190 Welfare Fund, I.B.E.W. 292 Health Care Plan, Michigan Regional Council of Carpenters Employee Benefits Fund, Painters District Council No. 30 Health and Welfare Fund, Teamsters Health Services and Insurance Plan Local 404, and United Food & Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; Suboxone-EPP-AFLACG-0340-0350, Suboxone-EPP-AFLACG-0782-0789 (AFL-AGC); Suboxone-EPP-CITYOFPROVIDENCE-49781-49852, Suboxone-EPP-CITYOFPROVIDENCE-49853-50100, Suboxone-EPP-CITYOFPROVIDENCE-01254-01257

(City of Prov.); Suboxone-EPP-LOCAL190-NATIVE-0001-0002 (Construction & General Laborers); Suboxone-EPP-IBEW292-NATIVE-0001-0006, Suboxone-EPP-IBEW292-0595-0598 (I.B.E.W.); Suboxone-EPP-MRCC-NATIVE-0001-0176 (Michigan Regional Council); Suboxone-EPP-Painters-Native-0001-0002, Suboxone-EPP-Painters-Native-0003-0006 (Painters); Suboxone-EPP-Teamsters404-NATIVE-0001-0007 (Teamsters); and Suboxone-UFCWNEPA-NATIVE-0001-0020, Suboxone-UFCWNEPA-NATIVE-0021-0022 (UFCW).

3. Attached as Exhibit 2 are true and correct copies of the firm resumes for Wexler Wallace LLP, Spector Roseman & Kodroff, Hilliard Shadowen LLP, Miller Law LLC, and Motley Rice LLC.

4. Attached as Exhibit 3 is a true and correct copy of R.B. Commercial Managed Care Update presentation, RBP-02421337.

5. Attached as Exhibit 4 is a true and correct copy of the Declaration of Myron Winkelman ("Winkelman Decl.").

6. Attached as Exhibit 5 is a true and correct copy of the Declaration of Carla A. Peak ("Peak Decl.").

7. Attached as Exhibit 6 is a true and correct copy of the Declaration of Laura R. Craft ("Craft Decl.").

**Class Member Identification Methodology**

7. In the context of a damages class sought under Rule 23(b)(3), this Court has stated that the ascertainability test set forth by the Third Circuit is twofold, requiring (1) that the class be defined with reference to objective criteria and (2) that there is a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 06-cv-1833, 2015 U.S. Dist. LEXIS

74846, *21-22 (E.D. Pa. June 10, 2015) ("*Provigil*") (quoting *Byrd v. Aarons Inc.*, 784 F. 3d 154, 163 (3d Cir. 2015)). Regarding the second prong, the Court stated in *Provigil* that the plaintiffs' method for identifying class members must be "administratively feasible" in the sense that "identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Id.* at *23 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3d Cir. 2013)).

8. Plaintiffs do not seek a damages class pursuant to Rule 23(b), but an injunctive class under Rule 23(b)(2) and an issues class under Rule 23(c)(4). The issues class sought to be certified is defined as follows:

> All persons or entities who purchased and/or paid for some of all of the purchase price for Co-Formulated Buprenorphine/Naloxone ("Suboxone") in California, Florida, Iowa, Michigan, Minnesota, Mississippi, Nevada, New York, Pennsylvania, Virginia, and Wisconsin in any form for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries at any time during the period January 1, 2012 through the date of class certification.

9. In an effort to determine if the class was sufficiently objectively defined such that notice, if ordered, could be given to class members in compliance with Rule 23, Plaintiffs' Interim Co-Lead Counsel presented the class definition to a nationally known notice and claims administration firm – KCC, LLC ("KCC") – and asked if it could devise a notice plan that would comport with the guidelines in the Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide endorsed and published by [the] Federal Judicial Center. As reflected in the Peak Decl., KCC concluded that, consistent with the many notice plans it has devised for TPPs and consumers in pharmaceutical antitrust cases such as this one, it could do so. *See* Peak Decl. at ¶ 7.

10. If the Court chose to apply a full Rule 23(b)(3) ascertainability analysis to the Rule 23(c)(4) class sought here, Plaintiffs' Interim Co-Lead Counsel could employ a methodology,

3

described below, demonstrating that the class members comprising the class definition can be identified in an administratively feasible manner.

11. The identities of consumer class members are HIPAA-protected. Pursuant to 45 CFR section 164.512(e)(1), however, the Court has the power to issue subpoenas requiring the production of HIPAA-protected information.[1] Therefore, Plaintiffs' Interim Co-Lead Counsel would move the Court to issue subpoenas to the top six PBMs, the ten largest TPPs, the top ten chain store pharmacies, and the top five mail order pharmacies, to request the production of records identifying purchasers of branded and generic Suboxone during the relevant period.[2] As reflected in the Winkelman Decl., the requested subpoenas, once served, would capture the identities of the great majority of the class members as defined. Winkelman Decl. at ¶¶ 18-38.

12. Plaintiffs' Interim Co-Lead Counsel would then retain OnPoint Analytics ("OnPoint") to analyze the data when received in response to the subpoenas. *See generally* Craft Decl. As part of their engagement, Interim Co-Lead Counsel would require OnPoint to sign onto and be bound by the HIPAA-compliant protective order in the case.

13. After the protective order was signed and upon receipt of the information requested in the subpoenas, Plaintiffs' Interim Co-Lead Counsel would provide the data to OnPoint. As described in the Craft Decl. at ¶ 7, OnPoint would then process the data and compile a list reflecting the identities of those in the data who fit the class definition.

14. With respect to the minority of class members not identified through the subpoena process, these class members, if any, have—or have access to—the records of their purchases

---

[1] 45 CFR section 164.512(e)(1) provides that HIPAA-protected information may be disclosed "in the course of any judicial or administrative proceeding" in response to a court order (164.512(e)(1)(i)) or subpoena (164.512(e)(1)(ii)).
[2] The Court has already entered a HIPAA-compliant protective order in this case. ECF No. 86 (E.D. Pa. Dec. 19, 2013).

and proof of their membership in the defined class. Winkelman Decl. at ¶¶ 18, 36. In other words, they can be identified.

Date: September 18, 2018

_____

Kenneth A. Wexler