**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All End-Payor Actions | MDL No. 2445<br><br>Master File No. 2:13-md-02445-MSG |

**<u>REPLY MEMORANDUM IN SUPPORT OF
END-PAYOR PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENT

I.   INTRODUCTION ................................................................................................ 1

II.  A RULE 23(C)(4) ISSUES CLASS IS THE MOST EFFICIENT MECHANISM FOR ADJUDICATING INDIVIOR'S ANTICOMPETITIVE CONDUCT .................................. 2

    A.   The Proposed Common Issues Can Be Adjudicated On A Class-Wide Basis. ................. 4

        1.   Certification of the issues class will resolve common antitrust violation elements……………………………………………………………………………..7

        2.   Common issues are divisible from individual issues and should be certified. ....... 9

        3.   Issues class certification here is not unconstitutional. .......................................... 11

    B.   Certification Of The Issues Class Materially Advances The Case. ................................. 12

    C.   Rule 23(B)(3) Ascertainability Does Not Apply To Rule 23(C)(4) Certification And Is Satisfied In Any Case. ................................................................................................ 12

III.  EPPS' RULE 23(B)(2) CLASS SHOULD BE CERTIFIED FOR DECLARATORY AND INJUNCTIVE RELIEF. ................................................................................................ 14

IV.  CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Advoc. Health Care v. Mylan Labs., Inc.* (*In re Lorazepam & Clorazepate Antitrust Litig.*),
  202 F.R.D. 12 (D.D.C. 2001) ................................................................................ 7

*Allen v. McCurry*,
  449 U.S. 90 (1980) .................................................................................... 3, 4

*Am. Sales Co. v. AstraZeneca LP* (*In re Nexium (Esomeprazole)*),
  842 F.3d 34 (1st Cir. 2016) ............................................................................ 9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................... 4

*Astrazeneca AB v. UFCW* (*In re Nexium Antitrust Litig.*),
  777 F.3d 9 (1st Cir. 2015) ........................................................................... 12

*Atl. Richfield Co. v. USA Petrol. Co.*,
  495 U.S. 328 (1990) ................................................................................... 9

*Augustin v. Jablonsky* (*In re Nassau Cty. Strip Search Cases*),
  461 F.3d 219 (2d Cir. 2006) .......................................................................... 7

*Biovail Corp. Int'l v. Hoechst AG.*,
  49 F. Supp. 2d 750 (D.N.J. 1999) ..................................................................... 4

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ......................................................................... 7

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015) ...................................................................... 13, 14

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ......................................................................... 13

*Certified Question U.S. Dist. Court Order v. Philip Morris*,
  621 N.W.2d 2 (Minn. 2001) ........................................................................... 10

*DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms. Inc.*,
  903 F. Supp. 2d 198 (S.D.N.Y. 2012) ................................................................. 10

*Fitzpatrick v. Gen. Mills, Inc.*,
  635 F.3d 1279 (11th Cir. 2011) ...................................................................... 10

*Fleischman v. Alb. Med. Ctr.*,
  No. 1:06-CV-765, 2008 U.S. Dist. LEXIS 57188 (N.D.N.Y. July 28, 2008)……...…………6

*Franchi Constr. Co. v. Combined Ins. Co.*,
    580 F.2d 1 (1st Cir. 1978) ................................................................. 11

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ........................................................... 1, 9

*Gonzalez v. Corning*,
    885 F.3d 186 (3d Cir. 2018) ............................................................... 9

*Gunnells v. Healthplan Servs.*,
    348 F.3d 417 (4th Cir. 2003) .............................................................. 3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ................................................................. 10-11

*Hiser v. Franklin*,
    94 F.3d 1287 (9th Cir. 1996) ............................................................ 14

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.* ,
    No. 09-md-2023 (BMC), 2012 U.S. Dist. LEXIS 143955 (E.D.N.Y. Oct. 2, 2012)  ............ 14

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) ......................................................... 3

*In re Flonase Antitrust Litig.*,
    284 F.R.D. 207 (E.D. Pa. 2012) ......................................................... 3

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) .............................................................. 2

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014) ............................................................. 7

*In re Prograf Antitrust Litig.*,
    No. NO. 1:11-md-02242-RWZ, 2014 U.S. Dist. LEXIS 138429 (D. Mass. June 10, 2014)
    ..................................................................................... 5, 6, 7, 11

*In re Skelaxin Antitrust Litig.*,
    299 F.R.D. 555 (E.D. Tenn. 2014) ...................................................... 14

*In re Suboxone Antitrust Litig.*,
    64 F. Supp. 3d 665 (E.D. Pa. 2014) ..................................................... 8

*In re Terazosin Hydrochloride Antitrust Litig.*,
    164 F. Supp. 2d 1340 (S.D. Fla. 2000) ................................................. 4

