IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:,<br><br>*Wisconsin, et al. v. Indivior Inc. et al.*<br>Case No. 16-cv-5073 | MDL NO. 2445<br>13-MD-2445 |
| STATE OF WISCONSIN<br>By Attorney General Brad D. Schimel, *et al.*<br><br>Plaintiffs,<br>v.<br><br>INDIVIOR INC. f/k/a RECKITT BENCKISER PHARMACEUTICALS, INC., et al.<br><br>Defendants. | CIV. A. NO. 16-5073 |

Goldberg, J.                                                                                                   September 2, 2021

**MEMORANDUM**

Currently before me in this multi-district antitrust case is the End-Payor Plaintiffs' ("EPPs") Motion for Approval of Notice to prospective class members, which Defendant opposes. For the following reasons, I will deny the EPPs' Motion without prejudice and allow for an Amended Motion to Approve the Form and Manner of Notice to be filed within thirty days.

**I.      RELEVANT FACTUAL BACKGROUND**[1]

Defendant Indivior, Inc. ("Defendant") manufactures Suboxone, a drug commonly used to combat opioid addiction. Suboxone previously came in tablet form, but in 2010, citing safety

---

[1] Rather than re-stating the complicated regulatory background and factual basis of this case, I incorporate by reference the history set forth in my prior decision certifying a class for both the DPPs and EPPs. In re Suboxone Antitrust Litig., 421 F. Supp. 3d 12 (E.D. Pa. 2019), aff'd, 967 F.3d 264 (3d Cir. 2020).

concerns, Defendant effectuated a change in the administration of this drug, switching from tablet to sublingual film. Various purchasers/consumers of Suboxone claimed that this switch was anticompetitive and solely designed to maintain Defendant's market exclusivity—a scheme known as a "product hop." These claims have resulted in multi-district, antitrust litigation before this Court.

On September 27, 2019, I certified a class of End Payor Plaintiffs pursuant to Federal Rule of Civil Procedure 23(c)(4) on six distinct issues:

1. Whether Defendant engaged in anticompetitive and deceptive conduct;
2. Whether Defendant willfully maintained monopoly power through such conduct;
3. Whether Defendant had a specific intent to monopolize;
4. Whether Defendant had a dangerous probability of achieving monopoly power;
5. Whether Defendant has offered a non-pretextual pro-competitive justification that could not have have been obtained through less restrictive means, and if so;
6. Whether the anticompetitive effects of Defendant's conduct outweigh their proffered procompetitive benefits, if any.

In re Suboxone Antitrust Litig., No. 13-md-2445, 2019 WL 4735520 (E.D. Pa. Sept. 27, 2019). The United States Court of Appeals for the Third Circuit affirmed this certification on July 28, 2020. In re Suboxone Antitrust Litig., 967 F.3d 264 (3d Cir. 2020).

On March 8, 2021, the EPPs sought an order approving the form and manner of notice to the End Payor Class informing them of the pendency of this class action. Defendant opposed the EPPs' Motion on the grounds of several alleged defects in the proposed form and manner of notice.

**II.     DISCUSSION**

The EPP class is comprised of two types of class members: (a) third-party payors, who are health and welfare plans or insurance companies that pay and/or reimburse for prescription drug purchases of their members, and (b) consumers, who are individuals who purchase prescription drugs.

As to the third-party payors, the EPPs propose to send direct notice via U.S. First Class mail to reasonably identifiable third-party payors, including entities such as insurance companies, health

maintenance organizations, and self-insured entities. That direct notice will be supplemented with a digital ad program on Think.Advisor.com/life-health, which will be designed to reach unidentified third-party payors. As to the consumers, the EPPs propose to utilize a publication campaign comprised of digital media and earned media. The EPPs plan to place digital banner, text and/or newsfeed ads through Google Display Networks and Google AdWords, social media platforms Facebook and Instagram, and specifically targeted medical networks including websites like WebMD.com. This digital network and social media campaign will run for thirty days and will be monitored to ensure success and optimize the number of impressions delivered across each platform to achieve maximum engagement and efficiency. The EPPs also propose to issue a news release via PR Newsire's US1 and Multi-cultural Newsline distribution lists, which will be distributed to the news desks of approximately 10,000 newsrooms. The EPPs have designated A.B. Data, Ltd. as the notice administrator tasked with effectuating notice of this class action lawsuit to both the third-party payors and the consumer class members.

