## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
| --- | --- |
| IN RE SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>*End Payor Plaintiff Actions* | MDL No. 2445<br><br>Master File No. 2:13-MD-2445-MSG |

**END-PAYOR CLASS PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF ARTICLE III STANDING OR,
<u>IN THE ALTERNATIVE, TO DECERTIFY THE END-PAYOR ISSUES CLASS</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD .................................................................................................... 2

ARGUMENT ................................................................................................................. 3

I.    THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS. ............ 3

   A.   The Named EPPs have Standing. ................................................................... 3

   B.   The EPPs Do Not Need to Demonstrate Standing for Unnamed Class Members. .......... 9

II.   THE COURT SHOULD DENY DEFENDANT'S MOTION FOR
     DECERTIFICATION. ......................................................................................... 12

   A.   Defendant's Motion to Decertify Is an Untimely Attempt to Revisit the Court's
      Well-Reasoned Opinion Certifying the Issues Class. ..................................... 12

   B.   The Court Correctly Certified the Issues Class. ............................................. 13

      a.   Common Questions Predominate As to the Certified Issue Classes. ..................... 14

         i.   Defendant's Uninjured Class Member Argument is an Improper
            Invocation of Article III Standing Requirements. .......................................... 16

         ii.   The Issues Class Is, As Previously Determined By This Court,
            Ascertainable. ................................................................................ 19

      b.   The Court Rigorously Analyzed the *Gates* Factors With Respect to the
         Issues Class. ................................................................................... 22

   CONCLUSION ........................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ........................................................................................ 18

*Arizona v. California*,
   460 U.S. 605 (1983) ........................................................................................ 19

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013) ........................................................................... 20

*Clark v. Bally's Park Place, Inc.*,
   298 F.R.D. 188 (D.N.J. 2014) ........................................................................ 18

*Cottrell v. Alcon Lab'ys*,
   874 F.3d 154 (3d Cir. 2017) ............................................................................. 5

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
   432 F.3d 286 (3d Cir. 2005) ............................................................................. 5

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) .......................................................................... 4, 6

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
   777 F. Supp. 2d 869 (E.D. Pa. 2011) ............................................................... 6

*EJ MGT LLC v. Zillow Grp., Inc.*,
   2021 WL 5754901 (3d Cir. Dec. 3, 2021) ..................................................... 3, 5

*Ethypharm S.A. France v. Abbott Lab'ys*,
   707 F.3d 223 (3d Cir. 2013) ............................................................................. 3

*Garcia v. E.J. Amusements of N.H., Inc.*,
   98 F. Supp. 3d 277 (D. Mass. 2015) .............................................................. 18

*Gates v. Rohm & Haas Co.*,
   655 F.3d 255 (3d Cir. 2011) ............................................................................. 2

*Godec v. Bayer Corp.*,
   2011 WL 5513202 (N.D. Ohio Nov. 11, 2011) .............................................. 21

*Gonzalez v. Corning*,
   885 F.3d 186 (3d Cir. 2018) ........................................................................... 15

*Hargrove v. Sleepy's LLC*,
   974 F.3d 467 (3d Cir. 2020) ........................................................................... 20

*Hohider v. United Parcel Service, Inc.*,
  574 F.3d 169 (3d Cir. 2009) .............................................................................. 22

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
  2020 WL 4704939 (E.D. Pa. Aug. 13, 2020) ....................................................... 7

*In re Amla Litig.*,
  328 F.R.D. 127 (S.D.N.Y. 2018) ....................................................................... 18

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) .............................................................................. 17

*In re Atl. Fin. Fed. Sec. Litig.*,
  1992 WL 50072 (E.D. Pa. Feb. 28, 1992) .................................................... 3, 12

*In re Caterpillar Inc.*,
  67 F. Supp. 3d 663 (D.N.J. 2014) ..................................................................... 19

*In re Flonase Antitrust Litig.*,
  284 F.R.D. 207 (E.D. Pa. 2012) ........................................................................ 18

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  2022 WL 3971006 (S.D.N.Y. Aug. 31, 2022) ................................................... 23

*In re Generic Pharms. Pricing Antitrust Litig.*,
  368 F. Supp. 3d 814 (E.D. Pa. 2019) ............................................................ 2, 10

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018) .................................................................... 5, 6, 7, 8

*In re Loestrin 24 Fe Antitrust Litig.*,
  410 F. Supp. 3d 352 (D.R.I. 2019) ................................................................... 19

*In re Mushroom Direct Purchaser Antitrust Litig.*,
  319 F.R.D. 158 (E.D. Pa. 2016) ........................................................................ 15

*In re Nexium Antitrust Litig.*,
  777 F.3d 9 (1st Cir. 2015) ................................................................................. 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................ 16

*In re Processed Egg Prod. Antitrust Litig.*,
  851 F. Supp. 2d 867 (E.D. Pa. 2012) ............................................................. 3, 7

*In re Prograf Antitrust Litig.*,
  2014 WL 4745954 (D. Mass. June 10, 2014) ................................................... 16

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .............................................................................. 10

*In re Remicade Antitrust Litig.*,
345 F. Supp. 3d 566 (E.D. Pa. 2018) ........................................................................... 10

*In re School Asbestos Litig.*,
1990 WL 2194 (E.D. Pa. Jan. 11, 1990) ................................................................... 3, 13

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
2017 WL 4621777 (D. Mass. Oct. 16, 2017) ............................................................... 19

*In re Steel Antitrust Litig.*,
2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ................................................................ 16

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*,
421 F. Supp. 3d 12 (E.D. Pa. 2019) ..................................................................... passim

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
622 F. Supp. 3d 22 (E.D. Pa. 2022) ......................................................................... 4, 9

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
64 F. Supp. 3d 665 (E.D. Pa. 2014) .......................................................................... 1, 7

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
2021 WL 662292 (E.D. Pa. Feb. 19, 2021) .................................................................. 9

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
2022 WL 3588024 (E.D. Pa. Aug. 22, 2022) ............................................................. 1, 7

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...................................................................................... 16

*Johnson v. General Mills, Inc.*,
276 F.R.D. 519 (C.D. Cal. 2011) ............................................................................... 21

*Korrow v. Aaron's Inc.*,
2015 WL 7720491 (D.N.J. Nov. 30, 2015) .................................................................. 12

*Kramer v. Scientific Control Corp.*,
67 F.R.D. 98 (E.D. Pa. 1975) .................................................................................... 12

