# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE SUBOXONE (BUPRENORPHINE HYDROCHLORIDE AND NALOXONE) ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*All Direct Purchaser Class Actions* | **MDL No. 2445**<br><br>**Master File No. 2:13-MD-2445-MSG** |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS FOR THE NAMED PLAINTIFFS**

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 1

II.   SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS .................................. 4

      A.    Pre-Filing Investigation ...................................................... 4

      B.    Motion to Dismiss.............................................................. 4

      C.    Discovery ........................................................................ 5

      D.    Class Certification............................................................ 5

      E.    Summary Judgment and *Daubert* Motions ........................... 6

      F.    Trial Preparation ............................................................... 7

      G.    Mediation and Settlement ................................................... 8

III.  ARGUMENT ...................................................................................... 8

      A.    Class Counsel Should Be Awarded Reasonable Attorneys' Fees ......................... 8

      B.    The *Gunter/Prudential* Factors Support Class Counsel's Requested Fee ........... 10

            1.    The Size of the Fund Created and the Number of Persons Benefitted Favor the Requested Fee ........................................................... 11

            2.    Objections to the Requested Fee..................................... 12

            3.    Class Counsel are Highly Skilled in Antitrust Litigation ........................ 13

            4.    The Complexity and Duration of the Action Favor the Requested Fee.... 14

            5.    The Risk of Nonpayment Favors the Requested Fee................................ 15

            6.    The Significant Time Devoted to This Action Favors the Requested Fee 17

            7.    The Requested Fee is In Line With Awards in Similar Cases ................. 18

            8.    The Benefits of the Settlement are Attributable to Class Counsel........... 21

            9.    The Requested Fee is Consistent With the Percentage Fee That Courts in This Circuit Have Held Would Have Been Privately Negotiated............. 22

            10.   Innovative Terms of Settlement.................................................. 23

i

C.     A Lodestar Cross-Check Shows a 1.57 Multiplier ................................................ 23

D.     Class Counsel's Expenses Were Reasonable and Necessary to the Result .......... 25

E.     Service Awards for the Class Representatives are Appropriate and Reasonable . 26

IV.    CONCLUSION ................................................................................................................. 27

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ahrendsen v. Prudent Fiduciary Servs., L.L.C.*,
    2023 U.S. Dist. LEXIS 107802 (E.D. Pa. June 22, 2023) ......................................................9

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*,
    456 U.S. 556 (1982) ........................................................................................................27

*Baez-Medina v. Judge Grp., Inc.*,
    2023 U.S. Dist. LEXIS 124960 (E.D. Pa. July 20, 2023) .......................................................18

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ......................................................................................................8-9

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F.Supp.2d 322 (E.D. Pa. 2007) ......................................................................................12

*Brown v. Kadence Int'l*,
    2023 U.S. Dist. LEXIS 164037 (E.D. Pa. Sept. 15, 2023) ....................................................24

*Calhoun v. Invention Submission Corp.*,
    2023 U.S. Dist. LEXIS 41172 (W.D. Pa. Mar. 8, 2023) ..................................................13, 15

*Fusion Elite All Stars v. Varsity Brands, L.L.C.*,
    2023 U.S. Dist. LEXIS 179316 (W.D. Tenn. Oct. 4, 2023) ...................................................14

*Glaberson v. Comcast Corp.*,
    2015 U.S. Dist. LEXIS 127370 (E.D. Pa. Sept. 22, 2015) .....................................................9

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ...........................................................................................10, 13

*Hensley v. Eckerheart*,
    461 U.S. 424 (1983) ........................................................................................................11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    278 F.R.D. 51 (E.D.N.Y. 2010) ..........................................................................................27

*In re All-Clad Metalcrafters, L.L.C.*,
    2023 U.S. Dist. LEXIS 27868 (W.D. Pa. Feb. 17, 2023) ..................................................25-26

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ...........................................................................................10, 22

*In re Auction Houses Antitrust Litig.*,
    197 F.R.D. 71 (S.D.N.Y. 2000) ..........................................................................................23

*In re Auto Refinishing Paint Antitrust Litig.*,
    2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) .........................................................15, 16

*In re Celebrex Antitrust Litig.*,
   2018 U.S. Dist. LEXIS 85125 (E.D. Va. Apr. 18, 2018) ................................................20, 25

*In re Flonase Antitrust Litig.*,
   951 F.Supp.2d 739 (E.D. Pa. 2013) .........................................................................................25

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ......................................................................................................18

*In re Healthcare Servs. Grp., Inc. Derivative Litig.*,
   2022 U.S. Dist. LEXIS 134005 (E.D. Pa. July 22, 2022) ................................................23, 24

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ..............................................................................................22

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig*,
   2022 U.S. Dist. LEXIS 196845 (E.D. Pa. Oct. 28, 2022) .............................10, 14, 19, 21, 22

*In re Mercedes-Benz Emissions Litig.*,
   2021 U.S. Dist. LEXIS 256167 (D.N.J. Aug. 2, 2021) ........................................... 15-16, 17

*In re Prograf Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 199792 (D. Mass. May 20 2015) ................................................20, 25

*In re Relafen Antitrust Litig.*,
   2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) ....................................................19, 24

*In re Remeron Direct Purchaser Antitrust Litig.*,
   2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) ................................................18, 20, 25

*In re Remicade Antitrust Litig.*,
   2023 U.S. Dist. LEXIS 43284 (E.D. Pa. Mar. 15, 2023) ........................................... *passim*

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...........................................................................9, 10, 12, 22

*In re Safety Components Int'l Secs. Litig.*,
   166 F.Supp.2d 72 (D.N.J. 2001) .............................................................................................26

*In re Schering-Plough Corp.*,
   2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) ............................................................12

*In re Skelaxin Antitrust Litig.*,
   2014 U.S. Dist. LEXIS 91661 (E.D. Tenn. Jun. 30, 2014) ................................................20, 25

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ...................................................................................................23

*In re Vitamins Antitrust Litig.*,
   2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) ...........................................................23

*Kirsch v. Delta Dental of N.J.*,
    534 Fed. App'x 113 (3d Cir. 2013) ........................................................9

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ......................................................9, 10, 24

*La. Wholesale Drug Co. v. Pfizer, Inc.* (*In re Neurontin Antitrust Litig.*),
    2014 U.S. Dist. LEXIS 206338 (D.N.J. Aug. 6, 2014) ..................................20, 25

*McDonough v. Toys "R" Us, Inc.*,
    80 F.Supp.3d 626 (E.D. Pa. 2015) ...............................17, 23, 25, 26, 27

*Morales v. Unique Beginning Caterers Ltd. Liab. Co.*,
    2021 U.S. Dist. LEXIS 236744 (D.N.J. Dec. 10, 2021) ........................19

*Starnes v. Amazon.Com., Inc.*,
    2023 U.S. Dist. LEXIS 79515 (E.D. Pa. May 8, 2023) ........................18

*Stechert v. Travelers Home & Marine Ins. Co.*,
    2022 U.S. Dist. LEXIS 113277 (E.D. Pa. June 27, 2022) ................16, 21

*Stevens v. SEI Invs. Co.*,
    2020 U.S. Dist. LEXIS 35471 (E.D. Pa. Feb. 26, 2020) ........................18

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................22

*Syngenta AG MIR 162 Corn Litig.*,
    2018 U.S. Dist. LEXIS 206840 (D. Kan. Dec. 7, 2018) ........................23

*U.S.N. Co. v. Am. Express Co.*,
    55 F.R.D. 31 (E.D. Pa. 1972) ......................................................14

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    2020 U.S. Dist. LEXIS 69614 (E.D. Pa. Apr. 20, 2020) ..............................*passim*

*Wallace v. Powell*,
    2015 U.S. Dist. LEXIS 172326 (M.D. Pa. Dec. 21, 2015) ........................17

## **Rules**

Fed. R. Civ. P. 23 ......................................................................8

## I.      INTRODUCTION

Class Counsel, who have represented named plaintiffs Burlington Drug Company, Inc. ("BDC"), Rochester Drug Co-Operative, Inc. ("RDC"), and Meijer, Inc. and Meijer Distribution, Inc. (collectively "Meijer") and the certified direct purchaser class (hereinafter "Plaintiffs" or the "Class") throughout this litigation, respectfully submit this memorandum in support of their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Services Awards for the Named Plaintiffs.