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................... 2, 10

*Lumco Indus. v. Jeld-Wen, Inc.*,
    171 F.R.D. 168 (E.D. Pa. 1997) ..................................................... 3, 7, 9

*New York v. Actavis Pub. Ltd. Co.*,
    787 F.3d 638 (2d Cir. 2015) ............................................................................ 8

*Novo Nordisk A/S v. Becton Dick. & Co.*,
    997 F. Supp. 470 (S.D.N.Y. 1998) ................................................................. 15

*Payton v. Abbott Labs*,
    83 F.R.D. 382 (D. Mass. 1979) ....................................................................... 6

*Prograf Antitrust Litig.*,
    No. 1:11-md-02242, 2014 U.S. Dist. LEXIS 138429 (D. Mass. June 10, 2014) .................... 5

*Relafen Antitrust Litig. v. Smithkline Beecham Corp.*,
    01-CV-12239-WGY, No. 02-CV-10163-WGY, No.02-CV-lQ205.WGY, No. 02-CV-985
    (E.D. Pa.), No.02-CV-10424-WGY, No.02-CV-10487-WGY, No. 02-CV-10589-WGY,
    No.02-CV-10671-WGY, No.02-CV-11543-WGY, No. 02-CV-I1806-WGY, 2004 U.S. Dist.
    LEXIS 29834 (D. Mass. Nov. 24, 2004) ............................................................ 14

*Romero v. Allstate Ins. Co.*,
    52 F. Supp. 3d 715 (E.D. Pa. 2014) ................................................................. 9

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ................................................................. 6, 7, 11

*Summit Health v. Pinhas*,
    500 U.S. 322 (1991) ...................................................................................... 4

*Swank v. Wal-Mart Stores, Inc.*,
    No. 2:13-cv-1185, 2018 U.S. Dist. LEXIS 94113 (W.D. Pa. June 5, 2018) .......................... 9

*Toy v. Metro. Life Ins. Co.*,
    928 A.2d 186 (Pa. 2007) .............................................................................. 10

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ...................................................................................... 8

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    No. 2:06-cv-1833, 2015 U.S. Dist. LEXIS 74846 (E.D. Pa. June 10, 2015) ...................... 2, 13

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 1, 14

# I.    INTRODUCTION

Plaintiffs seek certification of a Fed. R. Civ. P. Rule 23(c)(4) issues class tailored to the elements required to prove an antitrust violation.  As numerous courts have recognized, proof of an antitrust violation centers on evidence of the defendant's conduct.[1]  There are no individual issues.  Certification of the issues class will ensure the efficient advancement of this litigation for all parties and this Court.[2]

Indivior responds by ignoring the commonality of the issues Plaintiffs present for certification and falsely claiming that Plaintiffs seek to certify an issues class that includes antitrust injury.[3]  Def.'s Br. at 1.  Dr. Parker Normann—the sole expert Indivior retained to oppose EPP class certification—submitted a report attacking EPPs' methodology for determining injury, yet admitted he knew that EPPs are not seeking a class on the issue of injury.[4]  He further admitted he was not asked to and did not opine on the legitimacy of EPPs' proposed issues class.[5]  The simple truth is that Indivior's opposition neither addresses Plaintiffs' motion nor demonstrates that it should not be granted.

Consistent with *Gates v. Rohm & Hass Co.*, 655 F.3d 255 (3d Cir. 2011), EPPs specifically enumerated the issues to be certified.  Antitrust injury is not one of them.  The issues to be certified here are necessary to establish a violation of the relevant state laws.  An antitrust

---

[1] *See infra*, Sections II.A-B.
[2] See Pls.' Br. at 1, 18-22.
[3] Indivior's emphatic focus on antitrust injury is difficult to understand given its explicit recognition, in the second sentence of its opposition, that "[EPPs'] plan instead is to separate 'liability' from injury and damages" in a trial.  Defs. Br. at 1.
[4] Normann Tr. 222:23-25 (A. My understanding, as I say in the report, is that you're not seeking a class in injury purposes.).
[5] Normann Tr. 252:4-9 (Q. Well, is there anywhere in your report where you say that the certification of an issues class is inappropriate? A. Oh, sorry. So do you mean—no, I don't— sorry, I don't opine on the legitimacy of an issues class.).

violation would have to be proven, using the same evidence, at every individual trial. Certification of the proposed issues class will therefore allow the parties to materially and efficiently advance the ultimate determination of Indivior's liability without wasting the resources needed to prove an antitrust violation in thousands of separate end-payor trials.

Indivior's criticisms of EPPs' proposed injunctive class fare no better. If Plaintiffs prevail on the merits of their claims, Indivior would have to provide corrective disclosures to physicians and consumers to inform them that a jury found that Indivior made misleading safety proclamations regarding Suboxone tablets. Amazingly, Indivior takes the position that correct prescription safety information has no common benefit to recovering addicts who have purchased Suboxone and are likely to purchase Suboxone again. EPPs disagree; regardless of Indivior's other arguments, every Suboxone purchaser, past and present, would benefit if their prescribing physician had accurate information regarding the true respective safety profiles of Suboxone tablets and film. Accordingly, EPPs' motion for class certification should be granted.