Defendant opposes the EPPs' Motion, noting three alleged defects: (1) the notice plan fails to provide individualized notice to consumers; (2) the notice plan is deficient as to the third-party payors; and (3) the short- and long-form notices require correction before distribution.

A. **Notice to Consumers**

Defendant first argues that the proposed notice plan as to the consumer portion of the EPP class violates the dictates of Federal Rule of Civil Procedure 23 and the Due Process Clause. Defendant asserts that in their motion for class certification, the EPPs originally averred that they had a sufficient method to ascertain the identities of almost all class members through the use of subpoenas directed to the top six pharmacy benefit managers, the ten largest third-party payors, and the top ten chain store pharmacies. Yet, according to Defendant, in the seventeen months that has elapsed since certification of the EPP class, EPP counsel has failed to implement any plan for

specifically identifying any other class members other than the named Plaintiffs. Instead, the EPPs now propose to notify the consumer portion of the class solely by publication rather than by individual notice. Defendant asserts that this notification plan is inconsistent with Rule 23(c)(2)'s command that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 306 (3d Cir. 1998) (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811–12 (1985)). "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment." Id.

The "'mandatory notice [of Federal Rule of Civil Procedure 23(c)(2)] . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject.'" Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173–74 (1974) (quoting Fed. R. Civ. P. 23, 1996 Amendment Advisory Comm. Note to Subdiv. (d)(2)). This Rule provides that:

> For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--**the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.** The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
>
> **(i)** the nature of the action;
> **(ii)** the definition of the class certified;
> **(iii)** the class claims, issues, or defenses;

> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
> **(v)** that the court will exclude from the class any member who requests exclusion;
> **(vi)** the time and manner for requesting exclusion; and
> **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B) (emphasis added); see also Nichols v. SmithKline Beecham Corp., No. 00-6222, 2005 WL 950616, at *9 (E.D. Pa. Apr. 22, 2005) (holding that, under the Rule, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

"The requirement that individual notice be sent to all class members whose names and addresses may be ascertained with reasonable efforts is mandatory." Thomas v. NCO Fin. Sys., Inc., No. 00-5118, 2002 WL 1773035, at *7 (E.D. Pa. July 31, 2002) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175–76 (1974) (rejecting notice by publication to class of 2,250,000 members despite prohibitive cost of providing individual notice to ascertainable class members); Carlough v. Amchem Prods., Inc., 158 F.R.D. 314, 325 (E.D. Pa. 1993) notice by publication inadequate where putative class member's name and address is known or ascertainable with reasonable effort)). The United States Supreme Court has held that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." Eisen, 417 U.S. at 176. Thus, "[w]here a potential class member's address is known or available through reasonable efforts, individual or actual notice is required; constructive notice by publication in that circumstance would not satisfy the requirements of Rule 23(c)(2)." Carlough, 158 F.R.D. at 325 see also Greenfield v. Villager Indus., Inc., 483 F.2d 824, 832 (3d Cir. 1973).

"It is well settled that in the usual situation, first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." Zimmer Paper

Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985); see, e.g., Nichols, 2005 WL 950616, at *10 (finding notice sufficient where notice packets were mailed to class members, those that were returned undeliverable were re-emailed to updated addresses, and the plaintiffs used publication to reach consumers who were not given individual mailed notice).  Publication notice alone is considered a sufficient means to reach class members whose identities and addresses are not known or not reasonably ascertainable.  See Hall v. Best Buy Co., Inc., 274 F.R.D. 154, 168 (E.D. Pa. 2011) (finding notice sufficient where individual notices were sent by first class mail, followed by publication notice in three state daily newspapers).  Where class members' identities and addresses are known or reasonably ascertainable, however, notice by publication alone—even if far reaching—fails to satisfy due process requirements since it is "not reasonably calculated to reach those who could be informed by other means at hand."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 319 (1950).

In Greenfield v. Villager Indus., Inc., 483 F.2d 824 (3d Cir. 1973), the Third Circuit addressed the propriety of notice done solely by publication.  The plaintiffs moved for certification of a class of stockholders, representing that they would achieve the "best notice practicable" by providing individual notice to all members who could be identified via stock transfer and stockholder lists obtained from the defendant.  Id. at 830.  When the plaintiffs actually effectuated notice, however, no such individual notices were ever sent.  Rather, plaintiffs simply published notice in the Wall Street Journal and The Philadelphia Evening Bulletin on two days.  Id.  The Third Circuit held that, "[t]his was insufficient notice under any standard of fairness, justice, or due process; it flew in the face of the specific terms of 'the best notice practicable' rule; it contravened plaintiffs' stated representation to use individual notice insofar as possible; and it constituted such a defect to the proceedings in the district court" that the Third Circuit vacated the order approving the class action settlement.  Id. at 830–31.