*Leyva v. Medline Indust.*,
716 F.3d 510 (9th Cir. 2013) ..................................................................................... 18

*Licata v. U.S. Postal Serv.*,
33 F.3d 259 (3d Cir. 1994) .......................................................................................... 2

*Lilly v. Jamba Juice Co.*,
2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ............................................................ 20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................................................................... 1

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)..............................................................................................20

*Martin v. Behr Dayton Thermal Prods. LLC*,
  896 F.3d 405 (6th Cir. 2018)............................................................................................15

*Martins v. 3PD, Inc.*,
  2014 WL 1271761 (D. Mass. Mar. 27, 2014)..................................................................18

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015)............................................................................................20

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015)..............................................................................................10

*Nesbit v. Gears Unlimited, Inc.*,
  347 F.3d 72 (3d Cir. 2003)..................................................................................................7

*New Jersey Physicians, Inc. v. President of U.S.*,
  653 F.3d 234 (3d Cir. 2011)................................................................................................1

*Norman v. Trans Union, LLC*,
  2023 WL 2903976 (E.D. Pa. Apr. 11, 2023)....................................................................12

*Novak v. Somerset Hosp.*,
  625 F. App'x 65 (3d Cir. 2015) ..........................................................................................7

*Pierre v. Healthy Beverage, LLC*,
  2022 WL 596097 (E.D. Pa. Feb. 28, 2022) ............................................................5, 7, 10

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
  15 F.4th 259 (3d Cir. 2021)........................................................................................passim

*Russell v. Educational Commission for Foreign Medical Graduates*,
  2020 WL 1330699 (E.D. Pa. Mar. 23, 2020)...................................................................14

*Scudder v. Colgate Palmolive Co.*,
  2018 WL 4188456 (D.N.J. Aug. 31, 2018).......................................................................19

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
  2010 WL 3855552 (E.D. Pa. Sept. 30, 2010) ..................................................................17

*Sley v. Jamaica Water and Utilities, Inc.*,
  77 F.R.D. 391 (E.D. Pa. 1977).....................................................................................3, 12

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................................3

*Spring Pharms., LLC v. Retrophin, Inc.*,
  2019 WL 6769988 (E.D. Pa. Dec. 11, 2019) .....................................................................6

*Stark v. Ear Nose & Throat Specialists of Nw. Pennsylvania, P.C.*,
  185 F. App'x 120 (3d Cir. 2006) .......................................................................... 7

*Sullivan v. DB Investors, Inc.*,
  667 F.3d 273 (2d Cir. 2011) ............................................................................... 15

*Thorne v. Pep Boys - Manny, Moe & Jack Inc.*,
  397 F. Supp. 3d 657 (E.D. Pa. 2019) ................................................................. 10

*Toll Bros., Inc. v. Township of Readington*,
  555 F.3d 131 (3d Cir. 2009) ................................................................................. 3

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ........................................................................... 10, 11, 17

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................................... 15, 18

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  2015 WL 3623005 (E.D. Pa. June 10, 2015) ...................................................... 18

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*,
  453 F.3d 179 (3d Cir. 2006) ............................................................................... 20

*Yaw v. Delaware River Basin Comm'n*,
  2021 WL 2400765 (E.D. Pa. June 11, 2021 ......................................................... 5

**Other Authorities**

W. Rubenstein, A. Conte & H. Newberg, 3 *Newberg on Class Actions* § 7:47 (4th ed. 2011) .......... 13

A. Conte & H. Newberg, 1 *Newberg on Class Actions* § 2.7 (4th ed. 2002) .................................... 17

**Rules**

Fed. R. Civ. P. 23(c)(4) ....................................................................................... 9

Rule 23(b)(3) ....................................................................................................... 14

## INTRODUCTION

Defendant Indivior filed its Motion to Dismiss for Lack of Article III Standing or, in the Alternative, to Decertify the End-Payor Issues Class, ECF No. 871, ("Def.'s Br.") a mere four and a half months before trial, raising again—after nearly ten years of litigation in this Court— the argument that the End-Payor Class Plaintiffs ("EPPs") lack Article III standing to pursue their claims in federal court. The Court denied Defendant's Motion to Dismiss, *see In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665 (E.D. Pa. 2014).. The Court granted certification of an EPP issues class, *see In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12 (E.D. Pa. 2019), *aff'd sub nom. In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020). And the Court denied, in its entirety, Defendant's Motion for Summary Judgment, *see In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2022 WL 3588024 (E.D. Pa. Aug. 22, 2022).

As this Court has already found during its resolution of several motions, EPPs have demonstrated concrete harm "with the manner and degree of evidence required at the successive stages of the litigation." *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 239 (3d Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Suboxone*, 64 F.Supp.3d at 684-85, 693-94 (finding that Plaintiffs pleaded sufficient facts to establish antitrust injury where they alleged that Indivior wrongfully suppressed generic competition and caused them to pay more for Suboxone products than they otherwise would have paid, and finding that EPPs had Article III standing to bring claims in 18 states); *Suboxone*, 2022 WL 3588024, at *49 (denying summary judgment on the grounds that individual class representatives for EPPs failed to proffer sufficient proof regarding their own damages and injury, explaining that such an

argument was premature as no jury had yet resolved the common class questions regarding antitrust violation, and noting that if EPPs prevail at a trial on violation, Indivior would then have the opportunity to litigate its summary judgment motion as to individual damages).

Now, in a last-ditch attempt before trial, Defendant misrepresents the Constitutional requirements for Article III standing and seeks to dispose of the claims of "hundreds of thousands" of EPP class members, Def.'s Br. at 17, that have been damaged by Defendant's anticompetitive conduct. The Court has already ruled that EPPs have Article III standing.  This motion to dismiss should be denied in its entirety.

The motion to decertify the class should be denied because the class was properly certified as a Rule 23(c)(4) issues class, based on five common questions of antitrust violation: (1) whether Defendant engaged in anticompetitive and deceptive conduct; (2) whether Defendant willfully maintained monopoly power through such conduct; (3) whether Defendant had a specific intent to monopolize; (4) whether Defendant has offered a non-pretextual procompetitive justification that could not have been obtained through less restrictive means, and if so; (5) whether the anticompetitive effects of Defendant's conduct outweigh their proffered procompetitive benefits, if any. *See Suboxone,* 421 F. Supp. 3d at 70. This class certification was issued after a careful consideration of Rule 23's requirements and a rigorous analysis of the relevant factors described in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011).