On October 4, 2023, after more than a decade of litigation and just 3½ weeks before a jury trial was to commence on October 30, and during a third round of a multi-month mediation presided over by this Court by agreement of all parties and their counsel, Class Counsel agreed to a settlement (the "Settlement") with Indivior, Inc. ("Indivior") providing for one (1) immediate cash payment of $385 million for the benefit of the Class. If finally approved by the Court, the Settlement will represent one of the largest recoveries that Class Counsel has obtained for the direct purchaser class in a pharmaceutical antitrust case, and will represent a recovery where Class Counsel's early independent investigative work gave rise to later cases brought by various government entities.

Investigating, bringing, and litigating this lengthy and highly complex case through trial preparation required Class Counsel to expend significant hard work and extraordinary perseverance, despite knowing that they were litigating the case on a wholly contingent basis without any guarantee of success against a formidable adversary who would (and did) assert every conceivable defense. This contingent risk was exacerbated by Indivior's sometimes perilous financial condition.  From case investigation through the filing of their motion for preliminary approval of the proposed Settlement between Plaintiffs and Indivior, Class Counsel expended more than 112,000 hours of uncompensated professional time equating to a lodestar of

approximately $80 million. Class Counsel also incurred approximately $7.5 million in unreimbursed out-of-pocket expenses. For these efforts, Class Counsel seek an award of attorneys' fees in the amount of one-third (33⅓%) of the settlement amount net of unreimbursed expenses and service awards to the named plaintiffs, plus a proportionate amount of any interest accrued since the settlement was escrowed. The requested fee represents a 1.57 multiplier on Class Counsel's lodestar. Class Counsel also seek service awards in the amount of $150,000 each for class representatives BDC, RDC, and Meijer.[1]

As detailed below, Class Counsel's fee request is strongly supported by consideration of each of the "*Gunter/Prudential*" factors.

First, the size of the settlement — $385 million cash — unquestionably represents a substantial, immediate, and guaranteed recovery for the Class. It is one of the largest settlements that Class Counsel has achieved for the Class in terms of dollar value.

Second, to the extent any objections to Class Counsel's requested fee award are received, Class Counsel will promptly inform the Court.

Third, Class Counsel are highly experienced antitrust litigators, some of whom have been representing the Class here for decades, and possess the valuable skill, knowledge, and expertise necessary to resolve this long-pending litigation successfully.

Fourth and fifth, while all antitrust cases are inherently complex and all litigation involves some degree of risk, these complexities and risks are magnified in pharmaceutical antitrust cases, particularly in this case, which involved a unique combination of legal and factual

---

[1] The efforts of Class Counsel are described in further detail below and in the declaration of Bruce E. Gerstein ("Gerstein Decl.") and individual law firm declarations, filed contemporaneously herewith (Gerstein Decl. Exs. A through I).

issues, as well as a defendant with financial issues. Class Counsel aggressively litigated across all issues to ensure that the Class's potential recovery would not be eliminated or curtailed during the litigation and at trial. Nonetheless, a high degree of risk remained. Previous pharmaceutical antitrust cases have been lost after significant outlays of time and expenses by Class Counsel either because of successful defense summary judgment motions or adverse jury verdicts.

Sixth, the litigation was settled at a very advanced stage, with trial just 3.5 weeks away when a settlement-in-principle was agreed to after a third round of extended mediation efforts.

Seventh, the requested fee award of one-third is squarely within the range typically awarded by courts in the Third Circuit, and is also in line with awards granted in other pharmaceutical antitrust cases.

Eighth, Class Counsel filed the first complaint on behalf of any plaintiff group months before the FDA's referral of Indivior's conduct to the FTC, the FTC's subsequent investigation, and the filing of criminal indictments by the DOJ. Class Counsel did not ride the coattails of any government investigation in initiating and prosecuting this litigation; quite the opposite. In addition, the Settlement was negotiated wholly independently of the settlements other plaintiff groups and enforcement agencies achieved.

Ninth, the requested fee award is consistent with the percentage fee that courts in this Circuit have held would have been privately negotiated,.

Finally, a lodestar cross-check equals a 1.57 multiplier of Class Counsel's total lodestar. This multiplier is amply justified by this case's high risk, complexity, and length, coupled with Class Counsel's hard work, skill, and perseverance.

## II.     SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS

### A.     Pre-Filing Investigation

Class Counsel began investigating this case in August of 2012. Class Counsel's prefiling investigation included, *inter alia*, reviewing and analyzing the market availability of generic versions of Suboxone; publicly available regulatory filings for Suboxone Tablets and Film, including Indivior's 2009 Citizen Petition related to Subutex, Indivior's September 2012 Citizen Petition relating to Suboxone, and generic manufacturer Amneal's October 2012 response to the Citizen Petition; Indivior's annual reports; Indivior's promotional materials related to Suboxone Tablets and Film; information related to Suboxone product packaging; information related to Indivior's Risk Evaluation and Mitigation Strategies ("REMS") for Suboxone; information related to accidental pediatric exposures to Suboxone Tablets and Film, as well as reports of misuse, abuse and diversion; and medical treatment options for opioid use disorder. Gerstein Decl. at ¶ 1.

Class Counsel filed the initial direct purchaser complaint in December 2012 — *before* the FDA issued its February 2013 decision on Indivior's September 25, 2012 Citizen Petition — without the aid of any preceding governmental action, and to Class Counsel's knowledge, prior to the commencement of any government agency investigation into the misconduct alleged in this case. *Id.* at ¶¶ 2-3.

### B.     Motion to Dismiss

On September 16, 2013, Indivior filed a motion seeking to dismiss Plaintiffs' claims on multiple bases, including challenging Plaintiffs' theory that Indivior's conduct constituted an actionable scheme to monopolize. After conducting oral argument on Indivior's motion, the Court largely denied it, allowing the parties to turn to discovery. *Id.* at ¶¶ 7-10.

### C.   Discovery

In response to document requests served by Class Counsel on Indivior and third parties, Class Counsel received an unusually high volume of documents. While Class Counsel generally obtains, on average, approximately 2-4 million pages of documents in most pharmaceutical antitrust cases, Class Counsel fought for, and obtained, approximately 6.7 million pages of documents from Indivior and third parties in this litigation. *Id.* at ¶ 15. To construct Plaintiffs' case — in particular, to assemble the various components of conduct that Plaintiffs alleged were part of Indivior's overarching anticompetitive scheme — and to vigorously oppose Indivior's defenses, Class Counsel had to carefully review such documents by, *inter alia*, forming numerous subject matter teams. Class Counsel then assembled collections of key documents, and used those documents in depositions, expert reports, in seeking class certification and in opposing summary judgment, during the various mediation efforts, and in preparing this case for trial. Class Counsel took 33 fact and 7 expert depositions and defended 3 fact and 8 expert depositions (51 depositions overall). *Id.* at *e.g.,* ¶¶ 15-18.