## II.     A RULE 23(C)(4) ISSUES CLASS IS THE MOST EFFICIENT MECHANISM FOR ADJUDICATING INDIVIOR'S ANTICOMPETITIVE CONDUCT

An antitrust violation is the first element to the claims of all EPP Class members. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) ("The elements of plaintiffs' claim are (1) a violation of the antitrust laws. . ., (2) individual injury resulting from that violation, and (3) measurable damages." (citation omitted)). No liability can attach until an antitrust violation is established. The existence of an antitrust violation (or lack thereof) will be resolved through Rule 23(c)(4) certification.

Allegations that Indivior's conduct violated state antitrust and consumer protection laws are tailor-made for class-wide adjudication. *See, e.g.*, Compl. ¶¶ 3-4, 36-47, 88-98; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *Vista Healthplan, Inc.*,

2015 U.S. Dist. LEXIS 74846, at *45; *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 217 (E.D. Pa. 2012). The allegations and analysis focus entirely on Indivior's conduct. *See Flonase*, 284 F.R.D. at 219. Thus, "the first element of Plaintiffs' claim—whether Defendants violated the antitrust laws—depends entirely upon generalized proof," and the "predominate questions with respect to this element of liability" will focus on whether Indivior engaged in anticompetitive conduct to undermine and delay competition from generic Suboxone tablets. *Lumco Indus. v. Jeld-Wen, Inc.*, 171 F.R.D. 168, 172 (E.D. Pa. 1997). "[T]he proof necessary to demonstrate the existence, implementation and effect of this alleged [scheme] would require a common thread of evidence which would correspond to evidence which otherwise would be introduced by absentee class members." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484 (W.D. Pa. 1999).

Indivior also benefits from certification.[6] Class-wide resolution of the proposed issues will protect Indivior from contrary judgments and eliminate the risk of asymmetric applications of issue preclusion in other jurisdictions. *See Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427 (4th Cir. 2003) (explaining that when a defendant "los[es] on a claim to an individual plaintiff, subsequent plaintiffs [can] use offensive collateral estoppel to prevent [defendant] from litigating the issue," while a favorable judgment for a defendant has no such binding effect "because the [subsequent] plaintiff would not have been a party to the original suit." (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980) ("The concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue.")). A class-wide judgment is binding on all class members, but Indivior cannot

---

[6] The common issues proposed for Rule 23(c)(4) certification here will be litigated and tried by all plaintiffs seeking to establish an antitrust violation. Certification will conserve judicial resources and reduce litigation costs by dispensing with the need to re-litigate the existence of an antitrust violation at multiple trials, for multiple plaintiff-groups, when one trial on the common issues would be appropriate.

offensively assert a favorable judgment against one plaintiff to prevail against other plaintiffs on the existence of an antitrust violation.[7]  *Id.*

Whether Indivior committed an antitrust violation is a question that can be answered with the same evidence for all parties in this litigation.  Issues class certification will dispense with the need for the parties to engage in duplicative discovery, witness testimony, expert analysis, and legal briefing on the *exact same issues* already being addressed in this case.

### A.  The Proposed Common Issues Can Be Adjudicated On A Class-Wide Basis.

Indivior does not dispute that the proposed common issues are capable of resolution on a class-wide basis.  See Def's. Br. at 20-21.  Instead, Indivior falsely asserts that Plaintiffs seek certification of a "liability class" rather than an issues class specifically limited to the common issues that comprise an antitrust violation.  *Id.* at 20.  Indivior asserts that the "requested liability class" fails because antitrust liability requires a finding of antitrust injury and Plaintiffs do not propose to demonstrate antitrust injury on a class-wide basis.  *Id.*  But there is no legal support for the argument that issues class certification is only acceptable when antitrust injury is one of the issues included for class-wide treatment.  *Id.*  That is not the law under Rule 23(c)(4), the cases applying it, or the predominance standard of Rule 23(b)(3).  *See, e.g.,* A*mgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455, 469 (2013) (Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof").  Indivior does not dispute that Plaintiffs can offer class-wide evidence on the proposed issues establishing an antitrust violation.[8]

---

[7] Notably, the application or non-application of offensive collateral estoppel would itself have to be litigated in every individual case as well.