Similarly, in Larson v. AT&T Mobility LLC, 687 F.3d 109 (3d Cir. 2012), the district court had conditionally approved a settlement agreement and conditionally certified a settlement class. Id. at 116. At the first and second final fairness hearings, the proposed class presented a notice plan which indicated that searching the defendant's records for class members would be time consuming and costly. Id. at 117–19. The district court was satisfied that it was unreasonable to require such a search to identify and provide notice to a larger group of class members, even though the defendant could have run a targeted search on its billing information. Id. at 121. The Third Circuit reversed, remarking that it had "been . . . stringent in enforcing the individual notice requirement." Id. at 126. Although the Court noted that costs of identifying such class members would be high and the efforts might be somewhat cumbersome, it declined to hold that running the search inquiries necessary to provide individual notice would be unreasonable. Id. at 129.

Such precedent guides my ruling here. In an effort to meet the ascertainability requirement of Rule 23 during class certification proceedings, the EPPs provided a Declaration indicating that the EPP class is comprised of two types of class members: third-party payors ("TPPs")—who are health and welfare plans or insurance companies that pay and/or reimburse for prescription drug purchases of their members—and consumers—who are individuals who purchase prescription drugs. In that Declaration, the EPPs represented that pharmacy benefit managers and pharmacies maintain data that could be used to identify both TPPs and consumers by names and addresses. According to the EPPs, only a small percentage of fully insured, cash-paying consumers would not show up in the various databases, in which cases the individuals could self-identify with their own records at a claims process. The EPPs' Declaration then represented that they would pursue subpoenas issued to the top six pharmacy benefit managers, the ten largest TPPs, the top ten chain store pharmacies, and the top five mail order pharmacies to request the production of records identifying purchasers of branded and generic Suboxone during the relevant time period. The EPPs' plan proposed to retain a company

7

known as OnPoint Analytics to analyze the data received to determine the identities of those who fit the class definition. The EPPs' Declaration then asserted that only a minority of class members would not be identified through the subpoenas. (See Decl. of Kenneth Wexler, ECF No. 472-3.)

A year and a half after I certified the EPP class, however, the EPPs moved for approval of the form and manner of notice to the class and changed course in their proposed method for ascertaining and reaching class members. For the TPPs, the currently proposed notice plan remains consistent with the EPPs' class certification brief and argues that the best method of notice is individual notice mailed by U.S. First Class mail. For the consumers, however, the EPPs now intend to pursue a "publication plan" which "includes digital banner and newsfeed advertisements placed on various websites, applications, and social media platforms." (EPPs' Mot for Approval 4.) The EPPs also intend to issue a news release via PR Newswire that will reach approximately 10,000 newsrooms across the United States. Notably absent from their notice plan is any reasonable effort to determine the identities of the individual consumer class members and provide them with individualized notice. This is particularly remarkable given the EPPs' representation in seeking class certification that class members' names and addresses could be ascertained with reasonable efforts. See Byrd v. Aaron's, Inc., 784 F.3d 154, 165 (3d Cir. 2015) (holding that the separate ascertainability requirement ensures that class members can be identified after certification and, therefore, "prepares a district court to 'direct to class members the best notice that is practicable under the circumstances.'" (quotations omitted)). As such individualized notice to identifiable class members is mandatory, and "not a discretionary consideration to be waived in a particular case," I find that the EPPs' proposed Notice Program is deficient and below the standards required by due process.

In an effort to justify their notice plan, the EPPs offer several arguments. First, they contend that the mandatory notice requirements of Federal Rule of 23(c)(2)(B) do not apply here because the

EPP class is an issue-class certified under Rule 23(c)(4),[2] and Rule 23(c)(2)(B) only applies to classes certified under Rule 23(b)(3).[3]

This argument is misplaced. Federal Rule of Civil Procedure 23 provides for class certification in only three scenarios: (1) where prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members or would be dispositive of the interests of the other members not party to the individual adjudications; (2) where the class members seek injunctive relief against the defendant; or (3) where questions of law or fact common to class members predominate over any individual questions and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b). A class under Rule 23(c)(4) is merely a subset of one of the 23(b) categories. See Luppino v. Mercedes Benz USA, 718 F. App'x 143, 146 (3d Cir. 2017) (noting that failure to meet any of Rule 23(a) and (b)'s requirements precludes class certification under Rule 23(c)(4) as to particular issues); 7A C. Wright, A. Miller, & R. Kane, Federal Practice & Procedure § 1790, at 590 (2005) (certification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met). The mandatory notice provision of Rule 23(c)(2) thus applies to any class certified under Rule 23(b)(3) and "is designed to fulfill requirements of due process to which the class action procedure is of course subject.'" Eisen, 417 U.S. at 173–74.