**LEGAL STANDARD**

"When considering a 12(b)(1) motion, the Court 'review[s] only whether the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the district court.'" *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 828 (E.D. Pa. 2019) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)). To survive a

12(b)(1) motion to dismiss, plaintiffs must demonstrate they "meet the basic 'case or controversy' requirement that would satisfy constitutional [Article III] standing." *Ethypharm S.A. France v. Abbott Lab'ys*, 707 F.3d 223, 231 n.17 (3d Cir. 2013)). An adequate showing of a case or controversy has three elements: "'[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *EJ MGT LLC v. Zillow Grp., Inc.*, 2021 WL 5754901, at *2 (3d Cir. Dec. 3, 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "'While all three of these elements are constitutionally mandated, the injury-in-fact element is often determinative.'" *In re Processed Egg Prod. Antitrust Litig.*, 851 F. Supp. 2d 867, 884 (E.D. Pa. 2012) (quoting *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 138 (3d Cir. 2009)).

"A class action, once certified under Fed.R.Civ.P. 23(a) and 23(b), should be decertified only when it is clear there exists changed circumstances making continued class action treatment improper." *In re School Asbestos Litig.*, 1990 WL 2194, at *1 (E.D. Pa. Jan. 11, 1990) (citing *Sley v. Jamaica Water and Utilities, Inc.*, 77 F.R.D. 391, 394 (E.D. Pa. 1977)). A defendant must "persuade the court that the circumstances surrounding th[e] action have changed since the time the class was certified." *In re Atl. Fin. Fed. Sec. Litig.*, 1992 WL 50072, at *6 (E.D. Pa. Feb. 28, 1992).  For the reasons set forth below, Defendant has not satisfied its burden and this motion should be denied in its entirety.

## ARGUMENT

## I.     THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS.

### A.     The Named EPPs have Standing.

EPPs hereby incorporate by reference Plaintiffs' Memorandum of Law in Opposition to Defendant Indivior Inc.'s Motion for Summary Judgment, ECF No. 732. EPPs have already

proved, and this Court has already held, that they have standing to bring their claims in federal

court. The EPPs are an issues class based on five issues of Defendant's antitrust violation, and

"the issue of anticompetitive conduct is wholly severable from the issues of antitrust impact and

damages." *Suboxone*, 421 F. Supp. 3d at 77. "None of the questions concerning antitrust

violation . . . certified by the EPPs require any inquiry into the individualized questions that will

necessarily come into play with regard to antitrust impact." *Id.* at 76. Defendant previously

argued in its summary judgment motion that EPPs have failed to sufficiently prove injury, and

this Court found that argument premature because the five certified issues must first be

adjudicated at trial; "[a]ssuming antitrust liability is established, each individual End Payor

Plaintiff will ***then*** have to prove antitrust impact and damages at a separate trial or trials." *In re*

*Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 622 F. Supp. 3d 22, 88

(E.D. Pa. 2022) (emphasis added). Despite Defendant's attempt to repackage this attack on the

mertis of EPPs' case as a jurisdictional issue, the argument is still premature, and EPPs' ability to

later prove injury has no bearing on whether they have standing to adjudicate these issues of

antitrust violation in this Court. In any case, EPPs ***have*** proffered significant evidence that they

were injured by Defendant's conduct.

"The Supreme Court has authorized courts to dismiss under Rule 12(b)(1) for lack of

jurisdiction due to merits-related defects in only narrow categories of cases." *Davis v. Wells*

*Fargo*, 824 F.3d 333, 349–50 (3d Cir. 2016). "Because a valid claim for relief is *not* a

prerequisite for standing, [the Court's] standing inquiry must avoid any consideration of the

merits beyond a screening for mere frivolity." *Yaw v. Delaware River Basin Comm'n*, 2021 WL

2400765, at *4 (E.D. Pa. June 11, 2021), *aff'd*, 49 F.4th 302 (3d Cir. 2022) (emphasis in original)

(internal quotations omitted). Demonstrating injury in fact "is 'not Mount Everest' but rather a

'very generous' standard, demanding only that the plaintiff allege a 'specific, identifiable trifle of injury.'" *Pierre v. Healthy Beverage, LLC*, 2022 WL 596097, at *4 (E.D. Pa. Feb. 28, 2022) (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005)). "Typically, a plaintiff's allegations of financial harm will easily satisfy each of these components, as financial harm is a classic and paradigmatic form of injury in fact." *EJ MGT LLC*, 2021 WL 5754901, at *2 (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017)).

Defendant argues that "[a]t this stage in the case, it is not enough for EPPs to claim they *could* show injury sometime later." Def.'s Br. at 8. It seeks support in *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018), in which the Third Circuit held that there was no viable theory of economic loss because the plaintiff failed to "allege facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture." 903 F.3d at 285. That case is inapposite. Here, the EPPs have plausibly alleged a theory of economic harm that is directly traceable to Defendant's anticompetitive actions. EPPs allege that they overpaid for Suboxone because Defendant engaged in a hard switch from its branded Suboxone tablets to its branded film just prior to generic tablet entry—a move bolstered by a smear campaign against the safety of its own tablet (subsequently pulled from the market before generic entry)—to bypass automatic substitution laws, while also engaging in stalling tactics and a sham United States Food & Drug Administration ("FDA") Citizen Petition to intentionally delay generic manufacturers' ability to gain FDA approval for their AB-rated generic tablets. In short, EPPs suffered injury because they incurred the costs of branded Suboxone film when generic tablet options would have been available but for Defendant's anticompetitive conduct.

The very case Defendant relies on explains that "a plaintiff is [not] required to allege the exact value of her economic injury at the pleading stage. Calculating and proving damages is indeed one of the major phases of a civil trial, and a plaintiff need not develop detailed economic models at the pleading stage to establish that she has standing." *Id*. at 287. But Defendant insists that EPPs do exactly that, arguing that EPPs "have not made individualized calculations as to each of their actual and but-for prices, . . . and lack any methodology for determining what overcharges may have been suffered by any particular class member." Def.'s Br. at 9 (internal quotation marks omitted). Defendant's argument is based on the merits of EPPs' claims—not their standing to bring them. *See Spring Pharms., LLC v. Retrophin, Inc.*, 2019 WL 6769988, at *3 (E.D. Pa. Dec. 11, 2019) ("'The extent of plaintiff's loss . . . [i]s a question of damages . . . rather than injury in fact.'" (quoting *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 880 (E.D. Pa. 2011))).