Class Counsel also engaged in discovery-related motion practice. Class Counsel filed motions to compel against both Indivior and third-party Actavis (one of the earliest sellers of generic Suboxone Tablets), some of which Class Counsel prevailed upon. Class Counsel also successfully defended against Indivior's motion to compel "downstream" discovery from Plaintiffs, and successfully prevented Indivior from entirely shielding certain witnesses from being deposed based upon Fifth Amendment invocations. *Id.* at ¶¶ 19-23, 49-52.

### D.   Class Certification

Class Counsel developed the evidence necessary to support their motion for certification of the direct purchaser class, obtained a grant of class certification from this Court on September 27, 2019, successfully defended against Indivior's *Daubert* motion against Plaintiffs' expert

economist, and then successfully defeated Indivior's appeal of this Court's class certification decision, which was unanimously affirmed in a precedential opinion by the Third Circuit. Notably, Indivior's appeal of class certification in the Third Circuit involved challenges to the merits of this action. It included a motion seeking "judicial notice" of certain evidence, forcing Class Counsel to defend in the Third Circuit not just the grant of class certification but also the cognizability under Section 2 of the Sherman Act of a multi-faceted overarching anticompetitive scheme of which one aspect was a unilateral increase in price. *Id.* at ¶¶ 29-36.

E.    **Summary Judgment and *Daubert* Motions**

At their sole risk and expense (totaling more than $6 million), Class Counsel retained 8 experts, each of whom issued at least one report and sat for one or more depositions. Class Counsel also deposed each of Indivior's 7 experts. *Id.* at ¶¶ 24-27. This effort required Class Counsel to master exceptionally complex material across multiple disciplines to ensure that the experts were fully prepared to address all aspects of Plaintiffs' case — liability, causation, class certification, damages, regulatory background, and nuances particular to Suboxone which is subject to a REMS requirement and the DATA 2000 law — and to provide comprehensible testimony at trial. *Id.* at ¶ 28. Class Counsel was also required to defend against Indivior's broad *Daubert* attacks on Plaintiffs' experts, including successfully defeating Indivior's *Daubert* motion seeking to preclude any of Plaintiffs' experts from testifying that Indivior's safety claims concerning Suboxone Film were false or misleading, which was a significant issue in the case. *Id.* at ¶¶ 37-38.

Likewise, Class Counsel defended against Indivior's *three* motions seeking summary judgment on Plaintiffs' claims, the first of which (in 2016) challenged Plaintiffs' "delay" claims, and the second and third of which (both in 2021) included numerous liability, causation and damages arguments and were supported by 288 statements of fact and 329 exhibits. In opposing

these latter two motions, Class Counsel had to submit a near-equivalent number of counter-statements of fact and 460 exhibits. *Id.* at ¶¶ 45-47. Class Counsel's efforts proved successful, and Indivior's motions were denied. *Id.* at ¶ 48. Indeed, as the Court remarked to defense counsel at oral argument: "I think Plaintiffs have done a pretty good job. Every time … you point to a fact [they] say there's another fact that we can prove … and they've done a pretty good job in … saying this isn't just a counter argument, Judge. This is a fact that's admissible in evidence." *See* Dec. 2, 2021 Tr. at 10:8-13.

### F.   Trial Preparation

On December 16, 2022 — just two days after the scheduling of court-ordered mediation — the case was set for trial on September 18, 2023, and a pre-trial schedule was ordered. *See* ECF No. 852. Class Counsel thereafter began trial preparations pursuant to the pretrial scheduling order, including negotiating protocols for the exchange of exhibits and deposition designations. Class Counsel began exchanging witness lists, exhibit lists and exhibits, deposition designations, Rule 1006 summaries, and proposed fact stipulations. Gerstein Decl. at ¶ 55. On July 14, 2023, the trial date was reset to October 30, 2023. *See* ECF No. 912. The parties continued their pretrial exchanges, including jury instructions, verdict forms, *voir dire* and jury questionnaires, and negotiated trial procedures concerning further exchanges of items such as demonstratives, culled deposition designations, and notifications of witness ordering. Gerstein Decl. at ¶ 55. During September 2023, Class Counsel filed Plaintiffs' pretrial memoranda, 21 motions *in limine*, and a motion relating to the continued Fifth Amendment invocations by numerous former Indivior employees after previously challenging those invocations in a motion filed with the Court. *Id.* at ¶¶ 59-60, 62. Class Counsel also deposed four former Reckitt employees who had previously invoked their Fifth Amendment privilege but who later represented that they were willing to testify, deposed Indivior's current CEO (who previously

served as CFO) after he was belatedly added to Indivior's witness list and responded to
Indivior's motion concerning the admissibility of evidence relating to the criminal and False
Claims Act proceedings against Indivior. *Id.* at ¶¶ 56-57, 59. Class Counsel also filed a motion
directed to various trial presentation matters, and opposed numerous pre-trial motions filed by
Indivior. At the time a settlement-in-principle was reached, Class Counsel were just two days
away from filing oppositions to Indivior's own 21 motions *in limine*, and were actively preparing
for the final pretrial conference with the Court, at which the parties were set to argue motions *in
limine* and objections to witnesses and exhibits. *Id.* at ¶¶ 60-63.

> ### G.     Mediation and Settlement

The parties reached an agreement in principle on October 4, 2023 as part of the third
round of mediation proceedings, the last of which was presided over by this Court. *Id.* at ¶¶ 65-
67. As part of this Court-supervised mediation process, which commenced in January 2023 and
spanned approximately ten months, counsel for both sides presented their views on the merits of
each other's positions, as well as Indivior's financial wherewithal, and engaged in hard fought,
arm's length negotiations, as overseen by the Court. Further, even after the parties reached the
settlement-in-principle, the parties continued to engage in hard fought negotiations concerning
various specific terms of the settlement for several weeks, coming to final agreement just days
before Class Counsel filed a motion for preliminary settlement approval. *Id.* at ¶ 68.

## III.     ARGUMENT

> ### A.     Class Counsel Should Be Awarded Reasonable Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and
nontaxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P.
23(h). An attorney "who recovers a common fund for the benefit of persons other than himself or
his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472, 478 (1980). *See also Ahrendsen v. Prudent Fiduciary Servs., LLC*, 2023 U.S. Dist. LEXIS 107802, at *18 (E.D. Pa. Jun. 22, 2023) ("Class Counsel are entitled to reasonable attorney's fees and litigation expenses paid from a common fund settlement").

While attorneys' fees may be calculated using either the percentage-of-recovery method or the lodestar method, "the percentage-of-recovery method is generally favored in common fund cases, such as the one here, because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for its failure.'" *In re Suboxone (Buprenorphine and Naloxone) Antitrust Litig*., No. 13-md-2445, ECF No. 990 at 24 (E.D. Pa. Dec. 4, 2023) (Goldberg, J.) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) (internal quotations omitted) and citing *In re Rite Aid Sec. Litig.,* 396 F.3d 294, 300 (3d Cir. 2005)*). See also Glaberson v. Comcast Corp.*, 2015 U.S. Dist. LEXIS 127370, at *37 (E.D. Pa. Sep. 22, 2015) ("[t]he Third Circuit favors the percentage-of-recovery method of calculating fee awards in common fund cases. Courts within the Third Circuit and elsewhere routinely use this method in antitrust class actions) (collecting cases); *In re Kirsch v. Delta Dental of N.J.,* 534 Fed. Appx. 113, 115 (3d Cir. 2013) (percentage of recovery method "generally favored in common fund cases") (internal quotation omitted); *Ahrendsen,* 2023 U.S. Dist. LEXIS 107802, at *18 (percentage-of-recovery is "preferred method"); *In re Remicade Antitrust Litig.*, 2023 U.S. Dist. LEXIS 43284, at *65 (E.D. Pa. Mar. 15, 2023) ("Where, as here, the settlement funds come from a common fund, courts generally evaluate the attorneys' fees' reasonableness using the percentage-of-recovery method, with a lodestar crosscheck"). A percentage recovery method appropriately incentivizes counsel to maximize the recovery for the class as much as possible.