[8] *See Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991) (explaining that "the essence of any violation of § 1 is the illegal agreement itself – rather than the overt acts performed in further of it," and whether plaintiffs establish a violation depends "not upon actual consequences, but

Several courts have recognized the benefit of litigating a limited scope of common issues. In a similar generic suppression antitrust case, the District of Massachusetts certified a Rule 23(c)(4) class on the issues comprising an antitrust violation, just as Plaintiffs propose here. *See In re: Prograf Antitrust Litig.*, No. 1:11-md-02242, 2014 U.S. Dist. LEXIS 138429, at *5 (D. Mass. June 10, 2014). The *Prograf* plaintiffs, like Plaintiffs here, asserted monopolization claims under the antitrust and consumer protection statutes of twenty-seven states, alleging that defendant, "by filing a baseless 'sham' citizen petition with the FDA, sought to improperly delay market entry by generic competitors and extend its monopoly" in the relevant market. *Prograf*, 1:11-md-02242, ECF. No. 350, at 4, 12. As a result, the plaintiffs alleged that the defendant delayed generic entry and plaintiffs continued to pay supra-competitive prices. *Id.* at 4.

After the *Prograf* court denied class certification of a Rule 23(b)(3) class, the plaintiffs renewed their motion for issue-class certification under Rule 23(c)(4), asserting that "common issues clearly predominate with respect to the first element of an antitrust claim, violation of antitrust law." *Prograf*, 2014 U.S. Dist. LEXIS 138429 at *7. In granting the motion, the *Prograf* court explained that "[p]artial certification offers several legal and practical advantages in this case," including overcoming incentive and resource issues attendant to individual litigation because "proving antitrust conduct by Astellas. . . is a complex and costly endeavor." *Id.* at *7-8. The court further recognized that "separate legal actions. . . [were] likely to require duplicative discovery and redundant litigation," but issues class certification "would allow the

---

rather upon the potential harm that would ensue if the conspiracy were successful"); *In re Terazosin Hydrochloride Antitrust Litig.*, 164 F. Supp. 2d 1340, 1351-52 (S.D. Fla. 2000). (granting partial summary judgment in favor of plaintiffs on the existence of an unlawful reverse-payment in violation of the Sherman Act, regardless of whether it caused injury to plaintiffs); *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 772 (D.N.J. 1999) (distinguishing antitrust violation from injury).

parties to resolve the question of an antitrust violation in one efficient and economical stroke." *Id.* at \*8. While a favorable judgment alone would not fully establish the defendant's liability on a class-wide basis, "it would significantly advance each class member's claims; with a violation of antitrust law already determined, class members could then choose to proceed with their claims individually to prove impact and damages." *Id*; *see also Fleischman v. Albany Med. Ctr.,* No. 1:06-CV-765, 2008 U.S. Dist. LEXIS 57188, at \*22-23 (N.D.N.Y. July 28, 2008) (certifying Rule 23(b)(3) class to determine whether defendants committed "a violation of antitrust law" but not as to injury-in-fact or damages); *Payton v. Abbott Labs*, 83 F.R.D. 382, 386-87 (D. Mass. 1979) ("If the plaintiffs win favorable determinations on the class issues, they will not have proved the defendants' liability to class members, but they will have established legal and factual prerequisites to it. Answers to common questions need not guarantee a determination of liability."), *vacated on other grounds*, 100 F.R.D. 336 (D. Mass. 1983). On the other hand, if the plaintiffs failed to establish the first element of their antitrust claims, a binding judgment would shield defendant from the claims of individual plaintiffs. *Prograf*, 2014 U.S. Dist. LEXIS 138429 at \*8. Such is the case here, too; Plaintiffs assert the same state law claims, invoke the same monopolization theory of antitrust liability, and rely upon common evidence that focuses on Indivior's anticompetitive conduct.

The Seventh Circuit has similarly observed that common class issues "often will be the most complex and costly to prove, while the individual issues and the information needed to prove them will be simpler and more accessible to individual litigants." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014). Plaintiffs' claims have required complex and costly analysis of Indivior's conduct, its anticompetitive effect on the relevant product market, and the contours of a hypothetical competitive world where generic Suboxone tablets entered the

market earlier.  *See Prograf*, 2014 U.S. Dist. LEXIS 138429 at *7-8.  Individual issues related to

injury and damages, by contrast, can be resolved by reference to individual plaintiff purchase

data.  *See Suchanek*, 764 F.3d at 760 ("At the back end, if the class prevails on the common

issue, it would be a straightforward matter for each purchaser to present her evidence on reliance

and causation.").[9]

Indivior presents a lengthy hypothetical discussion on what Patient X and IBEW would

need to prove in order to establish antitrust injury and damages.  None of this discussion is

relevant to the issues presented for certification, nor to deciding whether it is more efficient to

litigate the elements of an antitrust violation in one stroke instead of individually for an endless

queue of subsequent end-payors.  Without issues class certification, Patient X, IBEW, and every

other end-payor must each bear the enormous costs—in terms of time, effort, and expense—

required to obtain and submit the same antitrust violation evidence already presented here.

Where Plaintiffs have done the evidentiary legwork to prove that Indivior committed an antitrust

violation, Indivior cannot dispute that Plaintiffs have significantly advanced the claims of Patient

X, IBEW, and every other end-payor.