Here, the EPP class sought certification under Rule 23(b)(2) for injunctive relief, and under Rule 23(b)(3), but only as to issues of liability, instead of both liability and damages. I denied Rule

---

[2] "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

[3] "A class action may be maintained if Rule 23(a) is satisfied and if . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

23(b)(2) certification but found that the EPPs satisfied the elements of Rule 23(b)(3) for purposes of liability issues. The EPPs offer no basis for holding that an issues class under Rule(c)(4)—*i.e.*, a class that is certified as to only select issues in a broader litigation—would be entitled to less than the minimum due process requirements afforded to Rule 23(b)(3) class members where the class is certified as to all issues in the litigation.[4]

In their second argument, the EPPs argue that issuing subpoenas to third parties and then mailing notices to every address in the records associated with a class member would not provide the best notice practicable under the circumstances. They posit that while the subpoenaed records could be used to identify class members, many of the addresses in those records may be outdated, particularly given that approximately 14% of people move every year. They further contend that the proposed publication notice would provide the best notice practicable at a significantly reduced cost and effort.

In support of this argument, the EPPs rely on a case from the Eastern District of New York where the court certified a class of end-payor plaintiffs in their antitrust action against a pharmaceutical manufacturer. In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.,

---

[4] The EPPs suggest that the only notice requirement applicable here is that set forth in Rule 23(d)(1)(B), which states that "[i]n conducting an action under this rule, the court may issue orders that: . . . require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: . . . (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action." Id. They argue that their proposed notice program undoubtedly satisfies the less stringent "appropriate notice" standard.
   Rule 23(d)(1)(B) is not directed to ensuring that the due process rights of Rule 23(b)(3) class members are satisfied through notice of a class action which could impact their legal rights. Rather, it addresses the "discretionary notice power" of the court to order that notice be provided to class members in a 23(b)(1) or 23(b)(2) action, where notice is not normally required, or to provide a class about certain information regarding the litigation. Fed. R. Civ. P. 23, Advisory Committee note to 2003 amendment; see also City Select Auto Sales, Inc. v. David/Randall Assoc., Inc., 151 F. Supp. 3d 508, 513 (D.N.J. 2015); Newberg on Class Actions § 8.26 (5th ed.).

No. 18-md-2819, 2021 WL 1439629 (E.D.N.Y. Mar. 15, 2021). The end-payor plaintiffs then filed a motion seeking approval of the proposed form and manner of notice of the end-payor class and proposed to notify consumer class members using internet advertising and social media websites—including Facebook, Instagram, and YouTube—with A.B. Data serving as the administrator. Id. at *2. In addition, the plaintiffs planned to disseminate a news release via PR Newswire's US1 Newline distribution list, which includes about 10,000 newsrooms, and would publish the short-form notice on one occasion in both *AARP: The Bulletin* and *People Magazine*. Id. The court found that the EPPs' plan was the "best notice that is practicable under the circumstances" because it would reach a large percentage of the class (approximately 80%) and similar proposals had been used in other pharmaceutical antitrust class actions to notify both consumers and third-party payors. Id. at *3–4. The court rejected the defendant's argument that the consumer class members' addresses could be discovered through a subpoena process, reasoning that "providing consumers with individual notice will offer no significant incremental benefit" and thus "the added financial and administrative burdens" caused by using subpoenas were not justified, particularly given the fact that, due to the pandemic, many people had since relocated. Id. at *4.

The Restasis case is not binding and, moreover, omits several important considerations. Primarily, the court in Restasis did not acknowledge the Supreme Court's mandate that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." Eisen, 417 U.S. at 176. The Restasis court also made no finding regarding whether ascertaining the individual identities and addresses was impossible, such that there was justification for notice solely by publication. Finally, the Restasis court was not bound by Third Circuit precedent, which has been "stringent in enforcing the individual notice requirement." Larson, 687 F.3d at 126.