"[W]hen a factual challenge to jurisdiction attacks facts at the core of the merits of the underlying cause of action, 'the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case' . . . dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id*. (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 348-50 (3d Cir. 2016)). "The Supreme Court has 'criticized the implications of treating the validity of a cause of action as jurisdictional. . . . Under that approach, each element of every cause of action would have a legitimate claim to being a jurisdictional requirement—essentially eviscerating the distinction between the jurisdictional and merits inquiry (and requiring a court to dismiss a claim for lack of jurisdiction whenever the plaintiff does not prevail).'" *Processed Egg Prod.*, 851 F. Supp. 2d at 886 (quoting *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 80 (3d Cir. 2003)).

This Court has already ruled that EPPs have pleaded injury in fact, and therefore have standing. "Each overpayment made by a consumer, or reimbursed by a Health and Welfare Plan, is a discrete injury that the state antitrust laws were designed to redress." *Suboxone*, 64 F. Supp. 3d at 695. "The damages in the present action allegedly stem from overcharges due to Reckitt's[1] scheme to Generics from competing with its product. These damages do not appear incapable of accurate calculation such that the End Payors would not have standing. As such, I conclude that . . . the End Payors have standing to bring antitrust claims under the state laws that have passed Illinois Brick repealer statutes."[2] *Id.* at 698.

"The Court need not limit its analysis of Plaintiffs' economic injury to one particular theory. Rather, it has a 'duty to examine the allegations in the complaint from a number of different angles in order to see if the purported injury can be framed in a way that satisfies Article III.'" *Pierre*, 2022 WL 596097, at *5 (internal quotations omitted) (quoting *J&J*, 903 F.3d at 282 (internal quotations omitted)). EPPs allege that the Defendant's scheme injured them in three ways. *First*, Defendant increased the price of its Suboxone tablets by 60% prior to generic entry while also eliminating tablet rebates in order to wrest as much profit as possible from payors. EPPs MSJ Opp'n at 15-16; Plaintiffs' Affirmative Statement of Facts ("Pls.'

---

[1] Defendant Indivior was previously known as Reckitt Benckiser Pharmaceuticals, Inc. before being demerged from its former parent company. *See Suboxone*, 2022 WL 3588024 at *1 n.1.

[2] This Court has held that EPPs have both Article III standing and antitrust standing. The threshold for establishing Article III standing is far less demanding than that of statutory standing under antitrust laws. *See, e.g., Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 2020 WL 4704939, at *3 (E.D. Pa. Aug. 13, 2020), *aff'd*, 32 F.4th 242 (3d Cir. 2022) ("Antitrust standing demands more than the Article III standing requirements of injury in fact, causation, and redressability.") (citing *Processed Egg Prods.*, 881 F.3d at 268); *Novak v. Somerset Hosp.*, 625 F. App'x 65, 67 (3d Cir. 2015) ("Antitrust standing augments the 'case or controversy' requirement under Article III . . ."); *Stark v. Ear Nose & Throat Specialists of Nw. Pennsylvania, P.C.*, 185 F. App'x 120, 124 (3d Cir. 2006) ("Antitrust standing is, of course, more than the 'injury in fact' and the 'case or controversy' required by Article III of the Constitution.").

ASOF") ¶ 161. *Second*, Defendant orchestrated a "hard switch" from its branded Suboxone tablet to its branded Suboxone film prior to generic entry in order to evade automatic substitution of AB-rated generics by engaging in a disinformation campaign about the safety of its own tablets, threatening doctors with prosecution for prescribing tablets, and coercing insurance companies to restrict coverage for the tablets, before pulling the tablets from the market and increasing the price of the film. EPPs MSJ Opp'n at 7-18, 32; Pls.' ASOF ¶¶ 58-90, 112. *Third*, Defendants sabotaged the process by which it and the generic manufacturers were required to finalize and submit to the FDA a shared Risk Evaluation and Mitigation Strategies ("REMS") for Suboxone tablets as part of its scheme to prevent or delay generic competition, and filed a sham Citizen Petition with the FDA urging it to delay approval of generic companies' ANDAs, unlawfully preventing less expensive generic versions from entering the market when they could have. EPPs MSJ Opp'n. At 18-23; Pls.' ASOF ¶¶ 181-218.  These well-pleaded facts are sufficient to establish Article III standing.

Contrary to Defendant's assertion that EPPs "have not identified specific facts 'that, if proven true, would permit a factfinder to determine that [they] suffered at least some economic injury,'" Def.'s Br. at 8 (quoting *J&J*, 903 F.3d at 287), "[t]he EPP Reps *have* produced their purchase data, supplied their PBM contracts, provided testimony, retained two economists, disclosed an overcharge methodology, ascertained the necessary economic inputs to calculate each member's injury and damages, and even illustrated how the methodology can be used to calculate overcharges for the class of EPPs." EPPs MSJ Opp'n at 62. The economic analysis performed by Plaintiffs' experts show that the price of branded Suboxone film was much higher than the price of generic Suboxone tablets in both the but-for world and in reality. *Id*. at 23-24; Pls.' ASOF ¶¶ 245-54.

Demanding a calculation of the exact amount of the named EPP class members' damages is premature. The EPPs were certified as an issues class under Rule 23(c)(4), which "bifurcate[s] the 'adjudication of liability to the class' from follow-on proceedings needed to 'prove the amounts of [class members'] respective claims.'" *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 267 (3d Cir. 2021) (quoting Fed. R. Civ. P. 23(c)(4) advisory committee's note to 1966 amendment). This Court "certified the End Payor Class to address only six discrete questions" regarding antitrust violation, and "assuming antitrust liability was established, each individual End Payor Plaintiff would *then* have to prove antitrust impact and damages at a separate trial or trials." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2021 WL 662292, at *13 (E.D. Pa. Feb. 19, 2021) (emphasis added). EPP class members are obligated to calculate their individual damages only after the certified antitrust violation issues of the class are resolved at trial. At this stage, the indisputable fact that at least one named EPP class member has Constitutional standing has been affirmed by this Court, and that is sufficient to dispose of this motion.

**B.      The EPPs Do Not Need to Demonstrate Standing for Unnamed Class Members.**

For the reasons stated, *see supra* Section I(A), it is premature to raise the issue of antitrust injury for both named and unnamed EPP class members. This Court has already ruled in its summary judgment decision that the named EPP class members have standing, and that the five certified antitrust violation issues must be adjudicated first at trial before EPPs are required to prove injury. *See Suboxone*, 622 F. Supp. 3d at 88. Defendant's attempt to repackage its premature merits attack as a jurisdictional attack on EPPs' standing does not change this Court's previous holdings. And, since this Court has held that the named EPP class members have standing, EPPs do not need to prove standing for unnamed members of the class.