B.     The *Gunter/Prudential* Factors Support Class Counsel's Requested Fee

In evaluating fee awards, courts in the Third Circuit consider the following factors as

articulated in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000):

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

Additionally, courts generally also consider:

> [8] [T]he value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, [9] the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and [10] any "innovative" terms of settlement.

*In re Suboxone*, ECF No. 990 at 24 (citing *In re Prudential*, 148 F.3d at 336-40). *See also In re*

*Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 U.S. Dist. LEXIS 196845, at *28 (E.D. Pa. Oct.

28, 2022) (listing additional factors). Overall, these "reasonableness factors 'need not be applied

in a formulaic way' because each case is different, 'and in certain cases, one factor may

outweigh the rest.'" *Id.* (quoting *In re Rite Aid*, 396 F.3d at 301 and *Gunter*, 222 F.3d at 195 n.1).

Further, a court may consider "any other factors that are useful and relevant with respect to the

particular facts of the case." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006).

"Once all of the *Gunter* and *Prudential* factors have been considered, the Third Circuit

has suggested that it is 'sensible' for district courts to 'cross check' the percentage fee award

against the 'lodestar' method [to] ensure that the percentage-of-recovery method does not yield

too high or low of an award." *In re Suboxone*, ECF No. 990 at 26 (citing *In re Prudential*, 148

F.3d 333 and *In re Rite Aid*, 396 F.3d at 305-06). *See also Vista Healthplan, Inc. v. Cephalon,*

*Inc.*, 2020 U.S. Dist. LEXIS 69614, at *81-82 (E.D. Pa. Apr. 20, 2020) (Goldberg, J.).

10

As demonstrated below, consideration of each factor, followed by a lodestar cross check, supports the requested fee.

### 1. The Size of the Fund Created and the Number of Persons Benefitted Favor the Requested Fee

The first factor considers the fee request in comparison to "the size of the fund created [and] the number of persons benefitted." *In re Suboxone*, ECF No. 990 at 26. *See also In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *67. This is because in awarding fees, the "most critical factor is the degree of success obtained." *Hensley v. Eckerheart*, 461 U.S. 424, 436 (1983). Here, the Class will share in a recovery of $385 million (net of attorneys' fees, expenses and service awards granted by the Court). This ranks among one of the largest settlements achieved for a direct purchaser class in a pharmaceutical antitrust case. Because numerous Class members have already returned the claim forms that were mailed to them contemporaneously with the notice of settlement, upon the Settlement becoming final Class members will promptly receive a substantial recovery. *See generally In re Suboxone*, ECF No. 990 at 27 (one third fee award reasonable in $30 million settlement benefitting class of indirect purchasers in pharmaceutical antitrust case with substantial number of claimants getting relief).

The recovery to the Class is substantial not only in terms of dollar value, but also when assessed in light of the risks Class Counsel faced in prosecuting the Class's claims, as discussed below in Section III.B.5. Absent the Settlement, Class Counsel would have had to secure a favorable jury verdict against Indivior. And even assuming that occurred, an appeal (and subsequent petition for *certiorari*) would inevitably follow, presenting additional risk and delay in a case already more than a decade old. Additionally, Indivior's financial condition would continue to be an independent risk due to ongoing litigation in other jurisdictions. Moreover, there was a substantial possibility that a judgment in Plaintiffs' favor would result in Indivior

declaring bankruptcy, jeopardizing the Class's recovery. In comparison, the Settlement assures

the Class of an immediate and substantial recovery free from the risks and delays of a jury trial

and subsequent appeals.

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 2.        Objections to the Requested Fee

The Third Circuit has recognized that when there are either no or few objections to a fee

request, it can be said that the class's "reaction to the fee request supports approval" of the

requested fees, particularly where class members are "sophisticated" entities that have

"considerable financial incentive to object had they believed the requested fees were excessive."

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005).  *See In re Schering-Plough*

*Corp.*, 2012 U.S. Dist. LEXIS 75213, at *18 (D.N.J. May 31, 2012) ("The lack of objections to

the requested attorneys' fees supports the request, especially because the settlement class

includes large, sophisticated institutional investors") (internal quotation omitted); *Bradburn*

*Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322, 338 (E.D. Pa. 2007) ("The absence of

objections to the requested attorneys' fees…is particularly notable given the sophisticated nature

of the absent Class Members"); *Vista*, 2020 U.S. Dist. LEXIS 69614, at *84 (lack of objections

by nearly all class members who had filed claims "tacitly indicat[ed] their approval for the

Settlement and requested attorneys' fees").

Here, on November 20, 2023, Class members were mailed a notice of settlement which

informed them of the fact of and details concerning the Settlement, that Class Counsel intended

to submit an application for attorneys' fees of up to 33⅓% of the Settlement Fund plus court-

approved expenses and service awards, including a proportionate share of interest accrued, and

that Class members had the right to object to any or all of the above and the procedures for doing

so. The period for lodging objections to either the Settlement or Class Counsel's fee application

concludes on January 12, 2024. *See* ECF No. 984 (Order) at ¶¶ 8, 15-16. In the event any objection is received, Class Counsel will promptly inform the Court.

Accordingly, this factor can be evaluated once the deadline for objections expires.

### 3.       Class Counsel are Highly Skilled in Antitrust Litigation

"The skill and efficiency of class counsel is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and qualify of opposing counsel." *Calhoun v. Invention Submission Corp.*, 2023 U.S. Dist. LEXIS 41172, at *11 (W.D. Pa. Mar. 8, 2023) (internal quotation omitted). "The Third Circuit has explained that the goal of the percentage fee-award device is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'" *In re Suboxone*, ECF 990 at 27-28 (quoting *Gunter*, 223 F.3d at 198) (quotations omitted).

Here, Class Counsel's aggressive prosecution of this case at all stages, and the significant result achieved, demonstrate Class Counsel's skill and efficiency. Lead Class Counsel worked with a sophisticated group of co-counsel to achieve what Class Counsel believe is an outstanding result for the Class. Class Counsel were fully prepared to try this case skillfully and with vigor, as the Court knows. Collectively, counsel for the Class represent some of the most preeminent antitrust firms in the country, with decades of experience in complex pharmaceutical antitrust litigation. Each law firm involved specializes in particular areas of expertise (*e.g.,* issues relating specifically to liability, causation, regulatory regimes, economics, pharmaceutical industry business operations, pharmaceutical wholesaler business operations), providing Class Counsel the ability to deploy an efficient and non-duplicative allocation of resources meant to both build the strongest case possible for the Class and to rebut each of Indivior's numerous defenses. Class Counsel had formidable adversaries in the form of two large and sophisticated defense firms

retained by Indivior. Indeed, this Court has acknowledged that the attorneys on both sides were "outstanding" (Dec. 2, 2021 Tr. at 10:14-15), "sophisticated [and] super experienced[.]" *See* Dec. 13, 2022 Tr. at 13:12-13. *See also In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *68-70 (where attorneys representing both sides were "well-credentialed, highly qualified, and have years of experience litigating similar matters," this factor weighed in favor of finding requested fees reasonable); *In re Innocoll*, 2022 U.S. Dist. LEXIS 196845, at *30-31 (that class counsel was experienced and successful in the field and demonstrated skillful litigation over the course of five years "merit[ed] approval of the requested attorneys' fees").