### 1.  Certification of the issues class will resolve common antitrust violation elements.

Indivior's conduct is evaluated under the rule-of-reason framework.  That analysis is

entirely common for all EPPs.[10]  "The key question is whether the defendant combined the

_____

[9] Courts regularly support certification, even under Rule 23(b)(3), where key elements to liability
can be resolved through common evidence.  *See In re Nassau Cty. Strip Search Cases*, 461 F.3d
219, 229-30 (2d Cir. 2006) (referencing "whether the blanket policy existed and whether
defendants are liable for its implementation"); *see also In re IKO Roofing Shingle Prods. Liab.
Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (noting that "[i]t is not hard to frame liability issues
suited to class-wide resolution" in a product defect case); *Butler v. Sears, Roebuck & Co.*, 727
F.3d 796, 801 (7th Cir. 2013) (noting that "[t]here is a single, central, common issue of liability:
whether the Sears washing machine was defective").
[10] *See, e.g., Jeld-Wen, Inc.*, 171 F.R.D. at 172 ("The fact-finder's focus of inquiry [into an
antitrust violation] will be on the Jeld-Wen Defendants' words and actions; it will not vary

introduction of a new product with some other wrongful conduct, such that the comprehensive effect is likely to stymie competition, prevent consumer choice and reduce the market's ambit." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 682 (E.D. Pa. 2014); *see also New York v. Actavis PLC*, 787 F.3d 638, 654 (2d Cir. 2015) ("*Namenda*").

The first prong of the rule-of-reason requires an evaluation of whether Indivior willfully maintained monopoly power through anticompetitive means. *See Suboxone*, 64 F. Supp. at 678 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). Indivior does not contest that Plaintiffs may prove monopoly power, relevant market, and anticompetitive conduct through common evidence.[11] The common evidence will include expert analysis from Dr. Russell Lamb into the cross-elasticity of demand between Suboxone tablets, film, and other products, in addition to direct evidence of Indivior's market power. Plaintiffs will also show that Indivior introduced Suboxone film in tandem with a misinformation campaign designed to undermine the perceived safety of Suboxone tablets and a baseless Citizen Petition intended to delay generic tablet approval, culminating in the removal of the tablets from the market

---

among individual class members."); *In re Lorazepam & Clorazepate Antitrust Litig*. 202 F.R.D. 12, 29 (D.D.C. 2001) ("As is true in many antitrust cases, the alleged violations of the antitrust laws at issue here respecting price fixing and monopolization relate solely to Defendants' conduct, and as such proof for these issues will not vary among class members." (internal quotation marks and citation omitted)).

[11] Indivior argues that EPPs failed to identify the specific common evidence that will ultimately be used to prove the antitrust violation issues, Def.'s Br. at 2, but the relevant undisputed point is that the evidence collected jointly by all plaintiffs to prove an antitrust violation is common evidence from Indivior, third-parties, or experts. *See* Decl. of Caitlin Coslett in Supp. of Direct Purchaser Class Pls.' Mot. for Class Cert. (and supporting exhibits, incorporated by reference), ECF No. 473-3. None of the evidence going to the antitrust violation elements is plaintiff-specific. Indivior's manufactured requirement that EPPs must explicitly and redundantly present all of their specific common merits evidence at this stage is also contrary to the Court's schedule in this case, which staged merits expert reports after class certification.

altogether, all of which were intended to eliminate patient demand for Suboxone tablets.  *See, e.g.*, Compl. ¶¶ 41-47, 60-82, 141-151.

### 2.  Common issues are divisible from individual issues and should be certified.

The common issues related to Indivior's anticompetitive conduct are divisible from antitrust injury and damages.  An antitrust violation exists despite the presence or absence of injury and damages to an individual purchaser.  *See In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 60 (1st Cir. 2016) (distinguishing an antitrust violation from antitrust injury) (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("'[P]roof of [an antitrust] violation and of antitrust injury are distinct matters that must be shown independently.'" (quoting Areeda & Hovenkamp, Antitrust Law ¶ 334.2c (1989 Supp.))); *Jeld-Wen, Inc.*, 171 F.R.D. at 172.

*Gonzalez v. Corning*, 885 F.3d 186 (3d Cir. 2018), cited by Indivior, is distinguishable. In *Gonzalez*, the "primary" question was whether roof shingles suffered from a common defect; however, plaintiffs had to admit "a great many" shingles did not share the purported defect due to their unique design specifications.  *Id.* at 195-98.  Thus, Rule 23(c)(4) certification would not have advanced the litigation because the plaintiffs could not answer the "primary" question through common evidence.  *Id.* at 198-99, 202.  That is not the case here.  Unlike *Gonzalez*, Plaintiffs can prove the central elements of an antitrust violation—the "primary" question— through common evidence.  Thus, certification would materially advance this litigation.[12]