I find more helpful guidance in the Advisory Committee Notes to the 2018 Amendments to Rule 23, which have acknowledged the advent of technology's role in providing class notice:

> Since <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156 (1974) interpreted the individual notice requirement for class members in Rule 23(b)(3) class actions, many courts have read the rule to require notice by first class mail in every case.  But technological change since 1974 has introduced other means of communication that may sometimes provide a reliable additional or alternative method for giving notice. Although first class mail may often be the preferred primary method of giving notice, courts and counsel have begun to employ new technology to make notice more effective.  Because there is no reason to expect that technological change will cease, when selecting a method or methods of giving notice courts should consider the capacity and limits of current technology, including class members' likely access to such technology.
>
> Rule 23(c)(2)(B) is amended to take account of these changes. The rule continues to call for giving class members "the best notice that is practicable."  It does not specify any particular means as preferred. Although it may sometimes be true that electronic methods of notice, for example email, are the most promising, it is important to keep in mind that a significant portion of class members in certain cases may have limited or no access to email or the Internet.
>
> Instead of preferring any one means of notice, therefore, the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court. The court should exercise its discretion to select appropriate means of giving notice.  In providing the court with sufficient information to enable it to decide whether to give notice to the class of a proposed class-action settlement under Rule 23(e)(1), it would ordinarily be important to include details about the proposed method of giving notice and to provide the court with a copy of each notice the parties propose to use.
>
> . . .
>
> Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the "traditional" methods are best may disregard contemporary communication realities. The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or to make claims.  Rule 23(c)(2)(B) directs that the notice be "in plain, easily understood language."  Means, format, and content that would be appropriate for class members likely to be sophisticated, for example in a securities fraud class action, might not be appropriate for a class having many

> members likely to be less sophisticated. The court and counsel may
> wish to consider the use of class notice experts or professional claims
> administrators.
>
> . . .

Fed. R. Civ. P. 23, Advisory Committee Notes to 2018 Amendments.

I glean three crucial points from this Note. First, the Advisory Committee did not advocate for the elimination of "individual notice." Rather, it simply recognized that such individual notice may now be effectuated in ways other than first-class mail—*e.g.*, by text or email. Second, the Advisory Committee cautioned that in cases with potentially unsophisticated consumers, the court must "keep in mind that a significant portion of class members in certain cases may have limited or no access to email or the Internet." Id. Finally, the Advisory Committee emphasized that "[i]nstead of preferring any one means of notice," court should focus on "the means or combination of means most likely to be effective" in the particular case. Id.

Here, the EPPs proposed notice plan includes no individualized notice—technological or otherwise—for the consumer portion of the class, contending that it would involve "significant effort" to subpoena information from numerous third parties. (EPPs' Reply Br. 4.) In so arguing, they offer no rationale for why subpoenas and individual notice that were feasible as part of a "reasonable effort" when they originally sought class certification are no longer feasible or reasonable now when such notice actually must be provided.[5] In addition, although the EPPs suggest that their proposed digital

---

[5] The EPPs argue that although the identities of the class members can be ascertained, they are not "easily ascertained." They distinguish the Third Circuit case of Larson, supra because, there, the class members' contact information was in the possession of the defendant and simply required that a computer program run search queries in the defendant's databases. They go on to assert that this case is more like In re Imprelis Herbicide Mktg. Sales Practice Litig., No. 11-md-2884, 2015 WL 3796007 (E.D. Pa. June 18, 2015), wherein the court found that there was no means to readily identify the customers of all lawn care professionals whose lawns were treated with defendant's herbicide products. Id. at *5. Therefore, the court permitted notice by national and local publication notice, as well as internet and television advertisements. Id.
   I find that this case falls somewhere in between Larson and Imprelis. Certainly, identification of the consumer class members is not as simple as conducting an electronic search of Defendant's records, like in Larson. On the other hand, identification of individual consumer class members is

publication plan will reach 80% of the class, the EPPs fail to address the fact that a significant portion of the class members—consumers of an opioid-addiction treatment drug—may have limited or no access to email or the Internet. Finally, while the EPPs argue that first-class mail may not provide the best notice practicable under the circumstances because approximately 14% of people move every year, the EPPs fail to consider use of a combination of methods, including both mail and electronic publication, in order to comply with their notice obligations and reach the largest percentage of class members.