"[U]nnamed class members need not establish Article III standing." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 n.5 (3d Cir. 2015) "'[S]o long as a named class representative has standing, a class action presents a valid 'case or controversy' under Article III.'" *Generic Pharms. Pricing*, 368 F. Supp. 3d at 829  (quoting *Neale*, 794 F.3d 353, 369 (3d Cir. 2015)). "With regard to class actions, Third Circuit precedent holds that passive members of a class need not meet standing requirements, 'so long as at least one named plaintiff has standing.'" *Thorne v. Pep Boys - Manny, Moe & Jack Inc.*, 397 F. Supp. 3d 657, 663 (E.D. Pa. 2019) (quoting *Neale*, 794 F.3d 353 at 364) . "Requiring individual standing of all class members would eviscerate the representative nature of the class action. It would also fail to recognize that the certified class is treated as a legally distinct entity even though the outcome of such an action is binding on the class." *Neale*, 794 F.3d at 364. *See also Pierre*, 2022 WL 596097, at *7 ("[I]f one plaintiff has Article III standing, unidentified class members 'will not block class standing on a motion to dismiss.'") (quoting *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 585 (E.D. Pa. 2018)); *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d at 585 ("[o]nce Article III standing 'is determined vis-à-vis the named parties ... there remains no further separate class standing requirement in the constitutional sense.'") (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 306-307 (3d Cir. 1998)).

Defendant's reliance on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) is inapt. In *TransUnion*, the Court held that the named plaintiff and about a quarter of unnamed class members had standing to recover individual damages because the defendant disseminated false and damaging information about them to third-parties, but held that the other three-quarters of unnamed class members did not have standing to recover individual damages because the defendant did not disseminate information about them. The Court reasoned that these unnamed

class members did not allege any concrete harm, claiming only that the defendant had "an inaccuracy in an internal credit file . . . not disclosed to a third party" which "is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer." 141 S. Ct. at 2210. Those unnamed class members did not claim to suffer any detriment, financial or otherwise, and the possibility of future harm—while potentially eligible for injunctive relief—did not entitle them to monetary damages. *Id. TransUnion* held only that those particular unnamed class members did not have standing to recover damages because those particular unnamed class members did not allege damages.

Here, the EPPs have certified an issues class on issues of antitrust violation that are common to all members of the class and do *not* include the issue of injury. Unlike in *TransUnion*, where the defendant's actions were different toward the class members with standing versus the class members without, and where some class members were harmed while others were not, all EPPs allege the Defendant engaged in one cohesive scheme to violate the law in a way that increased the price of Suboxone and limited EPPs' options in purchasing Suboxone. If Defendant did violate the law, then all EPP participants in the Suboxone market were harmed in the same manner by the same conduct. The extent to which each EPP was injured is an issue to be determined *after* the classwide certified issues are resolved at trial.

In any case, the named EPP class members have standing to bring the certified antitrust violation issues to trial. Third Circuit precedent is overwhelming and unwavering; EPPs do not need to prove any of the unnamed class members have standing.

## II.   THE THE COURT SHOULD DENY DEFENDANT'S MOTION FOR DECERTIFICATION.

### A.   Defendant's Motion to Decertify Is an Untimely Attempt to Revisit the Court's Well-Reasoned Opinion Certifying the Issues Class.

On September 27, 2019, this Court issued an extensive and well-reasoned Memorandum certifying a Rule 23(c)(4) issues class limited to five issues: (1) whether Defendant engaged in anticompetitive and deceptive conduct; (2) whether Defendant willfully maintained monopoly power through such conduct; (3) whether Defendant had a specific intent to monopolize; (4) whether Defendant has offered a non-pretextual procompetitive justification that could not have been obtained through less restrictive means, and if so; (5) whether the anticompetitive effects of Defendant's conduct outweigh their proffered procompetitive benefits, if any. *See Suboxone,* 421 F. Supp. 3d at 70. Now, nearly four years after the issues class was certified, Defendant untimely moves for reconsideration and decertification.  Def.'s Br. at 10–24.

"[D]ecertification is an 'extreme step particularly at a late stage in litigation.'" *Norman v. Trans Union, LLC*, 2023 WL 2903976, at *8 (E.D. Pa. Apr. 11, 2023) (quoting *Korrow v. Aaron's Inc.*, 2015 WL 7720491, at *10 (D.N.J. Nov. 30, 2015)). To decertify a class, a defendant "bears a heavy burden to show that there exist clearly changed circumstances that make continued class action treatment improper." *Atlantic Fin. Fed. Sec. Litig.*, 1992 WL 50072, at *2 (citing *Sley*, 77 F.R.D. at 394-95 ("Applying a 'law of the case' rationale, a class once certified on the basis of the requirements of rule 23(a) and 23(b) should be decertified only where it is clear there exist changed circumstances making continued class action treatment improper.")). A motion to decertify will be denied where a defendant lists grounds that were previously given or could have been asserted earlier, but were not. *See, e.g., Kramer v. Scientific Control Corp.*, 67 F.R.D. 98, 99 (E.D. Pa. 1975) (noting that "the proponents of revocation or modification of a class action Order

should, at a minimum, show some newly discovered facts or law" and denying motion where defendants' grounds "now include those which they gave previously or could have asserted earlier but did not"); *School Asbestos Litig.*, 1990 WL 2194, at *1  (denying defendants' motion for decertification of the class where "defendants [did] not present arguments which are either novel or representative of changed circumstances"). "In the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of class, in the guise of motions to reconsider the class ruling." W. Rubenstein, A. Conte & H. Newberg, 3 *Newberg on Class Actions* § 7:47 (4ᵗʰ ed. 2011).

Defendant cites the Third Circuit's decision in *Russell v. Education Commission for Foreign Medical Graduates,* 15 F.4th 259 (3d Cir. 2021), as "clarifying" case law that changed settled Third Circuit law on two issues: *First*, that the Court must determine that "the proposed issue class fit[s] within one of Rule 23(b)'s categories." Def.'s Br. at 10. *Second*, that the Court must explicitly consider all nine of the *Gates* factors. However, as explained below, the core principles governing class certification remain *unchanged* and, in fact, are *reinforced* by the *Russell* decision. Defendant also cites expert testimony and evidence which existed during the class certification phase of this proceeding. Def.'s Br. at 14 n.4.  Accordingly, the Court should not entertain Defendant's untimely motion based upon mischaracterizations of the longstanding Third Circuit law and evidence that was readily available during class certification.