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 4.   The Complexity and Duration of the Action Favor the Requested Fee

Courts have frequently acknowledged that "antitrust class actions are among the most complex to litigate." *In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *71 (citing cases). *See also Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 U.S. Dist. LEXIS 179316, at *14-15 (W.D. Tenn. Oct. 4, 2023) ("Antitrust actions are 'arguably the most complex actions[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.'") (internal quotation omitted). Moreover, "[i]t is well known that monopolization cases are among the most complex and difficult and protracted in the antitrust field." *U.S.N. Co. v. American Express Co.*, 55 F.R.D. 31, 32 (E.D. Pa. 1972).

This case was no exception. It was uniquely complex, as this Court noted. *See In re Suboxone*, ECF No. 990 at 28 ("The legal issues involved here were complex, implicating a novel theory of a product hop antitrust scheme."). Never before — or since — has an antitrust case in the pharmaceutical industry consisted of all the following alleged, unique scheme components parts: a hard product hop from a Tablet to a Film dosage form, using safety allegations, pricing, public statements, formulary placement, and eventual product withdrawal as

means of achieving the product hop; manipulations of FDA-mandated REMS negotiations to delay market entry of generics; and use of a Citizen Petition.

Class Counsel reviewed approximately 6.7 million pages of documents, took and defended numerous depositions, and retained highly qualified experts in order to build evidence of the numerous components of the anticompetitive scheme alleged and to refute Indivior's countless defenses. During the entirety of the litigation, Indivior asserted every conceivable defense to Plaintiffs' claims, as perhaps most aptly demonstrated by its sweeping (and unsuccessful) motions for summary judgment on all claims, discussed above. *See generally In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *70-71 (complexity of pharmaceutical antitrust litigation weighed in favor of fee request); *In re Auto Refinishing Paint Antitrust Litig.*, 2008 U.S. Dist. LEXIS 569, at *14 (E.D. Pa. Jan. 3, 2008) (complexity of price-fixing litigation in automotive paint industry weighed in favor of fee request).

Likewise, the duration of the litigation — more than a decade — is unquestionably significant by any measure. *See In re Suboxone*, ECF 990 at 28 (noting this litigation lasted ten years); *In re Remicade*, 2023 U.S. Dist. LEXIS 43284 at *70 (antitrust litigation lasting five years weighed in favor of fee request); *Calhoun v. Invention Submission Corp.*, 2023 U.S. Dist. LEXIS 41172, at *13-14 (W.D. Pa. Mar. 8, 2023) (four-year duration of litigation "strongly" supported fee request); *In re Auto. Refinishing Paint*, 2008 U.S. Dist. LEXIS 569, at *14 (six-year duration of antitrust litigation supported fee request).

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 5. The Risk of Nonpayment Favors the Requested Fee

"Courts in the Third Circuit have consistently recognized that the attorneys' contingent fee risk is an essential factor in determining a fee award." *In re Mercedes-Benz Emissions Litig.*, 2021 U.S. Dist. LEXIS 256167, at *44 (D.N.J. Aug. 2, 2021). This is because class counsel who

undertake to litigate on a purely contingent basis take "the risk [that] they would never be able to recoup fees for any of their efforts." *In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *71. (approving fee award where class counsel "worked on this litigation for five years but have not been paid a cent to date"); *Kyle Stechert v. Travelers Home & Marine Ins. Co.*, 2022 U.S. Dist. LEXIS 113277, at *33-34 (E.D. Pa. Jun. 27, 2022) (approving fee award where class counsel worked on case for six years on a contingent basis).

Here, Class Counsel filed and litigated this case for more than a decade, despite the risk that they would receive zero compensation for their hard work and long hours and would never recover the millions of dollars in out-of-pocket cash outlays required to litigate this case. Nonetheless, Class Counsel represented the Class on a purely contingent basis, with no up-front retainer fees or allowance for expenses, or any compensation during the lengthy pendency of the litigation. *In re Suboxone*, ECF 990 at 29 (for over "ten years, Class Counsel devoted extensive amounts of time and resources to litigating this case, all while pursuing complex legal theories which brought with them no guarantee of recovery at trial."); *Stechert*, 2022 U.S. Dist. LEXIS 113277, at *34 ("Class Counsel have worked on this litigation for six years but have not yet been paid a dime. They took the risk they would never be able to recoup fees for any of their efforts…so this factor weighs in favor of awarding the requested fees"); *Vista*, 2020 U.S. Dist. LEXIS 69614 at *86-87 (detailing risks of contingent fee representation in complex pharmaceutical class action, including risks related to denial of class certification and appeals). Absent the Settlement, the case was very near trial and while Class Counsel was confident in the Class's claims, and remain so, there was no guarantee that a jury would find in the Class's favor (or that a favorable jury verdict would withstand an inevitable appeal). The risks are evident in view of several pharmaceutical antitrust cases that some or all of Class Counsel have been

involved in that have been unsuccessful and yielded no recovery after Class Counsel expended

thousands of hours and millions of dollars in resources.[2]

Additionally, as mentioned above, there was an additional layer of non-payment risk at

play throughout this case due to Indivior's financial condition.  Despite that additional risk, Class

Counsel persevered and did not take a "lowball" settlement years ago.

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 6.      The Significant Time Devoted to This Action Favors the Requested Fee

Class Counsel collectively expended more than 112,000 hours litigating this case and

have advanced out-of-pocket outlays of approximately $7.5 million in that effort to date. Courts

have found that where class counsel expends significant time in litigating the case, this

represents a "substantial commitment" to the case that weighs in favor of approving a fee

request. *In re Suboxone*, ECF No. 990 at 29 (noting EPP counsel spent over 26,000 hours

prosecuting this case); *see McDonough*, 80 F.Supp.3d at 653 (class counsel devoted more than

84,000 hours over an eight-year period in price-fixing case). *See also Vista,* 2020 U.S. Dist.

LEXIS 69614, at *87 (class counsel devoted more than 41,000 hours over a twelve year period in

antitrust litigation); *In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *72 (class counsel devoted

more than 23,000 hours in "complex antitrust litigation that involved lengthy discovery"); *In re*

*Mercedes-Benz*, 2021 U.S. Dist. LEXIS 256167, at *45-46 (class counsel expended more than

25,000 hours in complex litigation); *Wallace v. Powell*, 2015 U.S. Dist. LEXIS 172326, at *84-

---

[2] After years of litigation, jury trials were lost in *In re HIV Antitrust Litig.*, Case No. 19-cv-02573 (N.D. Cal. Jun. 30, 2023), *In re Opana ER Antitrust Litig.*, Case No. 14-cv-10150 (N.D. Ill. Jul. 1, 2022), *In re Nexium Antitrust Litig.*, Case No. 12-md-02409 (D. Mass. Dec. 5, 2014), and *La. Wholesale Drug Co., Inc. v. Sanofi-Aventis*, Case No. 07-cv-07343 (S.D.N.Y. Nov. 20, 2008).

85 (M.D. Pa. Dec. 21, 2015) (where class counsel expended more than 40,000 hours such "a substantial commitment to this litigation…strongly favor[ed]" granting fee request).

Such was the case here. As detailed herein, from pre-complaint investigation through the time that the Court granted preliminary approval to the Settlement, Class Counsel expended an enormous amount of time over more than a decade prosecuting the Class's claims. Moreover, since that time, Class Counsel has and will continue to expend a significant number of non-compensable hours in connection with seeking final approval of, and administering, the Settlement so that Class members can achieve immediate financial recovery. *See In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013, at *42 (D.N.J. Nov. 9, 2005) (observing that class counsel would "likely incur hundreds of additional hours in connection with administering the settlement, without [compensation]").