---

[12] Indivior cites to a string of inapposite non-antitrust cases for the proposition that certification should be denied where liability elements would remain unresolved.  Def.'s. Br. at 20-21.  The plaintiffs in those cases failed to show that the fundamental aspects of the proposed class claims could be resolved through common evidence.  *See Gates*, 655 F.3d at 264-68 (medical monitoring case where common evidence could not demonstrate any individual's exposure to a hazardous substance); *Swank v. Wal-Mart Stores, Inc.*, No. 2:13-cv-1185, 2018 U.S. Dist. LEXIS 94113, at *15-20, 24 (W.D. Pa. June 5, 2018) (common evidence could not determine whether

Plaintiffs can further prove that Indivior engaged in deceptive conduct[13] directed towards consumers and the marketplace using common evidence. The deceptive nature of that conduct can be determined without inquiring into the circumstances surrounding an individual end-payor. *See* Def.'s Br. at 21. EPPs will submit common evidence that Indivior knowingly fabricated safety concerns related to the Suboxone tablets to steer the prescription base to the patent-protected film, and that Indivior filed a baseless Citizen Petition for the sole reason of delaying generic competition. *See generally* ECF No. 473-3. This satisfies the deceptive conduct requirements under the relevant state statutes. *See Suboxone*, 64 F. Supp. at 700-03 (analyzing deceptive conduct requirements under Florida, Michigan, Minnesota, Nevada, New York, Pennsylvania, and Virginia law); *see also Warfarin*, 391 F.3d at 528.

Indivior conflates the question of whether it engaged in market-wide deceptive conduct with a potential later inquiry into whether an individual end-payor *relied* on its deceptive conduct in purchasing Suboxone film. Def.'s Br. at 21. But the *existence* of deceptive conduct is a common question and clearly provable for the issues class Plaintiffs seek. Whether an individual plaintiff *relied* on that conduct is a separate question of injury that would be answered, if even necessary, in subsequent proceedings.[14] *See generally Halliburton Co. v Erica P. John Fund,*

---

the "primary duties" of certain employees were managerial and thus exempt under the minimum wage laws); *Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 726-36 (E.D. Pa. 2014) (an  age discrimination case where common evidence could not determine the validity of a contractual release signed during a corporate reorganization).

[13] If the Court finds it necessary, the "deceptive conduct" element could be expressly parsed out with a specific fact-finding in the verdict form—*e.g.*, Did Defendant fabricate safety concerns related to the tablets? Did Defendant disseminate the false safety concerns to the marketplace, including to consumers, to destroy demand for the tablets? Did Defendant intend the fabricated safety concerns to influence prescribing habits? *See* Pls.' Br. at 10.

[14] Pennsylvania requires plaintiffs to prove justifiable reliance on Indivior's deceptive conduct, *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007), but EPPs with Michigan claims satisfy the reliance requirement by purchasing Suboxone film. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 226 (S.D.N.Y. 2012). Indivior cites to this Court's *Provigil*

*Inc.*, 134 S. Ct. 2398, 2412 (2014); *Suchanek*, 764 F.3d at 760.  It has no relevance to EPPs' motion.

### 3.  Issues class certification here is not unconstitutional.

Indivior's argument that issues class certification would entail an unconstitutional reexamination of issues resolved on a class-wide basis at later individual proceedings is flatly wrong.  Def.'s Br. at 22.  Indivior does not identify the common issues that would purportedly need to be revisited in subsequent non-class proceedings.  As explained, a trial on the antitrust violation issues would focus entirely on Indivior's conduct and its impact on the markets for Suboxone products.  Subsequent individual proceedings into antitrust impact and damages, on the other hand, would involve an entirely separate analysis to determine whether an end-payor incurred an overcharge on any of their Suboxone purchases (injury) and the quantum of those overcharges (damages).  "Such issues are 'so distinct and separable' that they can be cleanly divided amongst separate trials 'without injustice.'"  *Prograf*, 2014 U.S. Dist. LEXIS 138429 at * 14 (quoting *Franchi Const. Co., Inc. v. Combined Ins. Co. of America*, 580 F.2d 1, 7 (1st Cir. 1978)).  In fact, in one of the only generic suppression cases to reach trial, the defendants recognized that a trial bifurcating the common liability elements of an antitrust violation from the injury and damages phase would properly avoid reexamination of previously decided common issues.[15]

---

decision discussing reliance under the Wisconsin consumer protection statute, Def.'s Br. at 24, but that statute is not even at issue in this case.  Indivior's Minnesota and Florida "reliance" arguments are also misplaced.  *Certified Question United States Dist. Court Order v. Philip Morris*, 621 N.W.2d 2, 12 (Minn. 2001) (Minnesota does not require actual reliance); *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) ("[A] plaintiff need not prove [actual] reliance on the allegedly false statement to recover damages under FDUPTA…").
[15] *See* AstraZeneca and Ranbaxy Defs.' Mem. Concerning Trial Procedure and Pls.' Burden of Proof, *In re Nexium Antitrust Litig.*, MDL No. 2409 (D. Mass), ECF No. 810 at 10-16 ("Because fact-of injury and damages are not 'distinct and separable,' they should be tried together, separate from the initial trial phase on all other liability issues. . . .").