While I recognize that the cost of sending individual notice may be high, "[t]here is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs." Eisen, 417 U.S. at 176. The Supreme Court has emphasized individual notice is an unambiguous requirement and "each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the action and perhaps participate in the management of the action." Id. at 173. As noted above, the EPPs have represented that the class members here can be identified. The simple fact that the EPPs do not wish to expend the additional money and effort to do so, in addition to publication notice, does not allow me to disregard the demands of due process.

---

not as difficult as in Imprelis where the court deemed such a task unreasonably difficult because it would require searching the customer lists of large lawn care companies, and customer lists were "extremely proprietary" and therefore not something they would wish to share. Id. at *6. Ultimately, I am persuaded by the EPPs' representation during class certification that the identities of consumer class members could be obtained via subpoenas issued to the top six PBMS, the ten largest TPPs, the top ten chain store pharamacies, and the top five mail order pharmacies who could produce the information under a protective order. A company known as OnPoint Analytics could then analyze the data and compile a list of those who fit the class definition. (Wexler Decl. ¶¶ 11–13.)

### B. Notice to Third Party Payors

Defendant's second challenge to the proposed Notice Plan concerns the third-party payor members of the class. Defendant observes that the EPPs propose to notify the third-party payors by sending a letter to a "proprietary" list of third-party payors developed from publicly available cases and from cases involving other pharmaceutical products. Defendant argues that "[w]hile this is a good start . . . [s]uch a list is likely to be both over-inclusive and under-inclusive, since no effort has been made to determine which [third-party payors] have, or have not, paid for buprenorphine/naloxone products." (Def.'s Opp'n 6.) Further, since the list is "proprietary" to the vendor, Defendant claims it has no ability to verify the accuracy of that list.

Defendant, however, cites no case law requiring the EPPs to submit their vendor's database to either Defendant or the Court to verify its accuracy and completeness. Moreover, I see no other defects in the proposed Notice Plan as to the third-party payors. A.B. Data will rely on its proprietary database listing the names and addresses of approximately 42,000 third-party payors, compiled of membership listings and existing databases from publicly available sources, including U.S. Department of Labor Form 5500 filings and the Pharmacy Benefits Management Institute, and prior pharmaceutical litigations that A.B. Data has administered. A.B. Data will then mail notice to these third-party payors. In addition to the direct notice plan, the A.B. Data will implement a thirty-day digital banner ad campaign on ThinkAdvisor.com/life-health, a website it avers is "uniquely positioned to provide agents and brokers, with timely, insightful information, as they navigate the specialty insurance markets and sort through critical industry developments." (ECF No. 695-4, at p. 30.) I find that this combination of individualized notice and notice by publication will satisfy the EPPs' burden to provide the best notice practicable to the third-party payors under the circumstances.

C. **<u>Alleged Deficiencies in the Form of Notice</u>**

Finally, Defendant identifies other alleged defects in the EPPs' short- and long-form notices that require correction before distribution:

1. Both the "long form" and "short form notices incorrectly name Indivior plc as the Defendant in this matter. The defendant is Indivior Inc.

2. The "long form" notice suggests that class members might become eligible for payment as a result of "future . . . judgments on the issues in this lawsuit" and that plaintiffs might "ultimately achieve certification of a damages class." Defendant contends that these statements are misleading because the class is only certified as to liability issues and, if the class prevails, each individual end payor plaintiff will have to prove antitrust impact and damages at a separate trial or trials.

3. The notice states "if the class obtains judgment on the issues, fees for the lawyers will be subject to individual negotiation if you choose to proceed further." Defendant argues that this is misleading because EPP counsel have not provided any authority for the proposition that they can demand payment from absent class members.

4. Under the table titled "Your Legal Rights and Options," the EPPs did not complete the sentence in the "Do Nothing" section.

These concerns are easily resolved. As to concerns one and four, the EPPs concede that there are typographical errors and will correct the mistakes. As to concerns two and three, the EPPs assert, and I agree, that the identified statements contain no incorrect or misleading information. The suggestions that class members "might" be eligible for payment based on success of the class issues or that a damages class "might" be certified are appropriate. Moreover, the statement identified in number three is not incorrect or misleading—if the class obtains judgment on the certified issues, an

absent class member wishing to obtain damages in individual proceedings may need to negotiate fees for lawyers.

### III. CONCLUSION

For all of the foregoing reasons, I will deny the EPPs Motion to Approve the Form and Manner of Notice to the End Payor Class. The EPPs will be given leave to submit an amended notice plan that corrects the deficiencies identified in this Memorandum Opinion.