### B.    The Court Correctly Certified the Issues Class.

Defendant first argues that EPPs "have not and cannot make a showing that" the issues class fits under one of the subsections of Rule 23(b). Def.'s Br. at 11. Defendant is incorrect that

this Court did not previously determine that "the proposed issue class fit[s] within one of Rule 23(b)'s categories." *Id*. at 10. Rather, the Court explicitly held that "[t]o obtain certification, a class must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)." *Suboxone*, 421 F. Supp. 3d at 45. It went on to state that, "Certification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met." *Id.* In contrast, in *Russell*, the Eastern District of Pennsylvania flatly rejected defendant's arguments that the plaintiff must satisfy Rule 23(b)(3)'s predominance requirement in order to certify a 23(c) issues class altogether. *Russell v. Educational Commission for Foreign Medical Graduates*, 2020 WL 1330699 at *4, *8 (E.D. Pa. Mar. 23, 2020), *vacated and remanded on other grounds*, 15 F.4th 259 (3d Cir. 2021) ("[The Commission]'s argument that the Court should require Plaintiffs to satisfy Rule 23(b)(3)'s predominance requirement before turning to these factors parrots one of the camps that the Third Circuit acknowledged but refused to join in *Gates*. Because the Third Circuit rejected that view, this Court must do the same. . . . Having determined that Plaintiffs can satisfy the Rule 23(a) factors, the Court turns to the question of whether to certify an issues class under Rule 23(c)(4)."). In its opposition to EPPs' motion for class certification, Defendant did not argue that the issues class failed to meet the predominance requirements of Rule 23(b)(3). But even setting aside Defendant's attempts to reargue certification at the eleventh hour, the Court correctly certified the Issues Class as discussed below.

### a.  Common Questions Predominate As to the Certified Issue Classes.

Defendant also argues that the issues class cannot meet the predominance requirements of Rule 23(b)(3). (Def.'s Br. at 12–13.) Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."

To satisfy the predominance inquiry, the plaintiff must show that he can establish elements of his claim at trial by common, and not individualized, proof. *See, e.g., Sullivan v. DB Investors, Inc.*, 667 F.3d 273, 305 (3d Cir. 2011); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (stating that common questions are those "where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof") (internal quotation omitted). "Put another way, what matters for purposes of the predominance determination is whether there are common questions, not common answers." *In re Mushroom Direct Purchaser Antitrust Litig.,* 319 F.R.D. 158, 187 (E.D. Pa. 2016).

The Third Circuit has found that "in appropriate cases Rule 23(c)(4) can be used even though full Rule 23(b)(3) certification is not possible due to the predominance infirmities." *Russell*, 15 F.4th at 273; *see also Gonzalez v. Corning*, 885 F.3d 186, 202 (3d Cir. 2018) ("While Plaintiffs are correct to point out that the appropriateness of certifying a Rule 23(c)(4) class is analytically independent from the predominance inquiry under Rule 23(b)(3), a case may present concerns relevant to both."). Accordingly, when a court assesses predominance with respect to a Rule 23(c)(4) issues class, the court need only consider whether common questions predominate as to those issues certified by the court. *Russell*, 15 F.4th at 273.

Here, the Court certified for class-wide treatment five issues that bear directly on whether Defendant committed an antitrust violation. The Court determined that class certification for all purposes was inappropriate due to the individualized issues needed to determine causation and damages, but found that certification with respect to the EPP issues class was appropriate because common questions predominate "within certain issues." *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018). The Court went on to note that "each of the[] [certified] issues depends entirely on Reckitt's conduct and, thus, on evidence common to the

class. As such, these common questions are capable of class-wide resolution because they require no inquiry into individualized issues." *Suboxone*, 421 F. Supp. 3d at 67; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (noting that as a general rule, liability for anticompetitive conduct focuses on the defendants' actions, not the conduct of individual class members). This is sufficient to meet the predominance requirement with respect to conspiracy and Defendant's participation therein. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 57 (E.D.N.Y. 2019) ("The common questions in this action appear to predominate over individual questions regarding the individual effect of such a conspiracy because the general proof needed to answer those questions – for example, the existence of the alleged conspiracy—is far more essential than the individualized proof necessary to determine individual harm."). Even where, as here, individualized issues preclude a Rule 23(b)(3) damages class, the issue of whether there is a violation of the antitrust laws has been certified under Rule 23(c)(4) by numerous district courts. *See In re Prograf Antitrust Litig.*, 2014 WL 4745954, at *4 (D. Mass. June 10, 2014) (certifying resolution of antitrust violation under Rule 23(c)(4)); *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *6 (N.D. Ill. Sept. 9, 2015) (same). Because the five issues certified are central to Defendant's violation, the Court may properly proceed to a class-wide trial on the certified issues, while leaving questions concerning damages for a second damages stage of the litigation.

### i. Defendant's Uninjured Class Member Argument is an Improper Invocation of Article III Standing Requirements.

Defendant argues that the issues class requires decertification because it includes individuals who have suffered no damages from the alleged conspiracy and thus have no Article III standing. Def.'s Br. at 13. However, Defendant fails to explain how this inquiry would inform the specific issues for which the Court certified the Issues Class. Defendant's argument relies on

a misreading of the Supreme Court's statement in *TransUnion* that "[e]very class member must have Article III standing" to obtain relief in federal court. 141 S. Ct. at 2208. As explained, *see infra* Section I(B), Third Circuit precedent is clear that unnamed class members do not need to demonstrate standing as long as at least one named class member has standing. *See also* A. Conte & H. Newberg, 1 *Newberg on Class Actions* § 2.7 (4th ed. 2002) ("[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court."). Here, the named Plaintiffs have demonstrated standing, *see infra* Section I(A), which is all that is required for certification. *TransUnion* does not change this result, because the Supreme Court's decision clarified the requirement that "[e]very class member must have Article III standing in order to ***recover*** individual damages," not "the 'distinct question' of whether each member of the class must demonstrate standing during class certification." 141 S. Ct. at 2208, 2208 n.4 (emphasis added). Similarly, neither *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 2010 WL 3855552 (E.D. Pa. Sept. 30, 2010), nor *In re Asacol Antitrust Litig.,* 907 F.3d 42 (1st Cir. 2018), dealt with a Rule 23(c)(4) issue class. Defendant's reliance on cases denying certification to Rule 23(b)(3) ***damages*** classes in the presence of individual issues relating to class membership, injury, and damages is misplaced.