Accordingly, analysis of this factor supports Class Counsel's fee request.

### 7.      The Requested Fee is In Line With Awards in Similar Cases

Class Counsel's one-third fee request falls squarely in line with fee awards in this Circuit in common fund cases. "While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund." *In re Suboxone*, ECF 990 at 30 (quoting *Stevens v. SEI Invs. Co*., 2020 U.S. Dist. LEXIS 35471, at *35 (E.D. Pa. Feb. 26, 2020) and citing *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 822 (3d Cir. 1995)). *See also Baez-Medina v. Judge Grp., Inc.*, 2023 U.S. Dist. LEXIS 124960, at *20-21 (E.D. Pa. Jul. 20, 2023) ("The Third Circuit 'has recognized fee awards in common-fund case[s] generally range from twenty percent to forty-five percent of the overall settlement fund.'") (quoting *Starnes v. Amazon.Com., Inc.*, 2023 U.S. Dist. LEXIS 79515, at *17-18 (E.D. Pa. May 8, 2023)). *See also Vista*, 2020 U.S. Dist. LEXIS 69614, at *88

18

(noting that within the Third Circuit "courts have consistently approved such awards"). As such, fee awards of "around thirty (30) percent are routinely found reasonable." *Morales v. Unique Beginning Caterers Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 236744, at *4 (D.N.J. Dec. 10, 2021).

As this Court noted in the End Payor litigation, "Class Counsels' requested fees in this case represent 33⅓% of the total recovery — a percentage which is well within the range of reasonable fees, on a percentage basis, in the Third Circuit." *In re Suboxone*, ECF 990 at 27.  *See also In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *72 ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery") (citing cases) (internal quotation omitted); *In re Innocoll*, 2022 U.S. Dist. LEXIS 196845, at *24-25 (one-third fee request was "within a reasonable range" and in "comparison with fee awards in other Third Circuit class action settlements").

Moreover, Class Counsel's fee request is in line with fees awarded in other complex pharmaceutical antitrust cases brought by direct purchasers both within and outside of this Circuit, as the chart below reflects:

| Case | Settlement | Fee |
|---|---|---|
| *In re Opana ER Antitrust Litigation*, MDL No. 2580, (N.D. Ill. Nov. 3, 2022), ECF Nos. 1081, 1085 | $145MM | 36% |
| *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05-cv-340 (D. Del. Apr. 23, 2009), ECF Nos. 531, 543. | $250MM | 33⅓% |
| *In re Buspirone Antitrust Litig.,* 01-cv-7951 (S.D.N.Y. April 17, 2003), ECF No. 22 | $220MM | 33⅓% |
| *La. Wholesale Drug Co. v. Pfizer, Inc. (In re Neurontin Antitrust Litig.)*, 2014 U.S. Dist. LEXIS 206338 (D.N.J. Aug. 6, 2014) | $191MM | 33⅓% |
| *In re Relafen Antitrust Litig.*, 2004 U.S. Dist. LEXIS 28801 (D. Mass. April 9, 2004) | $175MM | 33⅓% |
| *In re Novartis and Par Antitrust Litig.,* No. 18-cv-04361 (S.D.N.Y. Jul. 26, 2023), ECF Nos. 604, 635 | $126MM | 33⅓% |
| *In re Prograf Antitrust Litig.*, No. 2015 U.S. Dist. LEXIS 199792 | $98MM | 33⅓% |

| Case | Settlement | Fee |
|---|---|---|
| (D. Mass. May 20, 2015) | | |
| *In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 U.S. Dist. LEXIS 85125 (E.D. Va. Apr. 18, 2018) | $94MM | 33⅓% |
| *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) | $75MM | 33⅓% |
| *In re Skelaxin (Metaxalone) Antitrust Litig.,* 2014 U.S. Dist. LEXIS 91661 (E.D. Tenn. Jun. 30, 2014) | $73MM | 33⅓% |
| *In re Solodyn Antitrust Litig.,* 14-md-2503 (D. Mass. Nov. 27, 2017), ECF No. 808 | $72.5MM | 33⅓% |
| *In re Terazosin Hydrochloride Antitrust Litig.,* No. 99-md-1317 (S.D. Fla. April 19, 2005), ECF No. 1557 | $72.5MM | 33⅓% |
| *In re K-Dur Antitrust Litigation,* No. 01-cv-1652 (D.N.J. Oct. 5, 2017), ECF No. 1057 | $60.2MM | 33⅓% |
| *Meijer, Inc. v. Abbott Labs.,* No. 07-cv-5985 (N.D. Cal. Aug. 11, 2011), ECF No. 514 | $52MM | 33⅓% |
| *In re Wellbutrin XL Antitrust Litig.,* No. 08-cv-2431 (E.D. Pa. Nov. 7, 2012), ECF No. 485 | $37.5MM | 33⅓% |
| *In re Nifedipine Antitrust Litig.,* No. 03-md-223 (D.D.C. Jan. 31, 2011), ECF No. 333 | $35MM | 33⅓% |
| *Meijer, Inc. v. Barr Pharm., Inc.,* No. 05-cv-2195 (D.D.C. Apr. 20, 2009), ECF No. 210 | $22MM | 33⅓% |
| *In re DDAVP Direct Purchaser Antitrust Litigation*, No. 05-cv-2237 (S.D.N.Y. Nov. 28, 2011), ECF No. 113 | $20.025MM | 33⅓% |
| *In re Metoprolol Succinate Antitrust Litig.*, No. 06-cv-52 (D. Del. January 12, 2012), ECF No. 194 | $20MM | 33⅓% |
| *In re Prandin Direct Purchaser Antitrust Litigation,* No. 10-cv-12141 (E.D. Mich. Jan. 20, 2015), ECF No. 68 | $19MM | 33⅓% |
| *Rochester Drug Co.-Op., Inc. v. Braintree Labs, Inc.,* No. 07-cv-142 (D. Del. May 31, 2012), ECF No. 243 | $17.25MM | 33⅓% |
| *In re OxyContin Antitrust Litig.,* No. 04-md-1603 (S.D.N.Y. Jan. 25, 2011), ECF No. 360 | $16MM | 33⅓% |
| *Mylan Pharm., Inc. v. Warner Chilcott plc.* No. 12-cv-3824 (E.D. Pa. September 6, 2014), ECF No. 665 | $15MM | 33⅓% |
| *In re Asacol Antitrust Litig.,* No. 15-cv-12730 (D. Mass. Dec. 7, 2017), ECF No. 648 | $15MM | 33⅓% |

Accordingly, analysis of this factor supports Class Counsel's fee request.

## 8. The Benefits of the Settlement are Attributable to Class Counsel

In evaluating a fee request, "[a] significant factor to consider is whether Class Counsel was aided by a government investigation." *Vista*, 2020 U.S. Dist. LEXIS 69614, at *89. Courts thus consider whether any governmental or third-party investigation preceded the plaintiffs' claims versus whether class counsel did not "ride on anyone's coattails" in initiating the litigation, such that the benefits of the settlement to class members can be said to be attributable to the work of class counsel. *In re Innocoll*, 2022 U.S. Dist. LEXIS 196845, at *33. *See also In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *73 (that class counsel was not assisted by governmental investigation such weighed in favor of requested fee); *Stechert*, 2022 U.S. Dist. LEXIS 113277, at *35 (same).