## B. Certification Of The Issues Class Materially Advances The Case.

Plaintiffs satisfy the *Gates* test for issues class certification. Indivior concedes that virtually all the *Gates* factors support certification here. Indivior focuses on a single prong of the *Gates* test and argues "significant and complex questions" would remain for individual adjudication. Def.'s Br. at 22. However, in subsequent proceedings, an end-payor needs to show an overcharge on just one Suboxone purchase to establish antitrust injury, which can be established in myriad ways using, for example: Suboxone purchase and/or reimbursement records; expert analysis of Suboxone tablet volume vis-à-vis the film in a competitive scenario; generic price and volume erosion associated with earlier generic tablet entry versus delayed entry; and/or the relative pricing of Suboxone branded tablets and film absent Indivior's artificial price increase. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) ("Paying an overcharge caused by the alleged anticompetitive conduct on a single purchase suffices to show — as a legal and factual matter — impact or fact of damage." (citations omitted)). Damages can be summed in a variety of ways as well, but the important point—overlooked entirely by Indivior—is that here EPPs will ultimately prove injury and damages individually *regardless* of whether the issues class is certified. The key question is whether it is more efficient to try the common claim elements in one class-wide proceeding, or whether every individual end-payor should have to prove the common antitrust violation elements (and have Indivior re-defend those elements) over and over again. Indivior never engages that question; the answer is obvious.

## C. Rule 23(B)(3) Ascertainability Does Not Apply To Rule 23(C)(4) Certification And Is Satisfied In Any Case.

Plaintiffs dispute that ascertainability is required for Rule 23(c)(4) certification. *See* Pls.' Br. at 14-17. However, even if the Court decides that it is required, Plaintiffs have met their burden. Plaintiffs must show that "(1) the class is 'defined with reference to objective criteria';

and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)). "The ascertainability requirement consists of nothing more than these two inquiries. It does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can be* identified." *Id.* at 163-64 (citation omitted) (emphasis in original).[16]

Indivior argues that ascertainability is not satisfied because Plaintiffs and other absent class members have "point-blank refused to provide even the patient names" of Suboxone purchasers. *See* Def.'s Br. at 18-19. But Plaintiffs do not need to *affirmatively identify* class members at the class certification stage; EPPs must only show that class members *can be* identified. *Byrd*, 784 F.3d at 163-64. Indivior does not claim that patient names *cannot* be provided—because that is obviously false. Plaintiffs submitted the Declaration of Myron Winkelman, a PBM management consultant with decades of experience in the PBM industry, and a proposed methodology for obtaining PBM and pharmacy purchase data. *See* Ex. 4 to Pls.' Br. Indivior has not moved to exclude that submission, nor has Indivior contested five facts critical to ascertainability: 1) the classes are defined by reference to objective criteria; 2) every

---

[16] Indivior cites to *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2015 U.S. Dist. LEXIS 74846 (E.D. Pa. June 10, 2015), and *Fenwick v. Ranbaxy Pharmaceuticals, Inc. et al.*, No. 3:12-cv-07354 (ECF No. 158) (D.N.J. Nov. 13, 2018). The *Vista* plaintiffs sought Rule 23(b)(3) certification and relied solely on *their own* "assurances" that class members could be identified and failed to bolster their argument with any evidentiary support, unlike the Craft and Winkelman declarations provided by Plaintiffs here. *See Vista*, 2015 U.S. Dist. LEXIS 74846 at *33-44. Contrary to the straightforward purchase requirement in Plaintiffs' class definitions, the *Fenwick* class definition included purchasers who filled prescriptions with certain recalled pills from specific batches, which required plaintiffs to trace the contaminated pills to proposed class members and involved the analysis of NDC numbers, lot numbers, product batches, inventory pools, pharmacy distribution chains, and dispense dates. *See Fenwick*, ECF No. 158 at 10-18.