Finally, Defendant contends that the issues class includes members that were not injured by its alleged conspiracy. Def.'s Br. at 14–19. As explained, the *effect* of any conspiracy is not an issue to be tried on behalf of the issues class. In fact, as the Third Circuit recently held, "[i]n a typical Rule 23(b)(3) class action, for example, individualized damages determinations often remain after common questions have been decided." *Russell*, 15 F.4th at 267 (citing *Tyson*

*Foods,* 577 U.S. at 452–60; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–70 (2013)).

Moreover, the fact that damage amounts may vary among the class is not a proper basis to resist certification. *See, e.g., Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005, at *23 (E.D. Pa. June 10, 2015) (Goldberg, J.) ("[I]ndividual variations in Plaintiffs' damages calculations [do not] prevent a finding of predominance."); *Id*. at *22 ("'Some variation of damages among class members does not defeat certification.'" (quoting *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 232 (E.D. Pa. 2012))); *Leyva v. Medline Indust.*, 716 F.3d 510, 513 (9th Cir. 2013) (noting that "damage calculations alone cannot defeat certification"); *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 200 (D.N.J. 2014) ("Defendants' argument that a class fails whenever the damages calculations are not uniform, so as to predominate over the class, misapplies the Supreme Court's holding in *Comcast*."); *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 291 (D. Mass. 2015) ("Calculating the precise amount of damages owed to each class member may also require some individualized inquiry. But this task also does not stand in the way of class certification."); *Martins v. 3PD, Inc.*, 2014 WL 1271761, at *13 n. 7 (D. Mass. Mar. 27, 2014) ("Following *Comcast*, courts have continued to find class treatment appropriate even where individual damages issues exist."). Defendant now attempts to create a factual dispute that cannot be properly resolved in a decertification motion. *See In re Amla Litig.,* 328 F.R.D. 127, 135 (S.D.N.Y. 2018) (holding that "factual dispute does not mandate decertification").[3]

---

[3] Despite the fact that Suboxone is a maintenance drug that has been out for many years, Defendant contends that some consumers may have used Suboxone for only a few months and were uninjured. Notwithstanding the fact that this argument is based upon rank speculation, Defendant ignores the law that a person who sustains an overcharge on a single transaction is

### ii.  The Issues Class Is, As Previously Determined By This Court, Ascertainable.

Defendant also argues that the issues class is not ascertainable because the class definition fails to exclude individuals that were not injured as a result of its anticompetitive conduct. Def.'s Br. at 18–19. As an initial matter, because the issues class definition is the same as those the Court previously ruled are ascertainable and meet the requirements of Rule 23(a), the Court's previous findings apply equally here. *See, e.g., In re Caterpillar Inc.*, 67 F. Supp. 3d 663, 669–70 (D.N.J. 2014) ("The law of the case doctrine is an amorphous concept which generally holds that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also Scudder v. Colgate Palmolive Co.,* 2018 WL 4188456, at *2 (D.N.J. Aug. 31, 2018) (following law of the case when dismissing amended complaint for failure to cure defect identified in opinion dismissing original complaint).

Notwithstanding this, Defendant's argument suggests that, prior to resolving the questions of conspiracy and its participation, EPPs must prove class membership for each class member on a common basis. *See* Def.'s Br. at 19 ("Because 'individualized fact-finding or mini-

---

injured. *See*, *e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) ("Paying an overcharge caused by the alleged anticompetitive conduct on a single purchase suffices to show—as a legal and factual matter—impact or fact of damage."). Similarly, Defendant manufactures an example to argue that an individual with no out-of-pocket expense and no insurance would fall within the Class definition despite being uninjured. (Def.'s Br. at 16.) To this point, Defendant engages in obfuscation requiring brief clarification. If an individual had no out-of-pocket expenses and no insurance, that individual did not make a purchase of Suboxone. To put this into context, what the Defendant is essentially suggesting is a situation in which an individual received a "free sample." Free samples clearly do not fall within the Class definition of a person who "purchased and/or paid for some or all of the purchase price" for Suboxone. *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *15 (D. Mass. Oct. 16, 2017) (rejecting defendants' arguments that consumers who never paid for brand or generic Solodyn were injured); *In re Loestrin 24 Fe Antitrust Litig.*, 410 F. Supp. 3d 352, 402–404 (D.R.I. 2019).

trials w[ould] be required to prove class membership,' *Carrera*, 727 F.3d at 307, adding class exclusions would thus deepen, not solve, the ascertainability problem.") But this argument asks the Court to impose a heightened ascertainability requirement, which has been expressly rejected by the Third Circuit. In *Carrera*, the Third Circuit clarified that "ascertainability only requires the plaintiff to show that class members can be identified." *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013); *see also Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020) (stating that a Rule 23(b)(3) class must be "currently and readily ascertainable based on objective criteria"); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).  As this Court previously articulated in its decision certifying the issues class, the cases on which Defendant again relies are distinguishable:

> Reckitt's case citations in support of their argument are distinguishable. In *Vista Healthplan, Inc. v. Cephalon, Inc*., No. 06-1833, 2015 WL 3623005 (E.D. Pa. June 10, 2015), the plaintiffs merely provided their own "assurances" that "comprehensive records documenting any purchase of Provigil can be easily obtained from any number of reliable objective sources," without detailing any reliable methodology for identifying class members. *Id.* at *9.

*Suboxone*, 421 F. Supp.3d at 72 n.28.  Here, the issues class is clearly ascertainable.  The class is marked by a "readily discernible, clear, and precise statement of the parameters defining the class." *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006).

Contrary to Defendant's suggestion, certification does not harm Defendant's due process rights because "[a]s long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) (citing *Lilly v. Jamba Juice Co*., 2014 WL 4652283, at *6 (N.D. Cal. Sept. 18, 2014) ("Defendants would certainly be entitled to object to a process through which a non-judicial administrator 'ascertains'

each applicant's class membership on the basis of the applicants' own self-identification, gives a defendant no opportunity to challenge that determination, and then racks up the defendant's bill every time an individual submits a form."); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011) ("If Mr. Johnson establishes liability for the class, Defendants may challenge reliance and causation individually during a determination of damages, after the issues that are common have been litigated and resolved."); *Godec v. Bayer Corp.*, 2011 WL 5513202, at *7 (N.D. Ohio Nov. 11, 2011) ("In any event, to the extent Bayer has individualized defenses, it is free to try those defenses against individual claimants."). Here, Defendant will be afforded such opportunity in the future and has not been deprived of its due process rights.