Here, the exact opposite is true:  Class Counsel's efforts aided the government, not the other way around, and the Settlement is directly attributable to the efforts of Class Counsel, and not any governmental entity or other plaintiff group. All complaints brought by other plaintiff groups were filed after Class Counsel filed. Further and even more notably, the first direct purchaser class action complaint, filed in December 2012 by Class Counsel, *preceded* the FDA's referral of Indivior's conduct to the Federal Trade Commission, subsequent FTC investigation, and criminal prosecutions by the Department of Justice, which were not filed until April 2019. *See, e.g., U.S. v. Indivior Inc.,* 19-cr-00016-JPJ-PMS, ECF No. 3 (W.D. Va.) (original Indictment). Moreover, though the other plaintiff groups reached settlements with Indivior prior to the Settlement here, the Settlement here is entirely independent of those settlements. In sum, it cannot be said that the Settlement is attributable to the efforts of others.

Accordingly, analysis of this factor supports Class Counsel's fee request.

9.    **The Requested Fee is Consistent With the Percentage Fee That Courts in This Circuit Have Held Would Have Been Privately Negotiated**

This factor compares the requested fee to that which "would have been negotiated if the case had been subject to a private contingent agreement at the time counsel was retained. Courts in the Third Circuit have found that a one-third contingency fee would fit within the customary range." *In re Innocoll*, 2022 U.S. Dist. LEXIS 196845, at *33-34 (granting requested fee of one third). *See also In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *73-74 (recognizing that one-third is a "standard contingency award"); *Vista*, 2020 U.S. Dist. LEXIS 69614, at *91 ("[I]n private contingency fee cases…plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery" (internal quotation omitted).

Here, as noted above, the requested fee of one-third is consistent with what courts have awarded in other pharmaceutical antitrust cases.

Accordingly, this factor supports Class Counsel's fee request.[3]

---

[3] Where, as here, the requested fee satisfies the *Gunter/Prudential* factors (as detailed herein), the Third Circuit declines to apply the so-called "declining percentage" approach to awarding fees, which occurs when the requested percentage is reduced simply because the settlement is "large." *See, e.g., In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 303 (3d Cir. 2005) ("[T]here is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizeable fund. Put simply, the declining percentage concept does not trump the fact-intensive *Gunter/Prudential* analysis"); *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 331 (3d Cir. 2011) (same); *In re AT&T,* 455 F.3d at 174 (same). Moreover, the proffered rationale for the "declining percentage" approach, *i.e.*, instances in which the large recovery cannot be said to be attributed to the direct efforts of counsel, is not applicable here in view of Class Counsel's aggressive prosecution of this case for more than a decade and until the eve of trial. *See Sullivan*, 667 F. 3d at 331 (noting that cases applying declining percentage involve recoveries that have "no direct relationship" to the efforts of counsel); *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166, 197 (E.D. Pa. 2000) (criticizing "declining percentage" approach as "penaliz[ing] attorneys who recover large settlements," "cast[ing] doubt on the whole process by which courts award fees by creating a separate, largely unarticulated set of rules for cases in which the recovery is particularly sizable" even if all of the relevant factors support a higher percentage). Indeed, numerous courts have recognized that downward adjustments to requested fees simply on the basis of the size of the settlement would have the perverse effect of disincentivizing class action lawyers from negotiating a large recovery for class members. *See, e.g., In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 80 (S.D.N.Y. 2000) ("[A]djusting

### 10.  Innovative Terms of Settlement

Where a settlement does not contain any innovative terms, courts deem this factor as neutral. *See, e.g., McDonough*, 80 F.Supp.3d at 662; *In re Remicade*, 2023 U.S. Dist. LEXIS 43284, at *74; *Vista*, 2020 U.S. Dist. LEXIS 69614, at *92 (lack of innovative terms means that this factor should not bear upon fee award request). Here, though Class Counsel spent significant time negotiating the specific terms of the Settlement, the Settlement does not contain any particularly innovative terms.

Accordingly, analysis of this factor neither weighs in favor nor against Class Counsel's fee request.

### C.  A Lodestar Cross-Check Shows a 1.57 Multiplier

Class Counsel's requested fee can also be analyzed using a lodestar crosscheck, which is "a tool to 'ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple.'" *In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 U.S. Dist. LEXIS 134005, at *40 (E.D. Pa. Jul. 22, 2022) (internal quotation omitted). The multiplier is meant to "account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work" as well as "to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *Id.* at *41 (internal quotations omitted).

---

downward the percentage of the recovery awarded as plaintiffs' recovery increases…may give rise to an attorney incentive problem by creating declining marginal returns to effort for counsel…this method can create an incentive to settle quickly and cheaply, when the returns to effort are the highest, rather than investing additional time and maximizing plaintiffs' recovery"); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067, at *68 (D.D.C. July 16, 2001) ("This Court agrees that it is not fair to penalize counsel for obtaining fine results for their clients. Moreover, the Court notes that a one-third recovery is a common percentage arrived at in contingency fee cases.") (citation omitted); *In re Syngenta AG MIR 162 Corn Litig.*, 2018 U.S. Dist. LEXIS 206840, at *101 (D. Kan. Dec. 7, 2018) (articulating same "incentive problem" observations and award one-third in attorneys' fees on a $1.5 billion settlement). *See also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (rejecting a "megafund cap" because "it would eliminate counsel's incentive to press for more").

As detailed in the Gerstein Declaration, Class Counsel worked over 112,000 hours on this case, which is collectively a lodestar of approximately $80 million based on Class Counsel's billing rates at the time a settlement-in-principle was reached. Each firm has also submitted declarations attesting to the reasonableness of their firm's time. *See* Gerstein Decl. at Exs. A – I.

A one-third fee award would equate to a lodestar multiplier of 1.57.[4] The Third Circuit has recognized that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential*, 148 F.3d at 341. *See also Brown v. Kadence Int'l*, 2023 U.S. Dist. LEXIS 164037, at *15 (E.D. Pa. Sep. 15, 2023) (multiplier of 1.64 fell within "the lower range of acceptability"); *In re Healthcare Servs.*, 2022 U.S. Dist. LEXIS 134005, at *43 (collecting cases and observing that multiplier of 2.01 was "lower than those approved and acknowledged as reasonable within this Circuit and around the country").

Accordingly, the lodestar multiplier here is well within the range of multipliers that are routinely awarded in this Circuit and have been awarded in comparable cases, as the chart below reflects.

| Case | Settlement | Multiplier |
|------|:----------:|:----------:|
| *In re Relafen Antitrust Litig.*, 2004 U.S. Dist. LEXIS 28801 (D. Mass. April 9, 2004) | $175MM | 4.87 |
| *In re Provigil Antitrust Litig.,* No. 06-cv-1797 (E.D. Pa. Oct. 15, 2015), ECF Nos. 858, 870 | $512MM | 4.12 |
| *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05-cv-340 (D. Del. Apr. 23, 2009), ECF Nos. 531, 543. | $250MM | 3.93 |
| *In re Prandin Direct Purchaser Antitrust Litigation,* No. 10-cv-12141 (E.D. Mich. Jan. 20, 2015), ECF No. 68 | $19MM | 3.01 |
| *In re Flonase Antitrust Litig.*, 951 F.Supp.2d 739, 750-51 | $150MM | 2.99 |

---

[4] The multiplier is calculated by dividing the requested fee by Class Counsel's lodestar.