Suboxone purchase is recorded either by a third-party payor, its PBM, and/or the pharmacy filling the prescription (including consumer receipts); 3) purchase data identifies both parties to every Suboxone transaction; 4) Plaintiffs have submitted exemplar purchase data that affirmatively demonstrates that Plaintiffs can determine who purchased Suboxone; and 5) the proposed identification methodology would uncover the identity of virtually all Suboxone purchasers. *See Byrd* 784 F.3d at 163-64.[17]

## III.  EPPS' RULE 23(B)(2) CLASS SHOULD BE CERTIFIED FOR DECLARATORY AND INJUNCTIVE RELIEF.

A Rule 23(b)(2) class may be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Plaintiffs seek certification of an injunctive class to compel Indivior to issue corrective disclosures to remediate the effect of its fabricated safety concerns on Suboxone tablets.[18]

The harm from Indivior's misinformation campaign persists. Indivior never retracted its false statements related to the pediatric safety of the Suboxone tablets. These misrepresentations

---

[17] Courts regularly allow parties to serve subpoenas to identify class members and issue notice. *See, e.g., In re: Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2012 U.S. Dist. LEXIS 143955, at *9 (E.D.N.Y. Oct. 2, 2012); *In re Relafen Antitrust Litig. v. Smithkline Beecham Corp.*, Nos. 01-CV-12239-WGY, 2004 U.S. Dist. LEXIS 29834, at *17-18 (D. Mass. Nov. 24, 2004) (authorizing EPPs to "issue subpoenas to the ten largest providers of retail pharmacy services in the United States as well as the mail-order pharmacies associated with the five largest providers of pharmaceutical benefit management in the United States, to obtain access to electronic files of the names and addresses of any consumers of Relafen and/or nabumetone. . . .").

[18] Indivior cites two out of circuit district court cases to suggest that certification of a Rule 23(b)(2) class "may" preclude later damages claims on "claim-splitting" or res judicata grounds, Def.'s. Br. at 17, but the primary case Indivior cites recognized that "every federal court of appeals that has considered the question has held that a class action seeking only declaratory or injunctive relief does not bar subsequent individual suits for damages." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 578 (E.D. Tenn. 2014) (quoting *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996)).

were instrumental in moving prescriptions to the film, and the fabricated safety concerns still impact prescribing decisions despite the presence of cheaper generic tablet alternatives. EPP Class members thus have a strong interest in correcting the false impression Indivior has fostered over the years related to the safety of Suboxone tablets. Addiction is a recurring disease that is rarely defeated in the first instance, and accurate information on potential treatment options, especially when cheaper, equally efficacious alternatives are available, will not only facilitate the price savings envisioned by the Hatch-Waxman Act but also help alleviate public health burdens related to opioid addiction. *Cf. Novo Nordisk A/S v. Becton Dickinson & Co.*, 997 F. Supp. 470, 478 (S.D.N.Y. 1998) (granting preliminary injunction, and explaining that "consumers have an interest in receiving precise and accurate information. Diabetes patients who own the NovoPen 1.5 should be informed of their options in a truthful and non-misleading manner, and should be able to benefit from compatible components when such components are available"). Just as Indivior used the false safety issues to funnel prescriptions from the tablets to the film, the same assertions, left uncorrected, continue to maintain the film prescription base, whereas corrective disclosures will allow film patients (and their doctors) to make properly informed decisions.

## IV.    CONCLUSION

Plaintiffs have shown that the issues proposed for certification focus entirely on Indivior's conduct and will be proven through common evidence. Rule 23(b)(2) and (c)(4) certification will allow Plaintiffs to establish that Indivior engaged in anticompetitive and deceptive conduct in violation of applicable state laws—the most important, complex, and burdensome aspect of this litigation— on behalf of all end-payors. Indivior offers no alternative to the requested issues and injunctive relief classes requested here. Plaintiffs respectfully request that the Court certify the proposed EPP classes under Rule 23(b)(2) and (c)(4).

Date:  January 11, 2019                    Respectfully submitted,


/s/ Jeffrey L. Kodroff

SPECTOR ROSEMAN & KODROFF P.C.

Jeffrey L. Kodroff
John A. Macoretta
Diana J. Zinser
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA 19103
(215) 496-0300
jkodroff@srkattorneys.com
jmacoretta@srkattorneys.com
dzinser@srkattorneys.com

*Liaison Counsel for End Payor Plaintiffs*

HILLIARD & SHADOWEN LLC
Steve Shadowen
D. Sean Nation
1135 West 6th Street, Suite 125
Austin, TX 78703
steve@hilliardshadowen.com
sean@hilliardshadowen.com

WEXLER WALLACE LLP
Kenneth A. Wexler
Justin Boley
Tyler J. Story
55 West Monroe, Suite 3300
Chicago, IL 60603
(312) 346-2222
kaw@wexlerwallace.com
jnb@wexlerwallace.com
tjs@wexlerwallace.com

MOTLEY RICE LLC
Michael M. Buchman
Michelle C. Clerkin
777 Third Avenue, 27th Floor
New York, NY 10017

16

mbuchman@motleyrice.com
mzolnoski@motleyrice.com

MILLER LAW LLC
Marvin Miller
Lori Fanning
115 South LaSalle Street
Chicago, IL 60603
(312)332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com

*Interim Co-Lead Counsel for the End-Payor
Plaintiff Class*

## CERTIFICATE OF SERVICE

I, Jeffrey Kodroff, hereby certify that this document was electronically filed and served using the Court's ECF system on January 11, 2019.

/s/ Jeffrey Kodroff