Defendant also argues that EPPs have an ascertainability problem because "they are unable to identify all class members" through the subpoenas EPPs issued to third parties to obtain purchaser lists for purposes of disseminating notice of class certification.[4] Def.'s Br. at 19-20. However, for the purposes of class certification, "EPPs need not identify the class members." *Suboxone*, 421 F.Supp.3d at 72. "[A]scertainability only requires a showing of a process through which class members can be successfully identified," *id.*, and—in stark contrast to the cases cited by Defendant wherein zero class members were identifiable—the fact that through the subpoena process EPPs were able to identify and serve direct notice on nearly ***one million*** purchasers of Suboxone proves that the process approved by the Court was highly successful in identifying class members. *See* EPP's Report on Notice to the Certified Classes ("EPP Status Report"), ECF

---

[4] Defendant mentions subpoenas issued to PBMs. EPPs actually issued subpoenas to the top six PBMs, the ten largest third-party payors ("TPPs"), the top ten chain store pharmacies, and the top five mail order pharmacies in the United States. Due to some entities appearing on more than one list, a total of 24 subpoenas were issued. Also, due to the significant overlap in patients' use of PBMs, TPPs, and pharmacies, many class members appeared on multiple lists. *See* EPP Status Report.

21

No. 820 (stating that EPPs served class notice on 43,294 Third-Party Payors and 928,175 consumers). Additionally, a vigorous publication notice campaign provided notice to over 80% of class members that they are members of the EPP issues class. *Id*.

    **b.  The Court Rigorously Analyzed the *Gates* Factors With Respect to the Issues Class.**

    Finally, Defendant argues that this Court failed to rigorously analyze the *Gates* factors. Def.'s Br. at 20–25. Like its other arguments, Defendant seeks untimely reconsideration of this Court's 2019 class certification decision. Defendant's failure to timely move for reconsideration within fourteen days of the Court's motion for class certification or to seek leave to apply for appeal as required under Fed. R. Civ. P. 23(f) renders this motion moot.

    Additionally, Defendant is incorrect that *Russell* announced a new standard with respect to the *Gates* factors requiring every court to analyze each *Gates* factor, even those factors which are not relevant to the issues at hand or argued before the court. Instead, *Russell* involved an appeal to the Third Circuit in which the court was tasked with determining whether the lower court's "decision rest[ed] upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." 15 F.4th at 271. In scrutinizing the lower court's decision, the Third Circuit determined that "more was needed" than the analysis the district court supplied. *Id.* at 272. Before the Court is a motion to decertify, not an appeal or motion for reconsideration.

    Further, this Court's analysis of the *Gates* factors ***was*** rigorous. The Court noted that "issue certification is a matter left to the court's discretion, but the decision to certify a particular issue, like any other certification decision under Rule 23, 'must be supported by rigorous analysis.'" *Suboxone*, 421 F. Supp. 3d at 71 (quoting *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 201 (3d Cir. 2009)). It then went on to analyze each of the three elements that

Defendant focused on its in brief. *Id.* at 74. ("In challenging the cohesiveness of the proposed issues class, Reckitt focuses on three of the foregoing elements. Primarily, it contends that the EPPs cannot show that liability is capable of classwide treatment when they concede that injury is not. Second, Reckitt asserts that the common issues here are not divisible from the individual issues. Finally, it claims that resolution of the common issues will not materially advance the litigation.").[5] This analysis was thorough and, based on the law of the case doctrine, should not be disturbed just because Defendant belatedly now raises arguments it failed to timely assert.

## CONCLUSION

The EPPs have more than adequately plead injury in fact attributable to Defendant's anticompetitive conduct to establish a case or controversy under Article III. Accordingly, Defendant's Motion to Dismiss should be denied. The EPP issues class was properly certified under Rule 23(b) and, accordingly, Defendant's Motion to Decertify should be denied.

---

[5] EPPs previously addressed each of the *Gates* factors at length. (Memorandum of Law in Support of End-Payor Plaintiffs' Motion for Class Certification at 18–22, ECF No. 472-1.) To the extent the Court finds that a reexamination of these factors is necessary, EPPs respectfully incorporate each of their prior arguments by reference. Here, the *Gates* factors demonstrate that the issues class was appropriately certified because resolution of these "common issues would materially advance the disposition of the litigation as a whole . . . , reduce the range of issues in dispute and promote judicial economy." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2022 WL 3971006, at *5 (S.D.N.Y. Aug. 31, 2022).

Dated: May 29, 2023                    Respectfully submitted,

                                        /s/ Jeffrey L. Kodroff
                                        Jeffrey L. Kodroff
                                        John A. Macoretta
                                        Diana J. Zinser
                                        **SPECTOR ROSEMAN & KODROFF, P.C.**
                                        2001 Market Street, Suite 3420
                                        Philadelphia, PA 19103
                                        (215) 496-0300
                                        jkodroff@srkattorneys.com
                                        jmacoretta@srkattorneys.com
                                        dzinser@srkattorneys.com

                                        *Liaison Counsel for End Payor Class Plaintiffs*

Steve Shadowen                          Kenneth A. Wexler
**HILLIARD SHADOWEN LLP**               Justin Boley
1135 W. 6th Street, Suite 125           **WEXLER WALLACE LLP**
Austin, TX 78703                        55 West Monroe, Suite 3300
steve@hilliardshadowenlaw.com           Chicago, IL 60603
                                        (312) 346-2222
                                        kaw@wexlerwallace.com
                                        jnb@wexlerwallace.com

Michael Buchman                         Marvin Miller
Michelle Zolnoski                       Lori Fanning
**MOTLEY RICE LLC**                     **MILLER LAW LLC**
275 Seventh Avenue, 2nd FloorNew        115 South Lasalle StreetChicago, IL 60603
York, NY 10001                          (312) 331-3400
mbuchman@motleyrice.com                 mmiller@millerlawllc .com
mzolnoski@motleyrice.com                lfanning@millerlawllc.com

                    *Interim Co-Lead Counsel for the End-Payor Class Plaintiffs*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 29, 2023, I filed the foregoing document with the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system, and caused it to be served on all registered participants via the notice of electronic filing (the "NEF").

Dated: May 29, 2023                          */s/ Jeffrey L. Kodroff*
                                                Jeffrey L. Kodroff