| Case | Settlement | Multiplier |
|---|---|---|
| (E.D. Pa. 2013) | | |
| *In re Prograf Antitrust Litig.*, 2015 U.S. Dist. LEXIS 199792 (D. Mass. May 20, 2015) | $98MM | 2.35 |
| *In re Skelaxin (Metaxalone) Antitrust Litig.,* 2014 U.S. Dist. LEXIS 91661 (E.D. Tenn. Jun. 30, 2014) | $73MM | 2.26 |
| *In re Glumetza Antitrust Litigation*, No. 19-cv-5822 (N.D. Cal. Feb. 3, 2022) ECF No. 706 | $453.8MM | 2.20 |
| *In re Namenda Direct Purchaser Antitrust Litig.,* 15-cv-7488 (S.D.N.Y. May 27, 2020) ECF No. 947. | $750MM | 2.0 |
| *La. Wholesale Drug Co. v. Pfizer, Inc. (In re Neurontin Antitrust Litig.)*, 2014 U.S. Dist. LEXIS 206338 (D.N.J. Aug. 6, 2014) | $191MM | 1.99 |
| *In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 U.S. Dist. LEXIS 85125 (E.D. Va. Apr. 18, 2018) | $94MM | 1.94 |
| *In re DDAVP Direct Purchaser Antitrust Litigation*, No. 05-cv-2237 (S.D.N.Y. Nov. 28, 2011), ECF No. 113 | $20.025MM | 1.92 |
| *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) | $75MM | 1.8 |

Given the risks Class Counsel assumed and the amount of time, labor and expense dedicating to litigation this case for more than a decade, the requested fee is reasonable using a lodestar crosscheck.

Accordingly, the lodestar crosscheck supports Class Counsel's fee request.

**D.      Class Counsel's Expenses Were Reasonable and Necessary to the Result**

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough*, 80 F.Supp.3d at 658. *See also In re All-Clad Metalcrafters, LLC*, 2023 U.S. Dist. LEXIS 27868, at *38 (W.D. Pa. Feb. 17, 2023) ("Class counsel are entitled to reasonable litigation expenses"); *In re Safety Components Int'l Secs. Litig.*, 166 F.Supp.2d 72,

108 (D.N.J. 2001) (class counsel "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action").

Here, Class Counsel's unreimbursed expenses were reasonably incurred and necessary to the prosecution of the litigation. These expenses include fees paid to experts who were instrumental in addressing the Class's liability, causation and damages theories and addressing, Indivior's defenses as well as costs for, *inter alia*, legal research, the creation and maintenance of an electronic document database, travel and lodging, court reporting services and trial preparation activities.[5] Such documented expenses are of the type routinely deemed as reasonable and appropriately incurred. *See, e.g., id.* at 108; *McDonough*, 80 F.Supp.3d at 658 (noting that "[g]iven the economic complexity of class action antitrust cases…high [expert] costs are to be expected"). Accordingly, the Court should approve reimbursement of Class Counsel's expenses in full.

**E.    Service Awards for the Class Representatives are Appropriate and Reasonable**

Class Counsel request that the Court approve service awards in the amount of $150,000 each for the class representatives BDC, RDC and Meijer, in recognition of their continuous and extensive participation in this lengthy litigation. The class representatives actively pursued the Class's interests by filing suit on behalf of all direct purchasers and undertaking the responsibilities of serving as class representatives, including responding to discovery requests, appearing for depositions, regularly being apprised of the progress of the case and participating in mediation and settlement negotiation efforts.

---

[5] Certain of the individual declarations of Class Counsel may list "contribution to litigation fund" (or similar phrasing) as an expense. As typically occurs, Co-Lead Counsel established a litigation fund at the inception of the litigation that was used to pay certain of the reasonable expenses herein, most particularly expert and central document database hosting fees, with various firms making regular funding contributions throughout the litigation.

It has long been recognized that private antitrust actions are critical to the enforcement of the antitrust laws for the protection of the general public. *See Am. Soc'y of Mech. Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 573 n. 10 (1982); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 54 (E.D.N.Y. 2010) ("[E]nforcement through private civil actions…is a critical tool for encouraging compliance with the country's antitrust laws"). As such, "[i]ncentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'" *McDonough*, 80 F.Supp.3d at 665 (internal quotation omitted). As such, courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks that they incurred during the course of the class action litigation." *Id.* (approving service awards where named plaintiffs responded to discovery, sat for depositions, communicated with class counsel as necessary for the effective prosecution of the case and participated in settlement negotiations). Numerous other courts have approved service awards in other pharmaceutical antitrust class actions, and the amount requested here is in line with the awards in such cases.[6] Accordingly, the Court should approve these appropriate and reasonable service awards to the class representatives.

## IV.   CONCLUSION

For the reasons set forth above and in the Gerstein Declaration, Class Counsel respectfully request that this Court enter an Order awarding Class Counsel $125,672,591.21 (or one-third or 33⅓% of the settlement amount net of unreimbursed expenses and service awards to the class representatives), plus a proportionate amount of any interest accrued since the settlement was escrowed. *See* Gerstein Decl. at ¶ 87. Class Counsel also respectfully request that

---

[6] *See, e.g., In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150, ECF No. 1085 (N.D. Ill. Nov. 3, 2022) at ¶ 16 (awarding $150,000 each to two class representatives); *In re Novartis and Par Antitrust Litig.*, No. 1:18-cv-04361, ECF No. 635 (S.D.N.Y. Jul. 26, 2023) at ¶ 15 (awarding $100,000 to each of four class representatives).

the Court approve service awards of $150,000 to each of the three class representatives for their efforts on behalf of the Class.

Dated: December 29, 2023

Respectfully Submitted,

/s/ Bruce E. Gerstein

Bruce E. Gerstein
Noah Silverman
Kimberly Hennings
Garwin Gerstein & Fisher LLP
88 Pine Street, 28th Floor
New York, NY 10005
(212) 398-0055

*Co-Lead Counsel for the Direct Purchaser Plaintiffs and Counsel for Burlington Drug Company, Inc.*

Peter Kohn
Joseph T. Lukens
Faruqi & Faruqi, LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 277-5770

*Co-Lead Counsel for the Direct Purchaser Plaintiffs and Counsel for Rochester Drug Co-Operative, Inc.*

Stuart E. Des Roches
Andrew W. Kelly
Chris Letter
Odom & Des Roches, LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
(504) 522-0077

*Counsel for Burlington Drug Company, Inc.*

Russell Chorush
Heim, Payne & Chorush LLP

Thomas M. Sobol
Jessica R. MacAuley
Kristen Johnson
Hannah Schwarzschild
Hagens Berman Sobol Shapiro LLP
1 Faneuil Hall Sq., 5th Fl.
Boston, MA 02109
(617) 482-3700

*Co-Lead Counsel for the Direct Purchaser Class Plaintiffs and Counsel for Meijer, Inc. and Meijer Distribution, Inc.*

David P. Smith
Susan Segura
David C. Raphael, Jr.
Erin R. Leger
Smith Segura Raphael & Leger, LLP
3600 Jackson St., Suite 111
Alexandria, LA 71303
(318) 445-4480

*Counsel for Burlington Drug Company, Inc.*

David F. Sorensen
Caitlin G. Coslett

1111 Bagby Street, #2100
Houston, TX 77002
(713) 221-2000

*Counsel for Burlington Drug Company, Inc.*

Richard Schwartz
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000

*Counsel for Rochester Drug Co-Operative, Inc.*

Barry S. Taus
Archana Tamoshunas
Taus, Cebulash & Landau LLP
123 William Street, Suite 1900A
New York, NY 10038
(212) 931-0704

*Counsel for Meijer, Inc. and Meijer Distribution, Inc.*

Joseph M. Vanek
David P. Germaine
John P. Bjork
Sperling & Slater, P.C.
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200

*Counsel for Meijer, Inc. and Meijer Distribution, Inc.*